The Operating Agreement also provided that the section 705(a)(2)(B) expenditures of Whispering Woods would be allocated 99% to the Managing Member and 1% to the Class A Member. The reduction by Whispering Woods of its basis in the stock of the Cayman Entities was a section 705(a)(2)(B) expenditure. This expenditure was thus allocated 99% to World Trading and 1% to Taxpayer in accordance with the Operating Agreement.

On November 19, 2001, Taxpayer sold its interest in Whispering Woods to BT Overseas Finance (Delaware), Inc., an affiliate of Deutsche Bank, for $499,949,895.69. This amount was equal to the balance in Taxpayer's capital account on that date plus Taxpayer's allocable share of the gain that would have been realized by Whispering Woods if its assets had been sold for their then-fair market value.

**Law**

**A. Negligence or disregard of the rules or regulations**

Section 6662(a) imposes a tax equal to 20 percent of the portion of the underpayment to which section 6662 applies. Under section 6662(b)(1), if any portion of an underpayment is attributable to negligence or disregard of rules and regulations, the 20 percent penalty will be applied. Section 6662(c) defines negligence as any failure to make a reasonable attempt to comply with the provisions of the Title 26. Disregard includes careless, reckless, or intentional disregard. Pursuant to Treasury Regulation section 1.6662-(d), the penalty for negligence or disregard of the rules or regulations applies to any portion of an underpayment for a year to which a loss, deduction, or credit is carried, which portion is attributable to negligence or disregard of the rules or regulations in the year in which the carryback or carryover of the loss, deduction, or credit arises ("the loss or credit year").

The penalty for disregarding rules or regulations does not apply if the requirements to Treasury Regulation sections 1.6662-3(c)(1) and 1.6662-3(c)(2) are met.[37] Additionally, the penalty does not apply if the "reasonable cause and a good faith exception" as defined in section 1.6664-4. If the position is contrary to a revenue ruling or notice issued by the Internal Revenue Service, the penalty is not imposed if there is a realistic possibility of being sustained on its merits.

*1. Negligence*

Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws or to exercise ordinary and reasonable care in the preparation of a return. Negligence also includes any failure by the taxpayer to keep adequate books and records to substantiate items. Negligence is strongly indicated where the taxpayer fails to make a reasonable attempt to ascertain the correctness of a

[37] Note that if negligence is asserted, a reasonable basis and disclosure do not preclude the imposition of the penalty.

deduction, credit or exclusion which would seem to a reasonable and prudent person "too good to be true" under the circumstances.[38]

*2. Disregard*
Disregard of the rules and regulations includes any careless, reckless or intentional disregard of the rules or regulations. Rules and regulations include the provisions of the Internal Revenue Code, temporary or final regulations, and revenue rulings and notices issued by the Internal Revenue Service. A disregard of the rules and regulations is "careless" if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to the rule or regulation.[39]

A disregard is "reckless" if the taxpayer makes little or no effort to determine whether a rule or regulation exists, under circumstances that demonstrate a substantial deviation form the standard of conduct that a reasonable person would observe. A disregard is intentional if the taxpayer knows of the rule or regulation that is disregarded. A taxpayer who takes a position contrary to a revenue ruling or notice has not disregarded the ruling or notice is the contrary position has a realistic probability of being sustained on its merits.[40]

**Analysis**

*1. Negligence*
In applying the accuracy penalty, the Service implied that the Taxpayer had been negligent because Taxpayer "should have known" that the deal was "too good to be true." Case law interpreting negligence concentrates, among other things, on whether the party in question the party sought legal and whether the taxpayer and/or the taxpayer's advisors had any experience in making similar investments. *Charfoos v. Commissioner of Internal Revenue,* T.C. Memo 1991-292; *Reali v. Commissioner,* T.C. Memo 1984-427; *Kozlowskiv. Commissioner,* T.C. Memo 1993-430.

In entering this transaction, the Taxpayer carefully and thoroughly considered all legal, economic, business and tax factors involved in this investment. The Taxpayer assembled a team of employees with considerable experience in investment transactions to review the business, legal and tax risks of the proposed transaction before engaging in it. The team provided its analysis to Taxpayer's Investment Committee before engaging in the transaction and the transaction was approved by the Investment Committee. Because the Taxpayer concluded the law was quite clear, it did not request a formal tax opinion from outside counsel.

The Service cites *Nicole Rose Corp v. Commissioner*, 320 F.3d 282 (2d Cir 2003) for the proposition that sophisticated taxpayers cannot rely on experts to avoid the imposition of

---

[38] Treas. Reg. section 1.6662-(b)(1)(ii).
[39] Treas. Reg. section 1.6662-(b)(2).
[40] Treas. Reg. section 1.6662-4(b)(2).
[42] T.C. Memo 2004-179.

an accuracy related penalty. However, in that case, the court held that there was no business purpose or economic substance to the transaction.

In contrast, the Taxpayer's business purpose was to routinely make investments to support its insurance business. The investment also had economic substance because each party bore the risks and benefits of the transaction that could result in a meaningful change in Taxpayer's economic position.

*a. Maintenance of records*

Additionally, the Taxpayer has maintained adequate books and records to substantiate items. In *Westby v. Commissioner*,[42] the Service asserted negligence penalties for failure to keep adequate records despite requesting and receiving records on several different occasions. The Service argued the records were inadequate because the taxpayer did not maintain formal books of account such as a general ledger or a cash receipts and disbursements journal. The court found that the taxpayer had maintained voluminous records, as demonstrated at trial.

Here, the Taxpayer maintains an extensive accounting system, including a general ledger. Maintaining these books is another indicia that the Taxpayer has not acted negligently.

*2. Reasonable basis defense*

In accordance with Treasury Regulation section 1.6662-3(b), a return position that has a reasonable basis is not attributable to negligence. This standard is a relatively high standard. It is significantly higher than not frivolous or not patently improper. It is not satisfied by a position that is merely arguable or merely a colorable claim. If a return position is based on one or more of the authorities used in determining the existence of substantial authority, the position will generally satisfy the reasonable basis standard.[43] The authorities used in determining substantial authority include, among other items, applicable provisions of the Internal Revenue Code, proposed, temporary or final regulations, court cases, congressional intent, and IRS guidance constitute substantial authority.[44] Generally speaking, court cases are not taken into account unless the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal.[45] Substantial authority can also exist for a position that is supported only by a well-reasoned construction of the applicable provision.[46]

In analyzing the investment transaction, the Taxpayer relied on provisions of the Internal Revenue Code, regulations under the Code, congressional intent, and guidance issued by the Service. The Taxpayer also relied upon an experienced team of employees. As a result of this thorough internal analysis, Taxpayer concluded that the law was quite clear.

---

[43] Treas. Reg. section 1.6662-4(b)(3).
[44] Treas. Reg. section 1.6662-4(d)(3)(iii).
[45] Treas. Reg. section 1.6662-4(d)(3)(iv)(B).
[46] Treas. Reg. section 1.6662-4(d)(3)(ii).

As stated in the regulations, if a return position is based one or more allowable authorities, the reasonable basis standard is generally satisfied. Here, the standard is met because the return position was based on a reasoned analysis of the law, which indicated that the return position was correct.

*3. Disclosure defense to disregard of the rules or regulations*

Treasury Regulation section 1.6662-3(c)(1) provides that the penalty for negligence or disregard of the rules cannot be imposed on an understatement that is attributable to a position contrary to a rule or regulation if the position is disclosed in accordance with the regulations. The penalty for disregarding rules and regulations is not imposed on any portion of an underpayment that is attributable to a position contrary to a rule or regulation if the position is adequately disclosed pursuant to the requirements of Treasury Regulation section 1.6662-3(c)(2). Disclosure is adequate under section 1.6662-3(c)(2) if a properly completed Form 8275 is filed.[47]

Taxpayer concluded that the law was clear and did not file Form 8275. On its 2000 and 2001 returns, the Taxpayer prominently stated that it had received "Previously Taxed Income." This statement was a separate line item on Line 7 of Schedule M-1.[48] Upon audit of these returns, the Taxpayer cooperated with the Service and provided all of the relevant documents in their possession, other than documents protected from disclosure by the attorney-client privilege or attorney work-product doctrine. Because the Taxpayer did not attempt to bury the adjustment and because the Taxpayer complied with the Service's document request supporting this adjustment, it is unfair to assert a penalty merely because the Taxpayer did not attach a particular form to its return.

*4. Reasonable cause and good faith defense*

Section 6664(c)(1) provides that no penalty may be imposed upon a showing that there was reasonable cause and taxpayer acted in good faith. "Reasonable cause and good faith" is determined on a case-by-case basis, taking into account all the pertinent facts and circumstances. Generally, the most important factor is the taxpayer's effort to assess the proper tax liability.

A taxpayer's reliance on an opinion may indicate reasonable reliance in good faith. In determining whether a taxpayer has relied in good faith on advice, all the facts and circumstances must be taken into account. Reliance may not be in good faith if the taxpayer knew or should have known that the advisor lacked knowledge of relevant aspects of tax law. Factors used to determine if the taxpayer acted in good faith include the following:

1. The advice must be based on all pertinent facts and circumstances, including the purpose of the transaction or structure of the transaction.

[47] A taxpayer cannot rely on the annual revenue procedure for purposes of negligence portion of the negligence or disregard of the rules or regulations penalty.
[48] In 1999, this item was reported in another line item noted as Income from JVs.

2. The advice must not be based on unreasonable factual or legal assumptions and must not unreasonably rely on the representations, statements, findings or agreements of the taxpayer or any other person.[49]

In this case, the Taxpayer relied on its team of experienced employees who reviewed the Code, regulations, case law, and Internal Revenue Service guidance. The internal review was not based upon unreasonable factual or legal assumptions or on unreasonable representations, statements, findings, or agreements of the taxpayer and any other person. Because the Taxpayer thought the law regarding the transaction was quite clear, it did not seek a formal, written opinion. On its face, the regulation does not require a written opinion. After a careful and thorough analysis of all the business and tax factors, Taxpayer concluded that the transaction met not only its investment strategy but complied with the law. Accordingly, the Taxpayer had reasonable cause to and acted in good faith in entering the transaction.

*5. Tax shelter items*

Pursuant to Treasury Regulation section 1.6662-4(g)(2)(iv), a corporate taxpayer determines whether the reasonable cause and good faith exception to the substantial understatement penalty applies in accordance with Treasury Regulation section 1.6664-4(e). The determination is based on all pertinent facts and circumstances. A corporation's legal justification may be taken into account in establishing that a corporation acted with reasonable cause and in good faith if certain minimum requirements are met. A failure to satisfy the minimum requirements precludes a finding of reasonable cause and good faith.

The minimum requirements are that there must be substantial authority for the tax treatment of the item and the corporation must have reasonably believed at the time the return was filed that the tax treatment was more likely than not the proper treatment. A corporation is considered to have reasonably believed the tax treatment was more likely than not the proper treatment if:

1. the corporation analyzes the pertinent facts and authorities and reasonably concludes in good faith that there is a greater than 50% likelihood that the treatment will be upheld if challenged, or

2. the corporation reasonably relies in good faith on the opinion of a professional tax advisor if the opinion is based on the advisor's analysis of the pertinent facts and authorities and unambiguously states that the tax advisor concludes that there is a greater than 50% chance the item will be upheld if challenged.[50]

Here, assuming arguendo that the transaction was a tax shelter, it was concluded that there is a greater than 50 percent the taxpayer will prevail. While it is true that the

[49] Treas. Reg. section 1.6664-2(c).
[50] Treas. Reg. section 1.6664-4(e)(2).

Taxpayer did not seek a written opinion, the regulation does not require a written opinion. To the contrary, the regulation provides that a corporation acts in good faith if the corporation relies on an advisor's opinion as long as the opinion is based on the pertinent facts and authorities and the advisor concludes that there is more than a 50 percent chance the position will be upheld. Here, Taxpayer's experienced team of employees considered all of the factors carefully and as a result of this internal analysis concluded that there was a more than 50% chance of the position being upheld.

Nor can it be contended, either for purposes of the negligence penalty under section 6662(c) or the substantial understatement penalty under section 6662(d), that a significant purpose of the overall plan or entity was avoidance or evasion of federal income taxes within the meaning of section 6662(d)(2)(C)(ii) or Treasury Regulation section 1.6662-4(g)(2). Taxpayer's core business is to invest the funds it receives from customers in order to provide sufficient returns to cover the liabilities (promises) created by the products it sells. It is subject to regulatory action (e.g., penalties) if its investment policies and procedures do not provide for adequate returns. Consistent with this core aspect of its business operations, Taxpayer entered into this transaction to earn an enhanced yield that compared favorably with other short-term risk-adjusted investments. The enhanced yield was commensurate with the greater risks arising from the more complex, illiquid partnership structure. Taxpayer viewed its investment as being similar to an investment in an asset-backed security, which allows investors to maintain spreads while improving the credit quality of their investment. Likewise, the pool of taxable and tax-exempt assets held by the entity permitted Taxpayer to earn a yield comparable to BBB corporate securities while the structure raised the credit quality of the investment to the AA level. Taxpayer's purpose, therefore, was to realize the economic objective of earning an overall BBB yield over the two-year term of the partnership investment but with a higher overall credit quality estimated at AA-. The significance of the tax-exempt characteristic of the previously taxed income, therefore, was not that it avoided federal income tax, but that it increased the Taxpayer's yield on the investment. Moreover, availing oneself of the tax benefits provided by the Internal Revenue Code, such as the previously taxed income benefit provided by section 959, in a manner consistent with the statute and Congressional purpose does not constitute a tax avoidance purpose.[51]

*6. Realistic possibility of being sustained on its merits defense*

Pursuant to Treasury Regulation 1.6694-(2)(b), a position is considered to have a realistic possibility of being sustained on the merits if a reasonable and well-informed analysis by a person knowledgeable in tax law would lead such a person to conclude that the position has approximately a one in three, or greater, chance of being sustained on its merits. The standards used to make this determination are the standards used to determine whether substantial authority exists for purposes of the substantial underpayment penalty.[52]

[51] Treas. Reg. §1.6662-4(g)(2)(ii).
[52] Treas. Reg. section 1.6694-2(b)(1), (2).

The authorities used in determining substantial authority include, among other items, applicable provisions of the Internal Revenue Code, proposed, temporary or final regulations, court cases, congressional intent, and IRS guidance.[53] Generally speaking, court cases are not taken into account unless the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal.[54] Substantial authority can also exist for a position that is supported only by a well-reasoned construction of the applicable provision.[55]

In analyzing the investment transaction, the Taxpayer relied on provisions of the Internal Revenue Code, regulations under the Code, court cases, congressional intent, and guidance issued by the Service. As stated in the regulation, if a return position is based one or more allowable authorities, the realistic possibility standard is generally satisfied. Although there may be different interpretations of guidance, a well-reasoned construction of the applicable provisions also establishes a realistic possibility standard for the position taken.

Here, the Taxpayer and the Service disagree on the treatment of the investment transaction, but that disagreement does not automatically nullify the efforts the Taxpayer undertook to analyze the transaction. Nor does it render the analysis unreasonable. Because the Taxpayer has met the requirements for having a reasonable basis for its position, has shown reasonable cause and that it acted in good faith, and has substantial authority for its position, the Taxpayer has shown it has a realistic possibility of being sustained on the merits.

**Law**

**B. Substantial understatement penalty**

Section 6662(a) imposes a tax equal to 20 percent of the portion of the underpayment to which section 6662 applies. Section 6662(b)(2) provides a substantial understatement of income tax results in the 20 percent penalty. A substantial understatement exists if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the return or $10,000. Section 6662(d)(2)(B) allows a reduction of the amount understated for items (i) for which there is or was substantial authority for such treatment or (ii) that are adequately disclosed and for which a reasonable basis for the tax treatment exists. This reduction is not allowed, however, to any item of a corporation that is attributable to a tax shelter. A tax shelter is defined as a partnership or other entity, any investment plan or arrangement, or any other plan or arrangement if a significant purpose is the avoidance or evasion of Federal income tax.[56]

The penalty for a substantial understatement applies to any portion of an underpayment for a year to which a loss, deduction, or credit is carried that is attributable to a "tainted

---

[53] Treas. Reg. section 1.6662-4(d)(3)(iii).
[54] Treas. Reg. section 1.6662-4(d)(3)(iv)(B).
[55] Treas. Reg. section 1.6662-4(d)(3)(ii).
[56] IRC section 6662(2)(C).

item" for the year in which the carryback of the loss, deduction, or credit arises. The determination of whether an understatement is substantial for a carryback year is made with respect to the return of the carryback year. Tainted items are those for which there is neither substantial authority nor adequate disclosure with respect to the loss or credit year.[57] In the case of a tax shelter item, a tainted item is any item for which there is not both substantial authority and a reasonable belief that the tax treatment is more likely than not the proper treatment.[58]

**Analysis**

*1. Substantial authority defense*

The "substantial authority" standard is an objective standard. This standard is less stringent than "more likely than not" (i.e., greater than 50 percent chance of succeeding in litigation) but stricter than the "reasonable basis" standard.[59] To determine whether substantial authority exists, the authorities must be examined. The weight of the authorities supporting the treatment must be substantial in relation to the authorities supporting a contrary position. Substantial authority is measured at the time the return is filed or on the last day of the taxable year to which the return relates.[60]

Among other items, applicable provisions of the Internal Revenue Code, proposed, temporary or final regulations, court cases, congressional intent, and IRS guidance constitute substantial authority.[61] Generally speaking, court cases are not taken into account unless the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal.[62] Substantial authority can also exist for a position that is supported only by a well-reasoned construction of the applicable provision.[63]

In analyzing the investment transaction, the Taxpayer relied on provisions of the Internal Revenue Code, regulations under the Code, court cases, congressional intent, and guidance issued by the Service. Substantial authority for the transaction exists.

*2. Adequate disclosure and reasonable basis defense*

*a. Adequate disclosure*

Pursuant to Treasury Regulation sections 1.6662-4(e) and (f), disclosure is adequate if made on Form 8275 or Form 8275-R or in accordance with an annual revenue procedure.

---

[57] Treas. Reg. section 1.6662-4(c).
[58] Treas. Reg. section 1.6662-4(c)(3).
[59] Treas. Reg. section 1.6662-4(d)(2).
[60] Treas. Reg. section 1.6662-4(d)(3)(iv)(C).
[61] Treas. Reg. section 1.6662-4(d)(3)(iii).
[62] Treas. Reg. section 1.6662-4(d)(3)(iv)(B).
[63] Treas. Reg. section 1.6662-4(d)(3)(ii).

Revenue Procedure 2001-52[64] applies to tax returns filed on the 2001 tax form and addresses M-1 items. Additional disclosure of facts relevant to, or positions taken with respect to M-1 items is unnecessary provided that

1. the amount of the deviation from the financial books and records is not the result of a computation that includes the netting of items, and

2. the information provided reasonably may be expected to apprise the Service of the nature of the potential controversy concerning the tax treatment of the item.[65]

Additionally, forms and attachments must be completed in a clear manner and in accordance with their instructions. Amounts entered on forms must be verifiable.

As stated above, the Taxpayer did not file Form 8275 or 8275-R because it did not conclude that the investment transaction was contrary to any rule or regulation. However, the Taxpayer did report a separate M-1 item.[66] The item was reported in tax years 2000 and 2001 as "Previously Taxed Income" on line 7 of Schedule M-1. This adjustment is not the result of netting.

The seminal case establishing the standard to measure whether an item was adequately disclosed is *Schirmer v. Commissioner*.[67] The *Schirmer* case is one of many hobby loss cases. In *Schirmer*, the taxpayer was a mechanical engineer who also owned a farm. The issue before the court was whether the farming activity was entered into for profit. The court held that the farm was a hobby activity. The taxpayer reported the farm's income and expenses on Schedule F and filed Form 4562 for depreciation and amortization deductions.

The court found that the inclusion of the schedules with the return did not constitute adequate disclosure. The information provided "was insufficient to enable respondent to identify the potential controversy involved here, that is whether petitioner engaged in the activity for profit."

None of the cases concluding that the disclosure was adequate directly address an M-1 adjustment. Instead, the cases deal with forms or statements attached to the return.[68]

---

[64] Revenue Procedures 99-41, I.R.B. 1999-46 and 2001-11, 2001-1 C.B. 275 apply to tax years 1999 and 2000, respectively.
[65] Section 4.01 of (3) Rev. Proc. 2001-52, I.R.B. 2001-46
[66] The Taxpayer reported the M-1 adjustment as a separate line item in years 2000 and 2001. In 1999, the Taxpayer had not received a distribution from the LLC. However, income had been accrued for statutory purposes, and a resulting M-1 adjustment was made. The adjustment was not separately itemized. However because the Taxpayer has substantial authority for its position, the substantial understatement penalty should not apply to tax year 1999.
[67] 89 T.C. 277 (1987).
[68] See *Elliot v. Commissioner*, 73 T.C.M. 3197 (1997) (adequate disclosure where taxpayer attached Form 8275 claiming deduction under section 1244 but abandons that position to deduct the losses as bad debts); *Henry v. Commissioner*, 73 T.C.M. 1769 (1997) (attaching a statement indicating options with a zero basis was adequate to apprise the Service of the issue of proper reporting as long term capital gain);

Here, however, the M-1 adjustment was clearly set out as a separate line item, including which company in the affiliated group earned the income. The adjustment was clearly identified as "Previously Taxed Income." This should be considered more than enough to "to identify the potential controversy involved," i.e. whether the income was previously taxed income and therefore excludable from taxable income.

*b. Reasonable basis*

In accordance with Treasury Regulation section 1.6662-4(e)(2), disclosure is only effective in relation to the understatement penalty where there is also a reasonable basis, as defined in Treasury Regulation section 1.6662-3(b)(3). In accordance with Treasury Regulation section 1.6662-3(b)(3), this standard is a relatively low standard. It is significantly higher than frivolous or patently improper. It is not satisfied by a position that is merely arguable or merely a colorable claim. If a return position is based on one or more of the authorities used in determining the existence of substantial authority, the position will generally satisfy the reasonable basis standard.[69] The authorities used in determining substantial authority include, among other items, applicable provisions of the Internal Revenue Code, proposed, temporary or final regulations, court cases, congressional intent, and IRS guidance.[70] Generally speaking, court cases are not taken into account unless the treatment is supported by controlling precedent of a United States Court of Appeals to which the taxpayer has a right of appeal.[71] Substantial authority can also exist for a position that is supported only by a well-reasoned construction of the applicable provision.[72]

In analyzing the investment transaction, the Taxpayer relied on provisions of the Internal Revenue Code, regulations under the Code, court cases, congressional intent, and guidance issued by the Service. As stated in the regulation, if a return position is based one or more allowable authorities, the reasonable basis standard is generally satisfied, and the understatement penalty should not apply. The Taxpayers adequately disclosed the

---

*Dibsy v. Commissioner*, 70 T.C.M. 918 (1995) (reporting business income from a liquor store on Schedule C and a "transaction involving the same liquor store which produced zero capital gain as reported on Schedule D" was adequate to alert the Service to identify the controversy – whether the taxpayers engaged in a tax free exchange under section 1031); *Mayhew v. Commissioner*, 63 T.C.M. 1984 (1992) (adequate disclosure was found where the taxpayer reported a capital gain resulting from the sale of a partnership interest even though the court held the income to be ordinary); *Rebecca K. Crown Income Charitable Fund v. Commissioner*, 98 T.C. 327 (1992) (filing Forms 5227, 1041-A, and 1041 adequately disclosed that the trust was structured as a charitable lead trust, that an annual annuity of $975,000 was required to be paid, and that the trust claimed charitable deductions in excess of the annual annuity amount, putting the Service on notice that the claimed deductions might exceed the amounts paid to charitable beneficiaries under the terms of the trust agreement for purposes of section 642(c)); *Zermeno v. Commissioner*, 62 T.C.M. 1155 (1991) (statement explaining interest income was not effectively connected income was adequate); *Pinson v. Commissioner*, 59 T.C.M. 554 (1990) (adequate disclosure where statement disclosing underlying facts and other documents outlining their legal position and pursuit of civil recourse was sufficient for a theft loss deduction).

[69] Treas. Reg. section 1.6662-4(b)(3).

[70] Treas. Reg. section 1.6662-4(d)(3)(iii).

[71] Treas. Reg. section 1.6662-4(d)(3)(iv)(B).

[72] Treas. Reg. section 1.6662-4(d)(3)(ii).

item's tax treatment in the tax returns filed for the years in question, and there was a reasonable basis for the tax treatment of this item by the Taxpayers.

3. *Understatement Insufficient to Warrant Penalty*

As provided in section 6662(d)(1)(B), for there to be a substantial understatement of tax, the amount by which the tax is understated must exceed the lesser of (i) 10% of the tax required to be shown on the return, or (ii) $10,000. After reduction of the understatement for any taxable year by the portion attributable to an item for which there was substantial authority and for any item that was adequately disclosed and for which there was a reasonable basis, the remaining portion of such understatement does not exceed the lesser of 10% of the tax or $10,000. Therefore, such remaining portion is not "substantial" within the meaning of section 6662(d)(1)(B) and imposition of the accuracy-related penalty of section 6662(a) by virtue of section 6661(b)(2) is not justified.

In conclusion, all of the facts and circumstances demonstrate that the Taxpayers have met the requirements for a complete reduction of the amount of any claimed understatement attributable to the investment transaction. For the reasons stated above, no penalty should be assessed against the Taxpayers.