PRINCIPAL LIFE INSURANCE COMPANY

STATUTE OF LIMITATIONS ISSUE

Tax Year 1996

$9,768,367
Alternative Claim $11,801,071

Principal Life Insurance Company ("Principal") requests refund of taxes and penalties paid plus assessed interest paid with respect thereto and statutory interest as allowable by law for tax years 1996, 1997, 1998, 1999, and 2000 because the Service did not timely assess tax in those years.

## I. Facts Upon Which Claims For Refund Is Based.

### A. Limitations Periods and Statutory Notices of Deficiency.

Pursuant to extensions of time granted by Principal to IRS (Forms 872), the periods within which assessments could be made for the taxable years 1999 and 2000 were set to expire on December 31, 2004. On October 28, 2004, as it was about to wrap up its examination of Principal's returns for the taxable years 1999-2001, IRS served on Principal a "designated summons" under IRS §6503(j) relating to the years 1999 and 2000. On the same date, IRS served a similar designated summons on Deutsch Bank as a third-party recordkeeper. The summonses called for return dates of November 9 and December 15, respectively. These designated summonses would have kept the limitations periods for 1999 and 2000 open during any judicial summons enforcement proceeding and for a period of at least 60 days thereafter.

On November 9, 2004, Principal produced 5,600 pages of documents to IRS in response to the summons and indicated it would produce more before December 15. By December 8, it had made three submissions totaling 10,000 pages of documents, including three privilege logs identifying documents not produced because of invocation of the attorney-client privilege. On the date of its third and final submission, December 8, Principal advised IRS that it believed it was then in full compliance with the summons issued to it. On December 15, Deutsch Bank submitted to IRS in NYC seven boxes containing 13,000 pages of documents and indicated it would produce more in the months that followed.

IRS chose not to initiate any judicial summons enforcement action with respect to any remaining documents. Instead, on December 29, 2004, it issued to Principal its statutory notices of deficiency (90-day letters) asserting deficiencies and penalties for the taxable years 1996-2000 (the years 1996 through 1998 remained open for this purpose because the NOL from 2001 had been carried back to them). The 90-day period in which Principal could have contested the deficiencies in Tax Court, being the same 90-day period in which IRS was prohibited from making an assessment and during which the running of the statute of limitations was suspended,

would have expired on March 29, 2005. Therefore, as a result of the additional 60 days tacked on to the limitations period by virtue of §6503(a), the statute of limitations on assessments for 1999 and 2000 would typically (but for the January 28, 2005 payments by Principal hereinafter described) have expired on May 31, 2005.

As indicated above, 2001 was a loss year for Principal that generated an NOL carryback to 1996-1998, and, through the quick refund procedure, Principal received refunds of taxes paid for the years 1996-1998 shortly after filing its 2001 return on June 24, 2002.

IRS' statutory notice of deficiency issued on December 29, 2004 asserted proposed assessments of tax of $165 million and $129 million for 1999 and 2000, respectively, but it also asserted proposed assessments of $9 million, $22 million, and $38 million for 1996, 1997, and 1998 (plus, in each case, penalties). These deficiencies asserted for 1996, 1997, and 1998 were due to disallowance of carrybacks from 1999, 2000, and 2001. According to this 90-day notice (p. 19), $19.7 million of Whispering Woods previously-taxed income for 2001 and $4.3 million of Whistling Pines previously-taxed income for 2001 were being disallowed and, alternatively, the Whispering Woods $48 million basis adjustment in 2001 was being disallowed, resulting in decrease of the 2001 carryback.

While there was no tax attributable to Principal's operations for 2001 (because of the NOL for that year), there was $1 million in tax due for 2001 as a result of carryforward of the §453A interest on deferred tax issue from 1991 that was recently tried in the Court of Federal Claims. Pursuant to an application for extension, an extension of time to file the 2001 return had been granted through September 15, 2002, and, as stated above, Principal filed its 2001 return on June 24, 2002. It later filed an amended return for 2001 on September 13, 2002. Accordingly, the regular three-year statute of limitations on assessment for 2001 would not have expired until June 24, 2005. IRS' statutory notice of deficiency (90-day letter) for the §453A interest in 2001 was issued on March 1, 2005.

**B. Deposits/Payments.**

On January 13, 2005, through five wire transfers each relating to specific taxable years 1996-2000, Principal deposited $444,000,000 to a U.S. Treasury Tax & Loan Account in Minneapolis, and instructed IRS by letter that such amount be treated as a deposit in the nature of a cash bond in accordance with IRC §6603 and Rev. Proc. 84-58.

On January 28, 2005, Principal sent a letter to IRS requesting it to apply the deposit for each year to payment of the federal income tax, interest and penalty in the following amounts for each year:

| Year | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| 1996 | $ 8,806,758 | $ 961,609 | $ 2,032,704 | $ 11,801,071 |
| 1997 | $ 22,097,933 | $ 780,951 | $ 1,728,429 | $ 24,607,313 |
| 1998 | $ 37,509,413 | $ 7,491,744 | $ 6,303,004 | $ 51,304,161 |

| | | | | |
|---|---|---|---|---|
| 1999 | $164,888,638 | $10,848,700 | $24,358,720 | $200,096,058 |
| 2000 | $128,727,605 | $ 7,294,419 | $19,182,961 | $155,204,985 |
| Total | $362,030,347 | $27,377,423 | $53,605,821 | $443,013,591 |

## C. IRS Transcripts and Assessments.

IRS has provided two sets of transcripts for each of the years 1996-2001. The first set shows an issuance date of May 27, 2005 for the tax years 1996 and 1997 and an issuance date of June 2, 2005 for the tax years 1998, 1999, 2000, and 2001. The last entry on all of them (except 2001) is dated April 14, 2005, and, while they all show the cash bond deposit on January 13, 2005, none of them shows any assessment of the deficiencies asserted in the 90-day notices. The last entry date on the 2001 transcript is dated April 28, 2003.

The second set of IRS transcripts is dated July 18, 2005. These transcripts show entries dated May 27, 2005 (presumably purported assessments made on that date) as follows:

| | |
|---|---|
| 1996 | (none) |
| 1997 | $23,727,866 |
| 1998 | 45,829,523 |
| 1999 | 175,737,338 |
| 2000 | 136,550,585 |

These amounts correspond roughly to the payments of tax and penalties as set forth by Principal in its January 28, 2005 letter and the table set forth above. However, for 1999 and 2000, the entries purporting to be assessments on May 27, 2005 follow other entries dated June 27, 2005.

In the second set of transcripts dated July 18, 2005, there is an entry for 1999 and 2000 that states "ASED: 05-30-2005." "ASED" apparently stands for "Assessment Statute Expiration Date."

Curiously, the transcripts for 1996, 1997, and 1998 each contain an entry dated April 15, 2005 that shows a "New ASED" of April 14, 2008 and the front page of each of these three transcripts also shows an ASED of April 14, 2008. The relevance of the April 14, 2008 date has not been determined. To the contrary, the "ASED" for these years would appear to be tied to the statute of limitations for the carryback year, 2001, and that statute of limitations would have expired on July 30, 2005. That is the date that is 60 days (per §6503(a)) after the expiration of the 90-day period during which IRS was prohibited from making an assessment by virtue of its statutory notice for 2001 issued on March 1, 2005.

The transcript for 2001 shows an ASED of August 18, 2005. The $1 million of tax for 2001 attributable to the §453A issue was the subject of IRS' statutory notice of deficiency (90-day letter) for 2001 issued on March 1, 2005, and IRS claims that it made a timely assessment of this tax on May 27, 2005. However, the IRS transcript dated July 18, 2005, shows what appears

to be two assessments for 2001 made on June 29, 2005, one for the $1,030,548 tax payment that Principal made on March 29, 2005, and one for what appears to be $184,643 in interest.

## II. Legal Analysis Upon Which Claims For Refund Is Based.

### A. Statutory Provisions.

IRC §6213(a) is the provision that prohibits IRS from making any assessment of tax against Principal for these years during the 90-day period referred to in the statutory notice, and §6503(a) is the provision under which the running of the statute of limitations for making assessments is suspended during the prohibition period and **for a further period of 60 days thereafter**. Therefore, under IRC §6503(a), issuance by IRS of the statutory notice of deficiency for 1999 and 2000 on December 29, 2004 would typically have extended the limitations period for making an assessment for those years (assuming Principal filed no petition in the Tax Court) to May 31, 2005 (60 days after the close of the 90-day suspension period). However, under §6213(b)(4), the prohibition on assessments by IRS came to an end on January 28, 2005, because Principal on that date paid the deficiencies for 1999 and 2000 asserted in the statutory notice. IRS, therefore, could only have made assessments of the asserted deficiencies for those years against Principal for 60 days after January 28, 2005, that is, until March 31, 2005. Therefore, even if the assessments for 1999 and 2000 were made on May 27, 2005, as purportedly shown on the transcripts, they were made after the statute of limitations for those years had expired and Principal is entitled to have all of the remittances for those years refunded.

If the assessments for 1997 and 1998 were made on May 27, 2005, as the July 18, 2005 transcript purports to show, those assessments would have been timely because, notwithstanding the 60-day window IRS had to make assessments for 1999 and 2000 following Principal's payment of taxes on January 28, 2005, the limitations period on assessments for 1996, 1997, and 1998 would not have expired until three years from the date of filing of the return for the carryback year, 2001, that is, until June 24, 2005. IRC §6501(h). Moreover, for the reasons stated in the preceding section, it can be argued that the limitations period for 2001 did not actually expire until July 30, 2005, and if such were the case, an assessment for 1997 and 1998 made on May 27, 2005, and an assessment for 2001 made on June 29, 2005 would have been timely.

Furthermore, even if the foregoing analysis proves correct showing timely assessments for 1997 and 1998, as shown on the second set of IRS transcripts dated July 18, 2005, the assessments would have fallen short in amounts and Principal would still be entitled to refunds as follows:

| Year | Principal's Remittance | Putative Assessment | Refund Due |
|---|---|---|---|
| 1996 | $11,801,071 | -0- | $11,801,071 |
| 1997 | 24,607,313 | $23,727,866 | 879,447 |

| | | | |
|---|---|---|---|
| 1998 | 51,304,161 | 45,829,523 | 5,474,638 |
| Total | $87,712,545 | $69,557,389 | $18,155,156 |

**B. Suit For Refund.**

Under IRC §7422(a), a suit for refund may be brought for a tax "illegally assessed or collected" and for any penalty "collected without authority," but only after a claim for refund has first been filed. Such suits may be brought in the Court of Federal Claims under the Tucker Act, 28 U.S.C. §1491, or in federal district court under 28 U.S.C. §1346(a). Section 6402(a) directs that any overpayment shall be refunded, and §6401(a) states that the term **"'overpayment' includes that part of the amount of the payment of an internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto."** (Emphasis added.)

Under §§6401 and 7422, Principal may combine its positions on the merits of the issues with its claim that it is entitled to refund because the IRS failed to properly assess the taxes at issue. *Cohen v. U.S.*, 995 F.2d 205 (Fed. Cir. 1993). In the *Cohen* case, the Federal Circuit noted that -

> Plaintiff's position rests on two independent grounds. They claim entitlement to a refund because the IRS failed to timely assess the asserted deficiency for 1980, and even if the assessment had been timely, because the IRS improperly disallowed the losses claimed for 1980.

In *Cohen,* the court held that the taxpayer was entitled to have its payment refunded because the IRS assessment made after the payment was not timely, stating "the chips must lie where they have fallen." *Cohen, supra,* at 209.

In the Supreme Court's seminal decision in *Rosenman v. U.S.*, 323 U.S. 658 (1945), it was held that the date of assessment is the key date as it defines the tax obligation. In *New York Life Ins. Co. v. U.S.*, 118 F.3d 1553 (Fed. Cir. 1997), the Federal Circuit applied both *Rosenman* and *Cohen* to uphold the Court of Federal Claims' decision that the taxpayer was entitled to a refund where no timely assessment by IRS had been made.

The 8th Circuit has also applied *Rosenman* to focus on the date of the assessment as the key date, holding that the 2-year statute of limitations on a claim for refund began on the later date of the assessment, rather than on the earlier date that the remittance was made. *Dubuque Packing Co. v. U.S.,* 233 F.2d 453 (8th Cir. 1956). A district court case in this circuit, like the Federal Circuit in *Cohen,* applied the *Rosenman* rationale to hold that where IRS mailed a notice of deficiency with the limitations period and taxpayer mailed her check for the amount claimed in the notice but the tax was not assessed until after the statute of limitations had expired, the taxpayer was entitled to have the amount of her payment refunded. *Goetz v.U.S.,* 286 F.Supp. 128 (W.D. Mo. 1968).

The 5th Circuit has adopted the same "bright-line test" or "*per se*" test as the 8th Circuit, to the effect that whenever the taxpayer has disputed liability for a deficiency, there can be no payment of taxes until there has been a formal assessment. *Thomas v. Mercantile National Bank,* 204 F.2d 943 (5th Cir. 1953). Because "there was no deficiency assessment [until August 17, 1945], and no liability on the part of the taxpayer [despite the revenue agent's proposed deficiency], and consequently nothing to pay . . . the sum deposited . . . on August 2, 1945, was merely an advance deposit to cover additional tax liability expected to arise thereafter." *Id.* at 944. In *Ford v. U.S.,* 618 F.2d 357 (5th Cir. 1980), the 5th Circuit followed its precedent in *Mercantile National Bank.*

III. Conclusion

Because it appears that the Service failed to make timely assessments for tax years 1996, 1997, 1998, 1999, and 2000, Principal requests a refund of taxes and penalties paid plus assessed interest paid with respect thereto and statutory interest as allowable by law.