IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 07-006 T, 07-706 T, and 08-135 T
(Judge Francis M. Allegra)

PRINCIPAL LIFE INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

JOINT PRELIMINARY STATUS REPORT

Pursuant to RCFC App. A, Part III, ¶¶ 14 and 5, the parties hereby provide the following Joint Preliminary Status Report:

Paragraph 4:

**(a) Jurisdiction:**

**Plaintiffs:** Plaintiffs believe that the Court has jurisdiction over this case.

**Defendant:** The amount of any potential recovery by Plaintiffs in this case may be subject to the limitations imposed by IRC § 6511. In addition, defendant notes: (1) Defendant believes that one or more of plaintiffs' administrative claims for refund dated January 25, 2007, may have been filed outside the two-year period of limitation set forth in IRC § 6511(a). If

so, the Court would lack jurisdiction over those claims. Further investigation and possibly discovery are necessary before defendant can make a final determination of this issue. (2) The Court may lack jurisdiction over any portion of this action seeking a refund for 1998 that is based on the claim that 1998 income should be reduced in the amount of $2,296,820 with respect to guarantee fund assessments, as defendant believes no refund claim for such issue and amount was filed with the IRS. Based on exchanges at the early meeting of counsel, the parties may be able to resolve this second issue without judicial intervention.

If defendant determines that it should file a motion to dismiss on either of these two jurisdictional issues, then it intends to submit any such filing to the Court by February 1, 2009.

**(b) Consolidation:** The present case is already a consolidated proceeding of Fed. Cl. Nos. 07-06 T, 07-706 T, and 08-135 T.

However, earlier this year (it appears in February of 2008), plaintiffs filed refund claims for tax years 1997, 1999, 2000 and 2002-2003 ("2008 Claims"), and intend to pursue all or some portions of those claims in this Court, when permitted by law (generally six months after date of filing, *see* § 6532(a)). Those claims, on their face, implicate whether an overpayment of tax exists for two tax years in suit, 1997 and 2000, in addition to presenting additional claims for 2002 and 2003. Plaintiffs intend (with consent of defendant or upon approval of the Court) to amend the complaints earlier filed in Fed. C. No. 07-706 T and Fed. Cl. No. 08-135 T to include claims raised in the 2008 Claims and to bring new suits for tax years 2002 and 2003. When that occurs, it is likely that defendant will join plaintiffs in seeking consolidation of the 2002 and 2003 tax year suits with the present consolidated case.

Related to consolidation, defendant notes that there is a suit pending in the United States

District Court for the Southern District of Iowa, *Pritired 1, LLC, Principal Life Insurance Company, Tax Matters Partner, and Principal Life Insurance Company, Plaintiffs, v. United States of America, Defendant,* Civ. No. 4:08-cv-00082-JAJ-TTS (2008), that appears relevant to whether plaintiffs overpaid tax for at least one of the tax years, 2000, at issue in the present case. Defendant is considering the ramifications of the pendency of claims in this Court and the District Court affecting plaintiffs' tax liability for the same tax year(s). Plaintiffs note that the case filed in the United States District Court for the Southern District of Iowa is a TEFRA suit contesting a Notice of Final Partnership Administrative Adjustment under 26 U.S.C. §6226, and that such suit affects the taxable year 2000 only to the extent of the allowable carryback to that year.

**Bifurcation of liability and damages:** The parties agree that separate trials on the questions of liability and damages are unnecessary in this case, and that all evidence necessary to resolve both questions should be presented at the same trial. They ask the Court initially to determine the question of liability only, and afterwards to permit the parties a reasonable period to perform and agree upon any necessary recomputation of overpayment of tax liability, interest, and penalties, so that the parties can submit a stipulation as to the amount of judgment. This will avoid devoting unnecessary attention to computations at trial.

The parties suggest to the Court that, in view of the many issues and extensive evidence in the case, sequencing any trial of such issues in successive months may be convenient both to the Court and to the parties.

**(c) Deferral of proceedings:**

**Plaintiffs:** As indicated below, plaintiffs believe that alternative dispute resolution

proceedings, namely, early evaluation of the issues by a settlement judge, can be initiated and preliminarily conducted during the time that the discovery process is ongoing. Accordingly, plaintiffs believe that the deadline for dispositive motions and scheduling the case for trial should be deferred until the earlier of (a) conclusion of the alternative dispute resolution process, or (b) either party requests that the Court set such dates.

**Defendant:** The defendant does not believe that utilizing a settlement judge would be helpful at the present time in this case. Defendant was not a party to plaintiffs' complex transactions and is not yet knowledgeable enough to engage in meaningful settlement discussions. Extensive time consuming discovery will be necessary, before defendant will be in a position to evaluate plaintiffs' claims. Moreover, it would be burdensome and distracting for defendant simultaneously both to conduct discovery and to participate in an ADR settlement process. Finally, the Tax Division has an excellent record of settling appropriate cases without invoking formal ADR techniques. If there is an opportunity to settle this case before commencing trial, defendant's counsel will pursue that opportunity.

(e) **Remand or suspension:** Not applicable, as this case is a tax refund action.

(f) **Additional parties:** The parties know of no additional parties to be joined.

(g) **Dispositive motions:**

The parties believe it is likely that motions for summary judgment will be filed on one or more issues by either or both parties following completion of discovery.

In addition, if defendant determines that it should file a motion to dismiss on either of the two jurisdictional issues identified *supra,* then it intends to submit any such filing to the Court by February 1, 2009.

Similarly, if plaintiffs determine that they should file a motion for summary judgment on

the untimely assessment claims raised in their complaints, then they intend to submit any such filing to the Court also by February 1, 2009.

**(h) Factual and legal issues:**

The issue in a tax refund case is whether plaintiff can establish a right to a refund of taxes, interest, and penalties paid for the years before the court, or, in the alternative, whether plaintiff is entitled to a refund of certain remittances made. *See Lewis v. Reynolds,* 284 U.S. 281 (1932); *Dysart v. United States,* 169 Ct. Cl. 276, 340 F.2d 62.4 (1965).

Plaintiffs have so far identified the following subsidiary issues, with respect to plaintiffs' 1996-2001 taxable years:

(a) Whether plaintiff is subject to the interest (imposed as an additional tax under Code § 453A) on the deferred portion of Plaintiff's recognized but unreported capital gain resulting from its sale in 1991 of installment obligations to its indirect subsidiary, Principal FC, Ltd. Such Section 453A interest was the subject of this Court's decision filed on March 17, 2006, in *Principal Life Insurance Company v. U.S.,* No. 02-1278T, relating to the taxable years 1991-1994.

(b) Whether the original issue discount rules of §1271-1275 and 1286 require inclusion in plaintiff's income of certain amounts received by Plaintiff pursuant to custodial share agreements with regulated investment companies.

(c) Whether plaintiff is entitled to certain carryforwards of alternative minimum tax credit.

(d) Whether plaintiff is liable for the accuracy-related penalty under §6662(a) for alleged negligence and substantial understatement relating to its investments in Whispering Woods, LLC and certain perpetual securities.

(e) Whether plaintiff's income should include previously-deducted guarantee fund assessments paid by plaintiff to various state guaranty funds. Additionally, or in the alternative, whether defendant is estopped from excluding such guaranty fund assessments from plaintiff's income by virtue of its inconsistent position with respect to such item in prior taxable years and by virtue of the Court's decision in *Principal Life Insurance Company And Subsidiaries v. The United States*, 70 Fed. Cl. 144 (2006).

(f) Whether plaintiff is entitled to deduct certain losses incurred upon disposition of certain interests in stripped securities.

(g) Whether plaintiff realized capital gain upon disposition of its interest in an entity called Whispering Woods, LLC, which was treated for tax purposes as a partnership.

(h) Whether plaintiff is entitled to a refund of certain remittances on the ground that the Internal Revenue Service failed to make timely assessment of taxes, interest, and penalties.

For subsidiary issues so far identified by defendant, defendant directs the Court to its additional statement regarding fact discovery, which is set forth below in subparagraph (1)(iii). With respect to one or more of the five tax shelters discussed in that subparagraph, defendant believes subsidiary issues also include whether one or more of the shelter transactions should be recast or disregarded under one or more judicial doctrines, including lack of economic substance, sham partnership, substance over form, and/or step transaction, and/or under the partnership anti-abuse regulation.

Until discovery has been completed, the parties cannot tell whether the issues listed above can be narrowed by stipulation or otherwise.

(i) **Settlement:**

This case involves numerous complex issues.

**Plaintiffs:** Plaintiffs believe, that several of the issues in this case may be disposed of through settlement and believe invocation of the alternative dispute resolution process through appointment of a settlement judge would be useful and helpful. As Appendix H of the Court's rules provide, the alternative dispute resolution process is properly employed early in the litigation to avoid needless expense and delay, and therefore plaintiffs believe that the ADR process may be initiated and conducted while discovery is ongoing. The defendant has the benefit of the extensive files of the Internal Revenue Service, including thousands of pages of documents requested by IRS from and provided to it by plaintiffs over many years, and also in some instances Requests For Technical Advice initiated by the examining revenue agents which included extensive statements of fact, all of which set forth in detail the facts on the various issues in this case. Plaintiffs believe defendant's ability to participate in ADR proceedings should be evaluated in the light of such available materials while both parties prepare their respective cases for trial with admissible evidence developed through the discovery process. Defendant's statement that the Tax Division has an excellent record of settling appropriate cases is contrary to the experience of plaintiffs' counsel over many years.

**Defendant:** As set forth above in subparagraph (d), defendant believes that discovery must proceed before defendant can adequately evaluate settlement of this case.

(j) **Trial:** The parties anticipate proceeding to trial on one or more issues. The parties do not request an expedited trial schedule. Plaintiffs request that trial be held in Des Moines, Iowa, because most of their potential witnesses are located in that vicinity. Defendant has no objection to trial being held in Des Moines, Iowa.

**(k) Electronic case management:**

Because of the volume of documents expected to be needed as exhibits at trial, the parties request that the court consider allowing all trial exhibits to be in electronic form with electronic presentation at trial.

**(1) Other information:**

**(i) Deposition Limit** - Due to the complexity and numerosity of issues presented in this consolidated case, defendant requests relief from the default limit on depositions (10/case) and seeks approval, at this juncture, for up to 50 depositions during the fact discovery period of this case, in addition to depositions during expert discovery to depose any of plaintiffs' expert witnesses. Plaintiffs do not oppose this request.

**(ii) Plaintiff's Statement Regarding Defendant's Statement That Follows:**

Plaintiffs object to defendant's characterization in this Report of various transactions in this case as "tax shelters." That characterization is a conclusion on a mixed question of fact and law that is wholly inappropriate for this Report. The transactions referred to by defendant were proper business transactions entered into for specific investment reasons consistent with and serving the needs of the investment operations of Principal Life Insurance Company.

**(iii) Defendant's Statement Regarding Proposed Fact Discovery Period:**[1]

This consolidated "case" is extraordinary in the number of complex tax shelters and other

[1] All statements made herein are based on a preliminary investigation (and primarily derive from plaintiffs' refund claims filed with their complaints and the deficiency notice issued to plaintiffs by the IRS on December 29, 2004), and may need to be revised based on further investigation. This caveat includes statements about amounts at issue, which, in some cases, are not easily discernable. In addition, while defendant does not agree with plaintiffs' claims, it draws from portions of them here to demonstrate the necessity of extensive discovery. Defendant's statements herein or in this JPSR do not concede any tax benefits or any issues relevant thereto, including the validity of any transaction (or any part thereof), the validity of any entity (or any part thereof) or the bona fides of a security etc.

issues presented. In reality, it is not one case or even three consolidated into one, but currently seven, including three separate tax shelters, with every indication that the numbers will grow. At present, the case spans seven tax years, 1995-2001, and soon will include two more, 2002-2003, after plaintiffs amend their complaints and file new suits based on the 2008 Claims. The first seven years now in litigation already present three complex tax shelters, each its own case involving more than one transaction, and an additional four cases of small to large size. Regarding 2008 Claims not yet in litigation, defendant understands that plaintiffs intend, at a minimum, to litigate two additional complex tax shelters that impact whether there is an overpayment for years already in suit as well as for two additional tax years (2002-2003). In sum, the number of separate complex tax shelters that will be contested in this single "case" totals five, bringing the real number of suits to nine (with more possible from the 2008 Claims).

The three tax shelters currently in litigation are: (1) Previously Taxed Income ("PTI"); (2) Perpetual Securities ("PS"); and (3) Custodial Share Receipts ("CSR"). Each shelter itself involves more than one transaction, and, as is not uncommon with complex shelter transactions, it appears that each generated voluminous documents and involved multiple third parties, including, for example, banks and law firms. Because defendant was not present when these shelters were transacted, it must obtain and digest all possibly relevant documents and then identify and depose all possibly relevant individuals and entities - in short, a mammoth undertaking.

PTI involves two separate transactions, Whispering Woods (1999-2001) and Whistling Pines (2001-2003). The tax years involved include 1996, 1997, 1999-2003, and the amount of tax at issue is approximately $24 million. In addition, penalties at issue for this shelter and PS, discussed next, approximate $27 million. Third parties involved in Whispering Woods include

World Trading, Inc., an affiliate of Bankers Trust Corporation, Deutsche Bank AG, four Cayman Islands corporations (Bleeker Investments Limited, Broome Investments Limited, MacDougal Investments Limited, and Varick Investments Limited), Bluewater Creek Management Co., and BT Overseas Finance, an affiliate of Deutsche Bank AG. Third parties involved in Whistling Pines include Charlton Inc., an affiliate of Bankers Trust Corporation, Duetsche Bank AG, two Cayman Islands corporations (DB Warren Investments Limited and DB Rivington Investments Limited), and Cedar Investment Co.

PS involves three transactions or groups of securities, "Evergreen" (involving 10 sets of securities), "Seve" (involving an unknown number of securities), and "Asgard" (involving an unknown number of securities). The tax years involved in Evergreen and Seve include 1998-1999 and 2001, and in Asgard 2000. (There also appear to be protective claims related to one or more of these three groups for 2002-2003). In addition to the penalty issue noted above, the amount of tax at issue is approximately $100 million. There is little about Seve and Asgard in plaintiffs' refund claims, but third parties in Evergreen include Morgan Stanley, Evergreen Primary Trust, JPMorgan Chase Bank, Holly Issuer Trust, Morgan Stanley Credit Products Ltd., Barclays Bank, Royal Bank of Scotland, Lloyds Bank, National Westminster Bank, Australia & New Zealand Bank, BNP, Paribus, and Brown & Wood LLP (now known as Sidley Austin Brown & Wood).

CSR involves four transactions including tax years 1996-2001, with amount of tax at issue in each year ranging from approximately $1 to $3.5 million. Third parties are not known at this time.

Amended returns for 1997 and 2000 dated February 12, 2008, identify two additional shelters, Wind River and Osprey. Neither is yet in litigation but defendant understands plaintiffs

intend to pursue both by amendments to the complaints filed in Fed. Cl. No. 07-706 and Fed. Cl. No. 08-135. The tax years involved for Wind River include 1997 and 2002. The amount of tax at issue is approximately $78 million. Third or affiliated parties include Wind River Corporation, North Pine Finance, Inc., a subsidiary of Deutsche Bank, and KPMG LLP.

The tax years involved for Osprey are 1997 and 2002 (with apparent protective claims regarding 2003), and the amount of tax at issue is approximately $21 million. Third or affiliated parties include Principal Investors Corp., Principal Financial Services, Inc., Principal International de Chile, S.A., Deutsche Bank AG, Enron Corp., Osprey Trust, Osprey 1, Inc., Osprey Associates, LLC, and KPMG LLP.

In addition to the three tax shelters in litigation and the two coming, this case currently also includes four additional cases of small to large size. The first additional case is the largest - plaintiffs' claim for approximately $500 million in tax, interest, and penalties, based on untimely assessments. This claim involves tax years 1996-2000.

The second is a bad debt claim regarding a 1979 mortgage, includes tax years 1999, 2000 and/or 2001, and tax at issue of approximately $319,924. Third parties include Sun Laboratories, Inc., Nasaro, Inc., Yoram Fishman, and Robert Milgroom.

The third is a claim regarding "termination" of a "reinsurance agreement," includes tax years 1999, 2000, and/or 2001, and tax at issue of approximately $800,000/yr for 8 years or $400,000/yr for 15 years. Third parties include Coventry Health Care, Inc.

Finally, the fourth additional "case" is an amalgamation of various claims related to dividends received deductions, direct foreign tax credits, and indirect foreign tax credits, includes tax years 1999, 2000, and/or 2001, and tax at issue of approximately $800,000.[2]

Since this case is highly unusual in the number and complexity of the issues presented, it

warrants an unusually long discovery period. It is essential that defendant, a non-party to plaintiffs' activities, have a fair opportunity to properly and fully investigate the enormous tax benefits plaintiffs seek from five voluminous and complex tax shelter transactions. Given that it is defendant's experience that one year is the minimum normal fact discovery period allotted in the Court of Federal Claims for a case involving only one tax shelter and that this extraordinary case involves not only five tax shelters but also a minimum additional four cases, defendant respectfully requests a two-year period for fact discovery. (Plaintiffs below join defendant in proposing a two-year fact discovery period).

Paragraph 5:

**Discovery and Case Plan:**

The parties recommend discovery be simultaneous and on all issues, and jointly propose the following schedule:

Initial Disclosures: June 30, 2008

Close of Fact Discovery: June 30, 2010

Plaintiffs' expert witnesses and reports: July 31, 2010

Defendant's expert witnesses and reports: August 31, 2010

Plaintiffs' rebuttal experts and reports: September 30, 2010

Defendant's rebuttal experts and reports: October 31, 2010

Close of Expert Discovery: January 31, 2011

Summary Judgment Motion Deadline: May 1, 2011

[2] This list may increase, depending on what portions of the February 2008 refund claims plaintiffs pursue in court. Moreover, defendant does not list here the 453A and guaranty fund assessment claims currently in litigation for 1995-2001. Plaintiffs intend to make an offer to settle these claims along the lines of the Court's prior opinion. While there is no guarantee that a settlement will be achieved, the offer will be processed in accord with the normal procedures of the Department of Justice, Tax Division, and the parties will inform the Court of any significant developments in that regard.

Date 5/30/2008

Respectfully submitted,

BRUCE GRAVES
Brown, Winick, Graves; Gross, Baskerville and Schoenebaum, PLC
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone: 515/242-2400
Facsimile: 515/283-0231
Email: *graves@brownwinick corn*

OF COUNSEL:
William C. Brown, Esq. John D. Schmidt, Esq.
Attorneys for Plaintiffs

BART D. JEFFRESS Attorney of Record
U.S. Department of Justice Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office Washington, D.C. 20044
(202) 307-6496
(202) 514-9440 (fax)

NATHAN S. HOCHMAN Assistant Attorney General

DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section

5/30/2008
Date

Of Counsel
Attorneys for Defendant