IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

NO. 1:07-cv-00006-FMA
(Consolidated with Nos.
07-706, 08-135, and 08-605)
(Judge Francis M. Allegra)

PRINCIPAL LIFE INSURANCE COMPANY AND SUBSIDIARIES,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

_____

**PLAINTIFF'S BRIEF
IN SUPPORT OF PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

_____

Bruce Graves
Brown, Winick, Graves, Gross,
Baskerville and Schoenebaum, P.L.C.
Suite 2000, Ruan Center
666 Grand Avenue
Des Moines, Iowa 50309
Telephone: 515/242-2400
Fax: 515/283-0231

ATTORNEY FOR PLAINTIFF

# TABLE OF CONTENTS

**Page**

Table Of Authorities ..................................................................................................iii

Questions Presented .................................................................................................. 1

Statement Of The Case .............................................................................................. 1

Argument .................................................................................................................... 5

    I.   Principal Is Entitled To Refund Of A Portion Of Its Payment Made Following Issuance Of The Notice Of Deficiency As A Result Of IRS's Failure To Timely Assess The Taxes Set Forth In The Notice. ................... 5

        A.    Resumption Of The Statute Of Limitations Period Under Section 6213(b)(4) ................................................................................ 5

        B.    *Lewis v. Reynolds* And Its Misguided Progeny. ................................. 11

        C.    Under *Rosenman*, No Liability Exists Until Proper Assessment And A Remittance Before Assessment May Therefore Constitute An Overpayment ................................................ 19

        D.    The Plain Meaning Of The Statute ...................................................... 24

    II.  Principal's Payment Did Not Remain A "Deposit As A Matter Of Law" Under The *Rosenman* Doctrine ........................................................ 28

    III.  Under The Facts And Circumstances Test, Principal Made Payment Of The Tax, Penalty, And Interest On January 28, 2005, When It Requested That Its Cash Bond Be Applied For That Purpose ................... 35

      A.  Intent To Contest The Tax Liability ...................................................... 36

      B.  How IRS Treated The Remittance Upon Receipt ................................. 38

      C.  The Taxpayer's Intent ........................................................................ 41

    IV.  Alternatively, If Principal's Remittance Remained A Deposit As A Matter of Law Prior To Assessment, It Nevertheless Became An "Amount Paid In Respect of A Tax" Within The Meaning Of Section 6213(b)(4) On January 28, 2005, And Started The 60-Day Period Under Section 6503(a). ................................................................ 45

**Conclusion** ............................................................................................................ **49**

**Appendix  I**

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Abbott Lab.s v. U.S.,* 84 Fed. Cl. 96 (2008),
    *aff'd,* 573 F.3d 1327 (Fed. Cir. 2009) ............................................................. 25

*Ameel v. U.S.,* 426 F.2d 1270 (6th Cir. 1970) .............................................. 31

*Anderson v. U.S.,* 15 F. Supp. 216 (Ct. Cl. 1936) ................................... 17, 18

*Auto-Ordnance Corp. v. U.S.,* 822 F.2d 1566 (Fed. Cir. 1987) ....................... 26

*Bachner v. Comm'r,* 109 T.C. 125 (1997), *aff'd,* 172 F.3d 859 (3d Cir. 1998) .............. 16

*Badaracco v. Comm'r,* 464 U.S. 386 (1984) ................................................. 25

*Baral v. Comm'r.,* T.C.M. (CCH) 2009-113, n.5 ........................................ 10

*Baral v. U.S.,* 528 U.S. 431 (2000) ......................................... 21, 28, 33, 34, 35, 38, 44, 47

*Becker Bros, Inc. v. U.S.,* 61 A.F.T.R.2d 1147 (C.D. Ill. 1988) ......................... 18-19, 31

*BedRoc, Ltd., LLC v. U.S.,* 541 U.S. 176 (2004) ........................................... 25

*Brad Foote Gear Works, Inc. v. U.S.,* 388 F.2d 894 (Ct. Cl. 1961) ................................ 48

*Bull v. U.S.,* 295 U.S. 247 (1935) ................................................................. 13

*Bull v. U.S.,* 479 F.3d 1365 (Fed. Cir. 2007) .............................................. 25

*Charles Leich & Co. v. U.S.,* 333 F.2d 871, *aff'd on reh'g,*
    329 F.2d 649 (Ct. Cl. 1964) .......................... 10, 17, 18, 22, 23, 28, 29, 30, 36, 38

*Chase Sec. Corp. v. Donaldson,* 325 U.S. 304 (1945) ................................... 11

*Ciccotelli & Mason v. U.S.,* No. 08-1886, 2009 WL 929106
    (E.D. Pa. Apr. 2, 2009), *vacated in part,* No. 08-1886, 2009
    WL 1648894 (E.D. Pa. June 9, 2009) .............................................. 41

*Clearmeadow Investments, L.L..C v. U.S.,* 87 Fed. Cl. 509 (2009) .............................. 41

*Cohen v. U.S.,* 995 F.2d 205 (Fed. Cir. 1993) .............................. 5, 18, 29, 30, 31, 32, 35,
    ............................................................................. 36, 38, 46, 48, 49

*Comm'r v. Lundy*, 516 U.S. 235 (1966) ........................................................ 25

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) .................................. 24, 25

*Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980)............... 24

*Crnkovich v. U.S.*, 41 Fed. Cl. 168 (1998), *aff'd*, 202 F.3d 1325 (Fed. Cir. 2000) ........ 11

*Crompton & Knowles Loom Works v. White*, 65 F.2d 132
     (1st Cir. 1933) .................................................... 14, 15, 16, 17, 23, 31

*Crooks v. Harrelson*, 282 U.S. 55 (1930) ...................................................... 26

*Dallin v. U.S.,* 62 Fed. Cl. 589 (2004)............................................................ 9

*Deaton v. Comm'r*, 440 F.3d 223 (5th Cir. 2006)..................................... 34, 47

*Dowell v. Comm'r*, 41 T.C.M. (CCH) 390 (1980),
     *aff'd*, 738 F.2d 354 (10th Cir. 1984) ................................................. 41

*Dysart v. U.S.*, 340 F.2d 624 (Ct. Cl. 1965)...................................................... 14

*Ertman v. U.S.*, 165 F.3d 204 (2nd Cir. 1999) .................................................. 34

*Estate of Goetz v. U.S.*, 286 F. Supp. 128 (W.D. Mo. 1968) ................................. 19, 31

*Ewing v. U.S.*, 914 F.2d 499 (4th Cir. 1990)......................................16, 31, 41

*Exxon Corp. v. Comm'r*, 78 T.C.M. (CCH) 165 (July 28, 1999)............................ 19, 24

*FDIC v. Meyer*, 510 U.S. 471 (1994) ........................................................... 25

*Fisher v. U.S.*, 80 F.3d 1576 (Fed. Cir. 1996).........................................13-14

*Fisher v. U.S.*, 28 Fed. Cl. 88 (1993), *vacated and remanded
     on other grounds,* 80 F.3d 1576 (Fed. Cir. 1996) ...................................29, 31, 35

*Flora v. U.S.*, 362 U.S. 145 (1960) ...........................................9, 26, 29, 37

*Ford Motor Co. v. U.S.*, No. 08-12960, 2009 WL 2922875
     (E.D. Mich. Sept. 9, 2009)....................................................40, 44, 45

*Fortugno v. Comm'r*, 353 F.2d 429 (3d Cir. 1965)...................................... 23

*Gabelman v. Comm'r*, 86 F.3d 609 (6th Cir. 1996) ...................................... 34

*Girard Trust Bank v. U.S.*, 643 F.2d 725 (Ct. Cl. 1981) ...................... 5, 6, 19, 21, 23, 27

*Greer v. Comm'r*, 103 A.F.T.R.2d 2009 (6th Cir. 2009) ............................................... 37

*Harrigill v. U.S.*, 410 F.3d 786 (5th Cir. 2005) ............................................................ 34

*Hibbs v. Winn*, 542 U.S. 88 (2004) ...................................................................... 5, 6, 21

*Huskins v. U.S.*, 75 Fed. Cl. 659 (2007) ............................................. 19, 28, 31, 34, 41

*Jones v. Liberty Glass Co.*, 332 U.S. 524 (1947)................................................11, 12, 26

*Laing v. U.S.*, 423 U.S. 161 (1976) ........................................................................ 6, 21

*Lewis v. Reynolds*, 284 U.S. 281 (1932)................................11, 12, 13, 14, 16, 19, 30, 31

*Malachinski v. Comm'r*, 268 F.3d 497 (7th Cir. 2001) ................................................ 16

*March v. IRS*, 335 F.3d 1186 (10th Cir. 2003) ............................................................ 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986)........ 41

*Meyersdale Fuel Co. v. U.S.*, 44 F.2d 437 (Ct. Cl. 1930)
        *cert. den.*, 283 U.S. 860 (1931) .................................................................. 17, 18

*Moran v. U.S.*, 63 F.3d 663 (7th Cir. 1995).......................................................16, 23, 31

*Muir v. U.S.*, 78 Ct. Cl. 765 (1930) .................................................................... 17, 18

*N.Y. Life Ins. Co. v. U.S.*, 118 F.3d 1553 (Fed. Cir. 1997).................... 18, 28, 31, 32, 35,
        ...................................................................................................36, 38, 46, 48

*N. Natural Gas v. U.S.*, 354 U.S. 310 (Ct. Cl. 1965) .........................................17, 28, 29

*O'Brien v. U.S.*, 766 F.2d 1038 (7th Cir. 1985)........................................................... 48

*Pac. Gas & Elec. Co. v. U.S.*, 417 F.3d 1375 (Fed. Cir. 2005),
        *reh'g and reh'g en banc den.*, Jan. 13, 2006.................................................... 13

*Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189 (1985) ............................... 25

*Phillips Petroleum Co. v. Comm'r*, 61 T.C.M. (CCH) 2836 (June 6, 1991) ................... 24

*Plankinton v. U.S.*, 267 F.2d 278 (7th Cir. 1959)........................................................ 34

*Principal Life Ins. Co. v. U.S.*, 70 Fed. Cl. 144 (2006) ................................................ 37

*Reading Co. v. U.S.*, 98 F. Supp. 598 (Ct. Cl. 1951) ..................................................... 22

*Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) ............................................................. 26

*Richards v. U.S.*, 369 U.S. 1 (1962) .............................................................................. 25

*Rosenman v. U.S.*, 323 U.S. 658 (1945) .............................. 15, 17, 18, 19, 20, 21, 22, 23,
.......................................................................... 27, 28, 29, 30, 33, 35, 44, 46, 48

*Rothensies v. Elec. Battery Co.*, 329 U.S. 296 (1946) ................................................... 11

*Rubin v. U.S.*, 449 U.S. 424 (1981) ............................................................................... 25

*Scar v. Comm'r*, 814 F.2d 1363 (9th Cir. 1987) ............................................................ 9

*South Corp. v. U.S.*, 690 F.2d 1368 (Fed. Cir. 1982) .................................................... 26

*Stanley v. U.S.*, 140 F.3d 1023 (Fed. Cir. 1998) .................................................... 40, 44

*Stone v. White*, 301 U.S. 532 (1937) ............................................................................ 13

*Thomas v. Mercantile Nat'l Bank*, 204 F.2d 943 (5th Cir. 1953) .................................. 46

*U.S. v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008)..................... 18, 29, 32, 37

*U.S. v. Dalm*, 494 U.S. 596 (1990)............................................................................... 13

*U.S. v, Diebold,* 369 U.S. 654, 655 (1984) .................................................................... 41

*U.S. v. Galletti*, 541 U.S. 114 (2004) .................................................................... 5, 6, 21

*U.S. v. Miller*, 318 F.2d 637 (7th Cir. 1963)................................................................... 6

*U.S. v. Miller*, 315 F.2d 354 (10th Cir. 1963)..................................................... 10, 34, 41

*Usibelli Coal Mine v. U.S.*, 54 Fed. Cl. 373 (2002, *rev'd on other
    grounds*, 311 Fed. Appx. 350 (Fed. Cir. 2008)................................................... 48

*VanCanagan v. U.S.*, 231 F.3d 1349 (Fed. Cir. 2000) ............................ 28, 31, 34, 35, 41

*VanWersch v. Dept. of Health & Human Servs.*, 197 F.3d 1144
    (Fed. Cir. 1999) ................................................................................................ 26

*Vons Cos., Inc. v. U.S.,* 51 Fed. Cl. 1 (2001) .................................................................. 9

*Williams-Russell & Johnson, Inc. v. U.S.*, 371 F.3d 1350

(11th Cir. 2004) ............................................................................ 16, 17, 23, 31

*White v. Aronson*, 302 U.S. 16 (1937) ........................................................ 27

**Statutes:**

Revenue Act of 1926, §277, 44 Stat. 9 .......................................................... 15

Revenue Act of 1928, §607, 45 Stat. 874.. .................................................... 14

Internal Revenue Code of 1986, 26 U.S.C.:

§ 6110(k)(3) ............................................................................................ 9

§ 6151(a) ......................................................................................... 21, 34

§ 6201 ..................................................................................................... 5

§ 6201(a) ...................................................................................... 5, 6, 27

§ 6201(a)(1) ................................................................................. 5, 21, 27

§ 6202 ............................................................................................... 6, 27

§ 6203 ..................................................................................................... 6

§ 6211 ..................................................................................................... 6

§ 6213 ..................................................................................................... 5

§ 6213(a) .................................................................... 1, 6, 7, 27, 46, 48

§ 6213(b) .............................................................................................. 17

§ 6213(b)(4) ................... 1, 2, 5, 7, 8, 9, 10, 27, 28, 34, 36, 39, 41, 45, 46, 47, 48

§ 6303 .................................................................................................. 27

§ 6401 ......................................................................................... 5, 17, 24, 32

§ 6401(a) ........................................ 1, 5, 10, 14, 16, 18, 20, 25, 26, 27, 31, 46, 49

§ 6401(c) ......................................................................................... 22, 23

§ 6402 ..................................................................................................... 5

§ 6402(a) ........................................... 5, 10, 11, 20, 27, 30, 46, 49

§ 6411 ..................................................................................................... 4

§ 6501 ................................................................................................... 27

§ 6501(a) ......................................................................................... 1, 15

§ 6501(h) .............................................................................................. 4

§ 6501(k) .............................................................................................. 4

§ 6502(a) ............................................................................................ 15

§ 6503 ................................................................................................... 5

§ 6503(a) ........................................................................... 7, 27, 45, 46, 48

§ 6511(a) ............................................................................................ 30

§ 6511(b)(2)(A) ................................................................................... 33

§ 6513(b)(2) ......................................................................... 21, 33, 34, 35

§ 6601(a) ............................................................................................ 39

§ 6603 ..................................................................... 2, 33, 35, 43, 46, 47, 48

§ 6603(b) ............................................................................................ 39

§ 6603(c) ............................................................................................ 33

§ 6603(d) ............................................................................................ 43

§ 6603(d)(2)(A) ................................................................................... 48

§ 6621(c) .......................................................................... 2, 38, 39, 40

§ 6851(a)(1) ........................................................................................ 21

§ 7422(a) ............................................................................................ 37

## Treasury Regulations:

§ 1.461-1(a)(2) ................................................................................... 23

§ 1.461-4(g)(1)(ii)(A) .......................................................................... 23

§ 301.6203.1 ......................................................................................... 6

§ 301.6404-2(b)(1) .............................................................................. 10

§ 301-6404-2(b)(2) .............................................................................. 10

**Other:**

I.R.M. § 8.2.1.7.3(2) .................................................................................. 8

C.C.A. 200236007 (Sept. 6, 2002) ........................................................... 9

C.C.A. 200842042 .................................................................................... 9

I.R.S. P.L.R. 8738041, (June 23, 1987).............................................. 10, 34

I.R.S. Chief Counsel Advisory 200236007, at 4 ....................................... 41

I.R.S. Technical Advice Memorandum 9613001, at 3 ................................ 41

House Conference Comm. Rep. No. 510, 78th Cong., 1st Sess., at 48 (1943)............... 23

H.R. REP. NO. 108-548, pt. 1, at 246 (2004)............................................ 33

Merriam Webster's Collegiate Dictionary (11th ed., 2004) ......................... 26

Oxford English Dictionary, 2d ed. ................................................. 19, 21, 24

Rev. Proc. 84-58, 1984-2 C.B. 501 ...................................... 2, 8, 43, 44, 45, 46

Rev. Proc. 2005-18, 2005-1 C.B. 798 ................................... 8, 9, 33, 40, 43, 44

Rev. Rul. 2007-51, 2007-30 I.R.B. ........................................................... 21

S. REP. NO. 78-221, at 34 (1943).............................................................. 23

S. REP. NO. 108-192, p. 139 (2003)........................................................... 33

Webster's College Dictionary (Random House 1991) ...................... 19-20, 24

## QUESTIONS PRESENTED

1.    Whether the term "overpayment" in Section 6401(a) includes the additional taxes and penalties set forth in a notice of deficiency that were paid by the taxpayer before, but assessed by IRS after, expiration of the statute of limitations on assessment.

2.    Whether a taxpayer may, by written communication to IRS, apply a previous cash bond deposit to payment of the taxes and penalties set forth in a notice of deficiency.

3.    Whether under Section 6213(b)(4)[1], a payment of tax or an amount paid in respect of the tax set forth in a notice of deficiency before the expiration of the 90-day period referred to in Section 6213(a)(1) triggers commencement of the 60-day period referred to in Section 6501(a)(1), upon expiration of which any assessment is barred.

## STATEMENT OF THE CASE

On December 29, 2004, two days before the statute of limitations for 1999 and 2000 was set to expire,[2] IRS issued its notice of deficiency claiming the following additional taxes and penalties due from Principal: (Pl. Prop. Find. ¶8)

| Tax Year Ended | Tax Deficiency | Penalty | Total |
|---|---|---|---|
| Dec. 31, 1996 | 8,806,758 | 961,609 | 9,768,367 |
| Dec. 31, 1997 | 22,097,933 | 780,951 | 22,878,884 |
| Dec. 31, 1998 | 37,509,413 | 7,491,744 | 45,001,157 |
| Dec. 31, 1999 | 164,888,638 | 10,848,700 | 175,737,338 |
| Dec. 31, 2000 | 128,727,605 | 7,294,419 | 136,022,024 |
| Total | 362,030,347 | 27,377,423 | 389,407,770 |

Principal's consistent practice, upon receipt of notification from IRS of an alleged deficiency, was to pay the tax alleged to be due and then sue for refund of the portion it

---

[1] Unless otherwise indicated, all statutory references herein are to the Internal Revenue Code of 1986, 26 U.S.C., as in effect during the years in suit.

[2] The statute had been extended by Principal's agreement. By virtue of a similar extension, the statute of limitations for 1998 expired on June 30, 2003.

1

considered overpaid (after filing the requisite claims for refund and waiting the necessary six months). (Pl. Prop. Find. ¶¶ 6, 7). One of the reasons for paying the tax was to stop the running of underpayment interest, and in this instance it had the same objective of stopping, as soon as possible, the accrual of underpayment interest, including interest on large corporate underpayments under Section 6621(c), on the alleged deficiencies and penalties. (Pl. Prop. Find. ¶¶ 14, 16). However, Principal concluded that before making payment it should request and obtain the consent of a third party that had agreed to indemnify Principal with respect to the tax treatment of one of the substantive issues involved, lest the third party be deprived of the opportunity to contest the alleged deficiencies and penalties in Tax Court and such deprivation result in a claim of impairment of the guaranty.[3] (Pl. Prop. Find. ¶¶ 12, 13, 15). Therefore, while awaiting such consent, Principal, on January 13, 2005, accomplished its objective of stopping accrual of the underpayment interest by wire-transferring the following amounts to IRS and hand-delivering to it a letter designating such amounts as a cash bond under Section 6603 and Revenue Procedure 84-58: (Pl. Prop. Find. ¶¶ 16, 17)

| Year | Amount |
|------|--------|
| 1996 | $11,000,000 |
| 1997 | $26,100,000 |
| 1998 | $51,600,000 |
| 1999 | $202,000,000 |
| 2000 | $153,300,000 |
| Total | $444,000,000 |

After receiving the awaited consent from the third party to make payment of the tax, and after several discussions with IRS to determine the correct amount of accrued underpayment interest that it wished to pay along with the taxes and penalties, Principal on January 28, 2005

---

[3] Principal was overly cautious in this respect, however, since under §6213(b)(4) the Tax Court is not deprived of jurisdiction where payment is made after the notice of deficiency is issued.

hand-delivered another letter to IRS (which IRS by written notation on Principal's copy acknowledged receiving). (Pl. Prop. Find. ¶¶ 20, 25, 27). After referencing the cash bond deposit made on January 13, the January 28 letter stated that Principal "hereby request[s] that the Internal Revenue Service now (today) apply the deposit for each year to payment of the federal income tax, interest, and penalty in the following amounts for each year in ascending order: (Pl. Prop. Find. ¶¶ 26, 28)

| Year | Tax | Penalty | Interest |
|------|-----|---------|----------|
| 1996 | $8,806,758 | $961,609 | $2,032,704.38 |
| 1997 | $22,097,933 | $780,951 | $1,728,429.98 |
| 1998 | $37,509,413 | $7,491,744 | $6,303,004.87 |
| 1999 | $164,888,638 | $10,848,700 | $24,358,720.79 |
| 2000 | $128,727,605 | $7,294,419 | $19,182,961.25" |

Upon receipt of the January 28 letter, the supervisor in the local IRS office made diligent efforts to comply with Principal's request to apply the cash bond to payment of the tax that very day, including about a dozen telephone calls to and from other IRS personnel in other offices and processing centers. However, no payment appears as of that day in the official IRS transcripts of Principal's account and the evidence indicates that, in accordance with its routine practice in such instances, IRS merely filed Principal's January 28 letter away in its case file to be retrieved later when necessary. (Pl. Prop. Find. ¶¶ 32, 33, 38). No payment appears in the transcripts until May 27, 2005, the date on which IRS made its assessment of the taxes, penalties, and interest. (Pl. Prop. Find. ¶¶ 41, 42, 47, 48, 50). Yet, other IRS forms generated in October, 2005 indicate that no interest under Section 6621(c) on large corporate underpayments was accrued or assessed against Principal and the only factor that can account for the non-accrual of such interest is the absence of any underpayment on January 29, 2005, 30 days after the notice of deficiency was issued. (Pl. Prop. Find. ¶¶ 36, 42).

3

Principal's returns for 2001 and 2002 showed substantial net operating losses and capital losses. (Case 1:08-cv-00135-FMA, Document 1, ¶ 34 at 22-23; Case 1:07-cv-00006-FMA, Document 26, ¶ 34 at 17). Under the carryback rules then in effect, portions of such losses were carried back to the 1996-2000 taxable years for tentative refunds under Section 6411, thereby generating prompt refunds of parts of the taxes paid for such years. Upon examination of Principal's returns for 1999, 2000, and 2001, IRS disallowed portions of the 2001 and 2002 losses. Consequently, all of the tax deficiencies set out in the December 29, 2004 notice of deficiency relating to the 1996 and 1997 taxable years, and all but approximately $24,462,641 of the deficiencies in tax for 1998, 1999, and 2000, related to IRS's effort to recover all or a portion of the taxes for those years that had previously been refunded pursuant to Section 6411. Accordingly, the statute of limitations for assessment of such deficiencies attributable to carrybacks is determined under Sections 6501(h) and (k), and IRS's assessments of such amounts on May 27, 2005 were timely and are not at issue in this summary judgment proceeding. What is at issue is the timeliness of IRS's May 27, 2005 assessments with respect to the approximately $24,462,641 in taxes for 1998[4], 1999, and 2000, and, since all of the penalties are attributable to issues arising in 1999 and 2000, all of the penalties assessed for 1996-2000 in the aggregate amount of $27,377,423, for a grand total of $51,840,064 (Pl. Prop. Find. ¶53.3) (Def.'s Br. 2 erroneously estimates the amount at $100 million).

---

[4] IRS's May 26, 2005 assessment attributable to non-carryback issues in 1998 was late because the statute of limitations for 1998 expired on June 30, 2003. (Pl. Prop. Find. ¶ 9)

# ARGUMENT

## I.  PRINCIPAL IS ENTITLED TO REFUND OF A PORTION OF ITS PAYMENT MADE FOLLOWING ISSUANCE OF THE NOTICE OF DEFICIENCY AS A RESULT OF IRS'S FAILURE TO TIMELY ASSESS THE TAXES SET FORTH IN THE NOTICE.

> *"Taxation, perhaps more so than all other relationships between government and the governed, operates within a belief on both sides that the rules should be clear and uniformly applied, that each party should abide by the rules, and that each should accept the consequences of its choice of action under those rules."*
> Cohen v. U.S., *995 F.2d 205, 209 (Fed. Cir. 1993).*

### A.  Resumption Of The Statute Of Limitations Period Under Section 6213(b)(4).

The rules, in this case, are the carefully integrated provisions of Chapters 63 through 68 of the Code and, in particular, Sections 6201, 6213, 6401, 6402, and 6503.  Section 6201(a)(1) directs that "[t]he Secretary **shall** assess all taxes . . . as to which returns or lists are made under this title."  (emphasis added.)  *See*, *Hibbs v. Winn*, 542 U.S. 88, 115 (2004).  Section 6201(a) requires that the tax be assessed "**at the time** and in the manner **provided by law**," i.e., within the period of limitations therefor.  (emphasis added.)

Section 6401(a) defines an "overpayment" to include "that part of the amount of the **payment** . . . **which is assessed** or collected **after the expiration of the period of limitation** properly applicable thereto."  (emphasis added).  Section 6402(a), after first providing the government the right to offset a taxpayer's overpayment against any tax otherwise due, mandates that "the Secretary . . . **shall** [subject to certain exceptions not applicable here] **refund any balance** [of an overpayment] to such person."  (emphasis added).

When a taxpayer files his return on the original or extended due date, Section 6201(a)(1) requires the IRS to formally assess the taxes determined, or, as is often said, "self-assessed," by the taxpayer.  *U.S. v. Galletti*, 541 U.S. 114, 122 (2004); *cf*., *Girard Trust Bank*, 643 F.2d 725,

727, n.8. (Ct. Cl. 1981) ("[S]elf-assessment is a rhetorical taradiddle."). Section 6203 prescribes how the formal assessment is to be made, namely, "by recording the liability of the taxpayer in the office of the Secretary in accordance with the rules or regulations prescribed by the Secretary."[5] "Assessment" is not the same as "deficiency," which is defined in Section 6211 but which, in essence, is "the amount of tax imposed less any amount that may have been reported by the taxpayer on his return." *Laing v. U.S.*, 423 U.S. 161, 173 (1976). Where there is a dispute, "tax imposed," has been defined as "the tax as finally determined," which Section 6201(a) requires be assessed in a timely manner. *Girard Trust Bank*, 643 F.2d at 727 n.6. Only where the time for assessment of such items as "additional amounts, additions to the tax, and assessable penalties" is not "otherwise provided for" may the IRS control the timing of the assessments by its own regulations. Section 6202.

Treasury Regulation § 301.6203-1 implements Section 6203 by requiring that a designated assessment officer make the assessment by signing a summary record of assessment containing certain specified information. *See*, *March v. IRS*, 335 F.3d 1186 (10th Cir. 2003). The regulation further provides that the date of the assessment is the date the summary record is signed by the assessment officer. The significance of the assessment, as the Supreme Court explained in *Galletti*, 541 U.S. at 122, is that it "triggers certain consequences. After the amount of liability has thus been established and recorded, the IRS can employ administrative enforcement methods to collect the tax." *See also, Hibbs*, 542 U.S. at 101-02.

However, Section 6213(a) accords the taxpayer his right of procedural due process by imposing certain requirements and procedures on IRS before the taxpayer's liability for

---

[5] According to the Seventh Circuit, this is the "technical" meaning of the term "assessment." *U.S. v. Miller*, 318 F.2d 637, 638-39 (7th Cir. 1963).

additional tax beyond that shown on the return can be established by assessment and before

collection efforts are undertaken.  Section 6213(a) requires IRS to send a notice of deficiency

and accords the taxpayer the right for 90 days to file a petition in Tax Court for

"redetermination" of the alleged deficiency.  Absent payment of the tax during such period, as

occurred in this case, IRS is prohibited from assessing the deficiency for such 90-day period (or,

if a petition is filed, until the Tax Court's decision becomes final).  Under Section 6503(a), the

statute of limitations on assessment is suspended during the period in which IRS is prohibited

from assessing the tax under Section 6213(a).

At the heart of this case, however, is Section 6213(b)(4), which provides in relevant part:

(4)  ASSESSMENT OF AMOUNT PAID.—Any amount paid as a tax or in respect
of a tax may be assessed upon the receipt of such payment notwithstanding the
provisions of subsection (a).

Despite Section 6213(b)(4), however, upon receipt of Principal's January 28, 2005 letter

directing that its previous cash bond deposit be applied that day to payment of the taxes and

penalties set forth in the notice of deficiency, plus accrued underpayment interest, IRS did not

make any assessment within 62[6] days thereafter (Pl. Prop. Find. ¶¶47, 48, 50), either because it

erroneously believed it was prohibited from doing so or that it had until May 27, 2005 to do so,

or both (Pl. Prop. Find. ¶37).  IRS's Des Moines office supervisor, Jim Hale, testified that he

believed that issuance of the notice of deficiency prevented any assessment from being made

until May 27, 2005 because Principal had not signed a Form 870 waiving the restrictions on

assessment.  (Pl. Prop. Find. ¶ 52).  IRS examination team leader, Chris Heth, to whom Principal

hand-delivered the January 28 letter, testified that she simply filed the letter in her files of the

_____
[6] 60 days under Section 6213(b)(4) plus the 2 days left on the limitations period when the notice
of deficiency was issued on December 29, 2004.

case (Pl. Prop. Find. ¶ 38), and Principal's expert, David Boucher, testified that rather than being used to trigger an assessment, such letters are usually handled in that manner, i.e., merely tucked away in the case file by the IRS until needed later for interest computations.  (App. II, Ex. A-6, Boucher Dep. Ex. 2, ¶29 at II0230).  In any event, it is the government's position in this case that IRS had no obligation to take any action as a result of receipt of Principal's January 28 letter. (Pl. Prop. Find. ¶38)

Plaintiffs therefore believe that IRS overlooked or carelessly disregarded the resumption of the statute of limitations on assessment under Section 6213(b)(4), which is integral part of a carefully-woven statutory scheme governing assessments, collections, overpayments, and refunds.  Section 6213(b)(4), when considered as a part of the statutes referred to above, dictates that IRS cannot sit idly by once the taxpayer pays the tax after a notice of deficiency has been mailed, or if it does, it does so at the peril of the federal fisc.  These statutory rules, taken together, impose upon IRS a duty in the administration of the tax laws to assess the tax promptly in such instances and, in any event, within 60 days of receipt of such a payment.

Moreover, it is not enough that the IRS merely acknowledges that Section 6213(b)(4) **permits** the assessment to be made upon receipt of payment, Revenue Procedure 84-58, Section 2.02, 1984-2 C.B. 501, *superseded by* Revenue Procedure 2005-18, 2005-1 C.B. 798, or even that it directs its agents to, "in non-docketed cases which will be delayed in closing, or where the payment might exceed the tax due, assess the liability promptly."  I.R.M. § 8.2.1.7.3 (2001 and 2005 versions). Its counsel has been even more explicit, also recommending that assessment of payments be made in "non-docketed cases that are likely to be delayed in closing," and then encouraging that assessment be made "for a number of reasons, **such as avoiding statute of**

**limitations problems**." *C.C.A. 200236007* (Sept. 6, 2002) (emphasis added).[7]     Whether this Chief Counsel's Advisory is a tacit acknowledgement of the import of Section 6213(b)(4) is unclear; what is clear is that IRS has declined or failed to take its counsel's advice and has continued to rely on its established procedures.[8]  Those procedures are apparently based on the assumption that it has from the 91st day to the 150th day after issuance of a notice of deficiency to make the assessment,[9] even where the taxpayer has paid the tax during the 90-day period.  IRS even admits in this case that the reason for its inaction is because "[t]his 'request' [referring to the January 28, 2005 letter's instruction that the cash bond deposit be applied in payment of the tax, interest and penalties] falls outside of any of the authorized procedures that govern deposits and payments, including Revenue Procedure 2005-18." (App. II, Ex. B-3 at II0272).  In its brief, the government is more specific, arguing that "a taxpayer is not entitled to direct the IRS to convert a deposit into a payment, as taxpayer attempted to do here."  (Def.'s Br. 21)

In *Scar v. Comm'r*, 814 F.2d 1363, 1368 (9th Cir. 1987), the Ninth Circuit held a notice of deficiency invalid, stating that while "ministerial" and "managerial" acts might warrant freedom from direction by the courts, IRS procedures that implicate proper application of the Internal Revenue Code are proper subjects of judicial review. Similarly, in this case, IRS's

---

[7] Principal acknowledges that under Section 6110(k)(3), a Chief Counsel's Advisory may not be cited as precedent.  It is referenced here only to indicate that this subject has been considered and analyzed by IRS itself and, as with a General Counsel Memorandum, reflects IRS's interpretation, or, in this instance, its counsel's interpretation, of its own procedures. *Vons Cos., Inc. v. U.S.*, 51 Fed. Cl. 1 (2001).

[8] *Cf.*, *Dallin v. U.S.*, 62 Fed. Cl. 589, 601 (2004) ("[T]he procedures employed by the IRS, unfortunately, demonstrate less than the highest standard of care."); *Flora v. U.S.*, 362 U.S. 145, 167 (1960) ("[O]ur views would be unaffected by the constancy or inconstancy of administrative practice.").

[9] For an example of the Service updating its procedures in view of new developments, see *C.C.A. 200842042*.

decision not to assess the tax within 60 days of receiving payment following issuance of a notice of deficiency was neither a "ministerial act" under Treasury Regulation. § 301.6404-2(b)(2) nor a "managerial act" under § 301.6404-2(b)(1). Rather, it was a course of action reflecting its interpretation and application of the Internal Revenue Code and, as such, is properly reviewable by this court. *Baral v. Comm'r*, T.C.M. 2009-113 at n.5.

Therefore, Principal believes the integrated statutory framework of which Section 6213(b)(4) is a part, as well as the Federal Circuit's admonition quoted at the heading of this section that the rules of taxation should be applied to IRS and taxpayer alike, require that IRS be held to high standards and responsible for the legal consequences of its inaction under Section 6213(b)(4), just as taxpayers suffer the legal consequences of their inaction, tardiness or lax procedures. *Charles Leich & Co. v. U.S.*, 333 F.2d 871, *aff'd on reh'g*, 329 F.2d 649 (Ct. Cl. 1964) (inaction on taxpayer's part will cause him to have a legal obligation to pay the tax); *U.S. v. Miller*, 315 F.2d 354 (10th Cir. 1963) (taxpayers not entitled to recover admittedly "mistaken" payments because barred by statute of limitations); *I.R.S. P.L.R. 8738041*, (June 23, 1987) (cited not as precedent but as indication of IRS's position) (after citing Section 6213(b)(4), stating that the "taxpayer, in designating a remittance as payment of tax and related interest will have put itself in a position where its inaction will cause it to have a legal obligation to pay the tax"). The legal consequences in this case are that the May 27, 2005 assessments were late with respect to the portions of the asserted deficiencies for the years 1998, 1999, and 2000 that were not attributable to carrybacks, that the corresponding portions of Principal's remittances therefore became overpayments within the meaning of Section 6401(a), and that Principal is entitled to have such portions refunded to it as a matter of law under Section 6402(a).

Such a result should not be regarded as unjust or productive of an undeserved windfall because a statute of limitation is itself an indispensable element of fairness and practical administration of income tax policy. *Chase Secs. Corp. v. Donaldson*, 325 U.S. 304, 314 (1945) ("They [statutes of limitation] are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim."); *Rothensies v. Elec. Battery Co.*, 329 U.S. 296, 302 (1946) ("As statutes of limitations are applied in the field of taxation, the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to the revenues may be pointed out."); *Crnkovich v. U.S.*, 41 Fed. Cl 168, 180 (1998), *aff'd*, 202 F.3d 1325 (Fed. Cir. 2000) ("The court appreciates that a decision that the statute of limitations expired could be characterized as a windfall to the [taxpayers] . . . . The court's role, however, is simply to apply the tax laws as Congress drafted them.").

**B. *Lewis v. Reynolds* And Its Misguided Progeny**.

The government seeks to avoid the conclusion that IRS's untimely assessments gave rise to overpayments by relying on a string of old cases for the proposition that even when the assessment is late, there can be no "overpayment" within the meaning of Section 6402(a) where the taxpayer voluntarily paid the tax prior to the assessment. (Def.'s Br. 12-13). While it is true that early decisions gave rise to that proposition, much tax law has evolved since the 1930's, both judicially and statutorily, which now permits closer examination and placement of those cases, as well as more recent ones, in their proper perspective.

The meaning of the term "overpayment" was thoroughly explored by the Supreme Court in *Jones v. Liberty Glass Co.*, 332 U.S. 524 (1947) (Def.'s Br. 16). There, the Court traced the origin of "overpayment" to the Revenue Act of 1924 (even earlier than the 1928 use of the term

11

referred to by the government (Def.'s Br. 13 n.8)), in which it was adopted as a "simple term" to

replace amounts "paid in excess of that properly due" used in the prior revenue act.  *Jones*, 332

U.S. at 529.  The Court then went on to explain:

> The word 'overpayment' first appeared . . . as a substitute for the previous
> reference to payments 'in excess of that properly due,' a phrase that is a perfect
> definition of an overpayment and that is not necessarily confined to
> overpayments occasioned by errors made by taxpayers.  The immediate
> predecessor of s 281 [of the 1924 Act] had employed that phrase and had been
> enacted in 1923 **with the expressed intention of including claims growing out
> of illegal assessments.**  There was not the slightest indication that the substi-
> tution of the word 'overpayment' was designed to narrow the scope of s 281.  It
> apparently was a mere simplification in phraseology.  But it does make clear the
> sense in which the word was first used in this context.  **The generic character of
> the word was emphasized from the start.  And we see no basis for making it
> over into a word of art at this late date.**  *Id.* at 531-32 (emphasis added).

From this, it is apparent that the Supreme Court, in defining "overpayment," saw no

reason to condition application of the term on the sequence of payment and assessment vis-à-vis

expiration of the statute of limitations.  An untimely assessment is an illegal assessment whether

made before or after the payment.  To advocate, as the government does (Def.'s Br. 13), that an

overpayment involving an untimely assessment can only exist if payment of the tax was made

**after** the assessment is to assign to that term a highly technical meaning and relegate it to a term

of art, a result wholly contrary to the Supreme Court's careful history and interpretation in *Jones*.

The government's contention is built upon the foundation of the Supreme Court's 1932

decision in *Lewis v. Reynolds*, 284 U.S. 281 (1932) (Def.'s Br. 12, 16-18).  In that case, the

administrator of an estate filed the estate's income tax return for the taxable year 1920.  IRS

audited the return and disallowed many deductions claimed, but not the deduction for attorneys

fees, then assessed a deficiency of $7,297.16.  The sum was paid and the petitioner then

requested that it be refunded.  After the statute of limitations on assessment of any additional

deficiency had run, IRS disallowed the deduction for attorneys' fees and notified the taxpayer, in effect, that it was offsetting the additional liability against any refund that might be due.  The estate sued for the refund, contending that the expiration of the statute of limitations on assessment barred IRS from making the redetermination of the estate's tax liability upon disallowance of the fees.  The Supreme Court held that the estate was not entitled to a refund, stating:

> An overpayment must appear before refund is authorized.  Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded.  *Lewis*, 284 U.S. at 283.

Despite language that should have been recognized as overarching, this pronouncement of *Lewis* has frequently been misapplied by other courts in other contexts.  Considered in the context of its facts, *Lewis* stands for nothing more than early validation of the government's right of offset and recoupment in mitigation of any refund otherwise due the taxpayer, even though the statute of limitations would bar assessment of the amount of the offset.  Moreover, this validation occurred even a few years before recoupment and offset were first recognized by name in tax cases.  *See Bull v. U.S.*, 295 U.S. 247 (1935); *Stone v. White*, 301 U.S. 532 (1937).  Since *Bull* and *Stone,* these doctrines, which implicitly recognize the impact and importance of statutes of limitations, have been an integral part of federal tax law.  *U.S. v. Dalm*, 494 U.S. 596 (1990); *Pac. Gas & Elec. Co. v. U.S.*, 417 F.3d 1375, 1380 (Fed. Cir. 2005), *reh'g and reh'g en banc den.*, Jan. 13, 2006 (quoting the Federal Circuit's decision in *Fisher* that "*Lewis* and *Dysart* together stand for the proposition that the government may offset against a tax refund claim any additional amounts the taxpayer owes with respect to the tax shown on the return, even though the statute of limitations would bar assessing the additional amount owed"); *Fisher v. U.S.*, 80

F.3d 1576, 1579 (Fed. Cir. 1996); *Dysart v. U.S.*, 340 F.2d 624 (Ct. Cl. 1965). Recognizing the context of *Lewis*, therefore, the government's reliance on it in this case is misplaced because (1) Principal acknowledges the government's well-established rights of offset and recoupment, and (2) no offset or recoupment issue is present in this case to mitigate the refund due Principal as a result of the untimely assessment.

Yet, many courts over the years have misapplied *Lewis* by using it as the touchstone for the proposition that, as the government claims in this case, taxpayers may not in a refund suit claim entitlement to a refund based solely on expiration of the statute of limitations on assessment or collection. The courts have often done so in combination with a First Circuit case, *Crompton & Knowles Loom Works v. White*, 65 F.2d 132 (1st Cir. 1933) (Def.'s Br.13), which was decided almost contemporaneously with *Lewis*. In *Crompton,* IRS made a timely assessment of the tax deficiency against the taxpayer but, in error, failed to include underpayment interest in that assessment. The interest was not assessed until August, 1926, after the statute of limitations had expired in July, 1926. Nevertheless, IRS had issued a demand to the taxpayer for payment of the interest as well as the tax, and the taxpayer paid both in May, 1926. Then the taxpayer sued for refund of the interest.

The First Circuit in *Crompton* found that while the underpayment interest paid was assessed late, there was no overpayment of such interest because there was no dispute that the interest should have been assessed as part of the tax deficiency and, despite the late assessment, it was "legally owed." *Id.* at 133. The statute involved was Section 607 of the Revenue Act of 1928 and its predecessors, which, like today's Section 6401(a), included within the term "overpayment" any tax, interest, or penalty "assessed **or** paid . . . after the expiration of the

period of limitation properly applicable thereto."  Yet, the First Circuit opined:

> We think there can be no doubt that section 607 [of the Revenue Act of 1928, the predecessor of Section 6401(a)] speaks with reference to the usual practice under which a tax is assessed by the commissioner, and then paid by the taxpayer, and objection can be made by the taxpayer **both to the assessment and the payment**. *Id.* at 134 (emphasis added).

However, unlike today's separate limitations statutes where Section 6501(a) imposes a 3-year period of limitation for assessment and Section 6502(a) permits collection efforts to continue for 10 years, in *Crompton* there was only one statute of limitations involved, Section 277 of the Revenue Act of 1926, 44 Stat. 9, which applied a 5-year limitations period to both assessment and collection, stating:

> The amount of income, excess-profits, and war-profits taxes imposed by . . . the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

In this statutory setting, the First Circuit held that an overpayment could result only (1) where both assessment and collection occur after expiration, (2) where assessment occurs before and payment occurs after expiration, or (3) where payment occurs after expiration, but not (4) where only the assessment is made after the expiration, i.e., where payment has been made before the expiration. *Crompton*, 65 F.3d at 133.

There are several reasons why *Crompton* should not control the result in this case.  First, especially in view of the First Circuit's acknowledgement that the assessment was late and had no effect, the Supreme Court's 1945 decision in *Rosenman v. U.S.,* 323 U.S. 658 (1945), discussed in the next section, supersedes the First Circuit's view that the amount involved was "due" since *Rosenman* held that there is no liability prior to a valid assessment. Second, the First

Circuit inconsistently and illogically construed the overpayment statute disjunctively as to "payment" but conjunctively as to "assessment."  Third, as will be shown later, elementary principles of statutory construction require that a statute be given effect as written, according to its plain language, and the disjunctive phrasing of "assessed or collected" plainly means that an overpayment exists when the tax is **either** assessed **or** collected after expiration of the limitations period.  Finally, the fact that today there are separate statutes of limitations for assessment and for collection requires that "assessment or collection" in Section 6401(a) be construed disjunctively for each event to correspond to the "period of limitation properly applicable thereto" (and the expiration thereof).

Other cases cited by the government either misapply *Lewis* or rely on *Crompton* (or both) in reaching decisions in favor of the government under facts that are distinguishable from this case.  *Ewing v. U.S.*, 914 F.2d 499 (4th Cir. 1990) (Def.'s Br. 14); *Moran v. U.S.*, 63 F.3d 663 (7th Cir. 1995), *overruled on other grounds by, Malachinski v. Comm'r*, 268 F.3d 497 (7th Cir. 2001) (Def.'s Br. 14); *Bachner v. Comm'r*, 109 T.C. 125 (1997), *aff'd*, 172 F.3d 859 (3d Cir. 1998) (unpublished) (Def's Br. 15); *Williams-Russell & Johnson, Inc. v. U.S.*, 371 F.3d 1350 (11th Cir. 2004) (Def.'s Br. 15).  *Ewing* and *Moran* both involved situations where the taxpayer had agreed with IRS in written settlement agreements that the deficiencies were owed.  As was *Lewis* on which it relied*, Bachner* was no more than an offset case enabling IRS to offset a newly-determined deficiency against the refund otherwise owed the taxpayer.  And in *Williams-Russell,* the Eleventh Circuit, after observing that "the IRS makes mistakes, and so it does not always get around to timely assessing liability," nevertheless invoked *Crompton, Ewing*, and *Moran* to hold that, notwithstanding a late assessment, and "notwithstanding §6401(a)'s

language," the taxpayer was not entitled to a refund of the employment taxes he had deposited monthly. *Williams-Russell* involved neither a notice of deficiency nor Section 6213(b). Instead of applying the accepted rules of statutory construction to interpret Section 6401's definition of an "overpayment," as will be shown, these cases used flawed judicial precedent to circumvent that statute's express terms and plain meaning.

A similar series of Court of Claims cases in the 1930's reached the same result as the First Circuit in *Crompton*. In *Meyersdale Fuel Co. v. U.S.*, 44 F.2d 437, 446 (Ct. Cl. 1930), *cert. denied*, 283 U.S. 860 (1931), the court held that "the tax, if legally due, cannot be recovered merely because it had not been formally assessed." *See also Anderson v. U.S.*, 15 F. Supp. 216 (Ct. Cl. 1936); *Muir v. U.S.*, 78 Ct. Cl. 765, 783 (1933) (Def.'s Br. 13). However, these Court of Claims decisions were considerably weakened by that court's 1964 decision in favor of the taxpayer in *Charles Leich & Co. v. U.S.*, 333 F.2d 871 (Ct. Cl. 1964) where, in homage to the Supreme Court's decision in *Rosenman*, it was held that a remittance made prior to an untimely assessment could be refunded if it was characterized as a "deposit" rather than a "payment," and that determination was to be made by examining all of the "facts and circumstances." In *Leich*, the remittance was determined to be a "deposit" because the taxpayer contested the proposed adjustments and no assessment was ever made. *Id.* at 653. In contrast, in *Northern Natural Gas v. U.S.*, 354 F.2d 310 (Ct. Cl. 1965), the court held that where the taxpayer conceded liability in a Tax Court petition for the deficiencies asserted, its remittance in response to the notice of deficiency was a payment of those deficiencies.

The *Leich* and *Northern Natural Gas* cases have caused the principal focus in this circuit to be on the "facts and circumstances" of each case and whether the taxpayer "contested" the

asserted deficiency so as to deem its remittance a "deposit" rather than a "payment." That was the essence of the Federal Circuit's decision in *Cohen*, 995 F.2d 205 (Fed. Cir. 1993). (Def.'s Br. 14). In *Cohen*, as in Principal's case, the taxpayer remitted the tax before, but the IRS assessed it after, expiration of the statute of limitations, and the court held the untimely assessment resulted in an overpayment within the meaning of Section 6401(a). As in *Leich*, the court in *Cohen* adopted the fiction that the taxpayer's payment was a "deposit" even though the taxpayer's letter referred to it as a payment because "the Cohens at all times disputed the additional tax liability." *Cohen,* 995 F.2d at 209. This fact under *Rosenman* was enough for the Federal Circuit and, unlike the trial court in *Cohen*, it felt no need to discuss the antiquated doctrine of *Meyersdale Fuel*, *Anderson*, and *Muir* that there can be no overpayment where the taxpayer really owed the tax and paid it prior to the untimely assessment.

The "deposit vs. payment" fiction was carried to extreme in the Federal Circuit's decision in *New York Life Insurance Co. v. U.S.,* 118 F.3d 1553 (Fed. Cir. 1997) (Def.'s Br. 26). There, in a 2-1 decision, the court held the taxpayer's remittance to be a deposit even though the taxpayer had referred to it explicitly in its transmittal letter to IRS as a "payment of additional income tax and interest accrued thereon." Accordingly, the taxpayer was entitled to recover it because IRS failed to assess it, even though the taxpayer had filed no claim for refund.[10]

Other courts have reached the same result as *Cohen* in favor of the taxpayer even without a "contest" serving as the basis for their decisions. *See*, *e.g.*, *Becker Bros., Inc. v. U.S.*, 61

---

[10] In his dissent, Judge Rader noted that "[t]he letter accompanying the money referred to this transaction six times as a 'payment' of taxes" and he believed that the taxpayer should have taken the necessary steps to base its litigation on a claim for refund of that payment. Judge Rader's analysis turned out to be the correct one, as the Supreme Court subsequently held in *U.S. v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008).

A.F.T.R.2d 1147 (C.D. Ill. 1988); *Estate of Goetz v. U.S.*, 286 F. Supp. 128, 131 (W.D. Mo. 1968) ("In order for the tax liability to have been duly collected it must have been properly assessed and such was not the case here in that the assessment was made at a time subsequent to the running of the statute of limitations."). Despite remittances clearly intended by the taxpayers to be payments of the taxes, these courts applied the *Rosenman* fiction that they remained "deposits" until properly assessed.

Therefore, *Lewis* and its progeny are of interest only from an historical standpoint, and this Court should decline the government's invitation to misapply those cases here.

## C.    Under *Rosenman*, No Liability Exists Until Proper Assessment And A Remittance Before Assessment May Therefore Constitute An Overpayment.

The Supreme Court's seminal decision in *Rosenman v. U.S.*, 323 U.S. 658 (1945) (Def.'s Br. 22-28), belies the notion that there can be no overpayment where the taxpayer pays the tax prior to an untimely assessment.  In *Rosenman,* the Supreme Court held that a taxpayer's liability for the tax is **defined** by the assessment.  *Rosenman* thus stands for the proposition that that there can be no income tax liability without a valid assessment having been made.  *See, e.g., Girard Trust Bank. v. U.S.*, 643 F.2d at 727 ("'Liability' and amounts 'due' normally depend upon 'assessment.'"); *Exxon Corp. v. Comm.*, 78 T.C.M. (CCH) 165 (July 28, 1999) (liability not fixed until earlier of execution of Form 870 or assessment); *Huskins v. U.S.*, 75 Fed. Cl. 659, 669 (2007) (*Rosenman* "required that the remittance be treated as a deposit, because it 'did not discharge what (the taxpayers) deemed a liability nor pay one asserted (by the IRS).'").  Thus, under *Rosenman,* no additional taxes can be deemed owed until the assessment is made.[11]

---

[11] The Oxford English Dictionary, 2d ed., defines "owed" as "to **have to** pay" and "to be **under obligation** to pay or repay (money or the like)" while Webster's College Dictionary, Random

*Rosenman* involved a remittance of $120,000 sent to IRS on December 24, 1934 with a letter calling it a "payment on account of the Federal Estate Tax" and emphasizing that it was "made under protest and duress." Since no assessment of the tax had yet been made, the remittance was placed by IRS in a suspense account. On March 28, 1935, IRS advised the taxpayer that $80,224 of the amount held in the suspense account had been applied in satisfaction of the tax and that amount was then assessed. On March 26, 1938, the taxpayer filed a claim for refund for the balance of $39,776. However, in the interim, the IRS had audited the return and, in April, 1938, it assessed a deficiency of $48,535 and thereupon applied the $39,776 remaining in the suspense account to the assessment. After the claim for refund was rejected on the ground that more than three years had elapsed since the tax had been paid, the taxpayer brought suit. The Supreme Court held that the claim for refund had been timely filed because the December 24, 1934 remittance was only a deposit in the nature of a cash bond and it remained so until the assessment was made in April, 1938 when the cash bond deposit was then applied in payment of the tax so assessed. Significantly, the Court held that "[t]he tax obligation did not become defined until April, 1938." *Rosenman*, 323 U.S. at 662.

Under *Rosenman,* therefore, a taxpayer's remittance made before any tax liability has been established by a valid assessment must necessarily be regarded as a deposit, and such a deposit may be refunded as an "overpayment." It should also follow under *Rosenman* that a remittance of the tax followed by an invalid assessment may also be regarded as an "overpayment" within the meaning of Sections 6401(a) and 6402(a) because without a valid assessment there is no tax liability. In such case, IRS has been overpaid and the taxpayer has

House (1991) defines it as "to be under obligation to pay or repay; to be in debt to." (emphasis added).

made an overpayment. *Girard Trust Bank*, 643 F.2d at 727 ("under the provisions of section 6401(c), an amount paid as tax may constitute an 'overpayment' even though there was no tax 'liability' in respect of which such amount was paid.").

In *Galletti*, *Hibbs*, and *Laing* (Def.'s Br. 18), the Supreme Court had ample opportunity to overrule this aspect of *Rosenman* - that holds it is the assessment that defines the tax liability – but chose not to do so. Instead, it reaffirmed the principle that assessment establishes a taxpayer's liability and enables IRS to proceed to collect. *Contra* Rev. Rul. 2007-51, 2007-30 I.R.B. More broadly, in the context of the Oxford English Dictionary's definitions, *Rosenman* and *Galletti* together stand for the proposition that a liability does not exist where one simply has an awareness of a duty or an obligation; it arises and exists only when someone else, in this case IRS, has the right to enforce the obligation, i.e., the right to collect the payment due that arises after, and only after, assessment.

Moreover, while the Supreme Court's decision in *Baral v. U.S.*, 528 U.S. 431, 438 (2000) (Def.'s Br. 18, 25, 26, 28), addressed the distinction between deposits and payments in the context of *Rosenman*, the Court there was careful to reconcile its decision with *Rosenman*, and *Baral* likewise leaves this tenet of *Rosenman* unimpaired. Contrary to the government's interpretation of *Baral* (Def.'s Br. 18) as confirming that "tax liability is independent of the IRS's assessment," *Baral* focused on the issue of when withholding and estimated taxes were **paid** under the "deemed paid" provision of Section 6513(b)(2)**,** explicitly leaving open the question of when remittances constitute payments in other settings.[12] *Baral* at 439.

---

[12]Principal concedes that, by virtue of Section 6151(a), liability **for the tax shown on the return** may exist prior to the assessment required by Section 6201(a)(1). Similarly, Section 6851(a)(1) provides that upon jeopardy termination of a taxable year by IRS, the tax becomes "immediately

Applying *Rosenman* to this case, at the time Principal applied its deposit to a payment on January 28, 2005, there was no outstanding assessment for the amounts paid. Therefore, there was no tax liability as such for the amounts paid at the time. While the notice of deficiency dated December 29, 2004 set forth amounts that were the result of IRS's determination of Principal's additional tax liability, as of January 28, 2005, the notice of deficiency was not in itself sufficient to establish Principal's liability for the taxes and penalties referred to therein. *Leich*, 329 F.2d at 653 (because IRS did not make an assessment, "there was never an obligation imposed by law to pay any tax.").

This position, that payment made prior to the time liability for the tax is established can constitute an overpayment, finds statutory support in Section 6401(c), the predecessor of which was enacted two years before *Rosenman* to insure that taxpayers would receive interest on such overpayments.[13] *See*, *Reading Co. v. U.S.*, 98 F. Supp. 598 (Ct. Cl. 1951) (citing and explaining predecessor of Section 6401(c)). Section 6401(c) provides:

> [a]n amount paid as a tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.

The reports of the Senate Committee on Finance and the Conference Committee offer the following comment on this provision:

> The language of certain court decisions (holding that certain payments, not made incident to a bona fide and orderly discharge of actual or reasonably apparent duties imposed by law, are not overpayments and accordingly that interest is not

---

due and payable." Even if that is regarded to statutorily establish liability in that limited circumstance, the same statute goes on to require IRS to proceed to "immediately assess the amount of tax so determined" and issue a demand for immediate payment.

[13]The Supreme Court in *Rosenman* did not consider the 1943 predecessor of Section 6401(c), presumably because the estate tax at issue in the case related to the estate of a decedent who had died in 1933.

payable) has been read by some as meaning that no payment can result in an overpayment if no tax liability actually existed. It is not believed that such reading is in any way a statement of existing law. . . . House Conference Comm. Rep. No. 510, 78th Cong., 1st Sess., at 48 (1943); *see also*, Sen. Fin. Comm. Rep. No. 221 78th Cong. 1st Sess., at 34 (1943).

Some courts have had trouble with Section 6401(c)'s double negative. *See, e.g.,* *Fortugno v. Comm'r*, 353 F.2d 429, 433 (3d Cir. 1965) ("The use of a double negative seems not to be of assistance in clarifying the congressional intent."). Converting the two negatives in the statute to a positive, it would read "there can be an overpayment even where there was no tax liability at the time the payment was made." Stated another way, if no tax liability exists at the time the payment is made because, under *Rosenman*, it is the assessment that defines the tax liability and no assessment has yet been made, then the payment can still be an overpayment. *Girard Trust Bank*, 643 F.2d at 727; *Leich*, 329 F.2d at 652 (referring to the predecessor of Section 6401(c), "the fact that there has been no assessment . . . should not of itself negate 'payment'"). *Contra Crompton*, 65 F.2d at 133; *Moran*, 63 F.3d 633; *Williams–Russell & Johnson*, 371 F.3d at 1350.

This *Rosenman* principle that liability does not attach until a valid assessment is made is also consistent with the IRS's own test for when a liability comes into being, namely, the "all events" test. Under Treasury Regulation §§ 1.461-1(a)(2) and 1.446-1(c)(1)(ii)(A), "a liability is incurred, and generally is taken into account for federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred

with respect to the liability."[14]  Principal, of course, did not agree with IRS that it was liable for additional taxes and penalties in the amounts shown in the notice of deficiency, and it had so advised IRS.  Therefore, because there was no final "determination" of Principal's liability for the proposed assessments, either by IRS through the issuance of the actual assessments or by anyone else, not all of the events had occurred to establish the fact of its liability for the full amount of such proposed assessments.  Although Principal was in agreement with certain of the IRS adjustments, its disagreement with the remainder precluded determination of the full amount of its liability with reasonable accuracy.  *Exxon Corp. v. Comm'r*, 78 T.C.M. (CCH) 165 (July 28, 1999) (liability not fixed until earlier of execution of Form 870 or assessment); *Phillips Petroleum Co. v. Comm'r*, 61 T.C.M. (CCH) 2836 (June 6, 1991) (IRS's proposed adjustments "were sufficiently challenged by [taxpayer's] nonacquiescence to render them contested.").

### D.  The Plain Meaning Of The Statute.

Having thus determined that a payment prior to an assessment (either timely or untimely) is not precluded from being an overpayment under a proper reading of the cases, it is appropriate to test that conclusion by applying the traditional tools for statutory construction to Section 6401.

It is axiomatic that "the starting point for interpreting a statute is the language of the statute itself."  *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980); *accord*, *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a

---

[14] The Oxford English Dictionary, 2d ed., defines "liability" as "the condition of being liable or answerable by law or equity," and defines "liable" as "bound or obliged by law or equity, or in accordance with a rule or convention; answerable (for[or to]); legally subject or amenable to."  Webster's College Dictionary (Random House, 1991) defines "liabilities" as "moneys owed; debts or pecuniary obligations,"  and "liable" as "legally responsible."

statute what it says there."); *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of the language accurately expresses the legislative purpose."); *see also Abbott Labs. v. U.S.,* 84 Fed. Cl. 96, 103 (2008), *aff'd*, 2009 WL 2245210 (Fed. Cir. 2009).  Accordingly, the legislative purpose is expressed by the words used, *Richards v. U.S.*, 369 U.S. 1, 9 (1962), and the words used are to be construed in accordance with their ordinary or natural meaning.  *FDIC v. Meyer*, 510 U.S. 471, 476 (1994).  Furthermore, a plain and unambiguous statute speaks for itself and further judicial inquiry is unwarranted.  The function of the court in such circumstances is to enforce the statute according to its terms. *Conn. Nat'l Bank*, 503 U.S. at 254 (citing *Rubin v. U.S.,* 449 U.S. 424, 430 (1981) ("When the words of a statute are unambiguous, then this first canon of construction is also the last: 'judicial inquiry is complete.'"); *BedRoc, Ltd., L.L.C. v. U.S.*, 541 U.S. 176, 183 (2004) ("Our inquiry begins with the statutory text, and ends there as well if the text is unambiguous.");  *see also Bull v. U.S.*, 479 F.3d 1365, 1376 (Fed. Cir. 2007).  This, then, is the answer to the government's citation to the 1928 legislative history (Def.'s Br. 15) – when the statute itself is plain and unambiguous, resort to the legislative history is unnecessary.  In *Comm'r v. Lundy*, 516 U.S. 235, 252 (1996), the Supreme Court summed up these fundamental principles as follows: "We are bound by the language of the statute as it is written . . . [and] we are not at liberty 'to rewrite [the] statute because [we] might deem its effects susceptible of improvement,'" (quoting *Badaracco v. Comm'r*, 464 U.S. 386, 398 (1984)); *see also Abbott Labs. v. U.S.*, 84 Fed. Cl. at 103, *aff'd*, 573 F.3d 1327 (Fed. Cir. 2009) ("plain meaning, if apparent, governs").

        The plain and unambiguous language of Section 6401(a) provides that an overpayment

includes a payment assessed **or** collected after the statute of limitations has expired.  The phrase "assessed or collected" can be traced back to an 1872 revenue act, *Jones*, 332 U.S. at 527.  The significance of "assessed or collected" being phrased in the disjunctive cannot be disregarded, for "canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise."[15]  *Reiter v. Sonotone Corp.*, 422 U.S. 330, 339 (1979); *see also Flora v. U.S.*, 362 U.S. 145, 149 (1960); *VanWersch v. Dep't of Health & Human Servs.*, 197 F.3d 1144, 1148 (Fed. Cir. 1999) ("To adopt the reading of the statute that the government urges would require us to ignore the meaning of the word 'or' that the dictionary, common sense, and the experience of life all bring to us.  There simply is no way around the fact that, in the English language, the word 'or' unambiguously signifies alternatives."); *South Corp. v. U.S.*, 690 F.2d 1368, 1372 (Fed. Cir. 1982).  And nothing in Section 6401(a) provides any context suggesting that "assessed or collected" should be viewed other than disjunctively. *Crooks v. Harrelson*, 282 U.S. 55, 61 (1930) ("We are here concerned with a taxing act, with regard to which the general rule requiring adherence to the letter applies with peculiar strictness.").

Therefore, by virtue of the plain and unambiguous "or" in Section 6401(a), either an untimely collection or an untimely assessment may give rise to an "overpayment."  While such plain and unambiguous language permits no doubt as to the proper construction of the statute, any doubt that may exist should be resolved in favor of the taxpayer.  *Auto-Ordnance Corp. v. U.S.*, 822 F.2d 1566, 1571 (Fed. Cir. 1987) ("Even assuming the existence of doubt, it is established that, in a tax refund case, the doubt should be resolved in favor of the taxpayer."

---

[15] According to Webster's, "or" is "used as a function word to indicate an alternative" and its synonym is "either."  Merriam Webster's Collegiate Dictionary, 11th ed. (2004).

(citing *White v. Aronson*, 302 U.S. 16, 20 (1937))).

Finally, while a taxpayer's payment of a tax can be said to result in IRS's collection of it and vice-versa, one being the corollary of the other, the same is not true for assessments. Assessment of tax against a taxpayer, which, according to *Rosenman* thereby establishes the taxpayer's liability for the tax, is a creature of statute required to be made under Section 6202 in the manner prescribed by Section 6303. Unlike payment/collection, it can only be done by the agency charged with administering the tax laws, not by the taxpayer. *Girard Trust Bank*, 643 F.2d at 727. And nothing in this complex statutory scheme, or in Section 6401(a), suggests that a timely assessment is unnecessary when payment has been made before the assessment. If Congress had so intended, it could easily have said so. To the contrary, in view of Section 6501's statutory time limits for the making of assessments, it is reasonable to conclude that the combined mandates of Section 6201(a)(1) ("The Secretary **shall** assess all taxes") and Section 6201(a) ("**at the time** and in the manner provided by law") implicitly include the requirement that such assessments be made in a timely manner before "the expiration of the period of limitation applicable thereto," including the period of limitation as it may be shortened by the interaction of Sections 6213(b)(4) and 6503(a). Accordingly, even where the tax has already been paid (or "collected"), any failure to timely assess it results in an "overpayment" within the meaning of Section 6401(a) that the Secretary is required to refund under Section 6402(a).

By failing or refusing to treat Principal's January 28 letter as a payment of tax as of that date, IRS seeks to bootstrap itself into a position whereby it can ignore the acceleration of the statute of limitations under Section 6213(b)(4) and consider itself limited only by the original 150-day period following issuance of the notice of deficiency as provided in Section 6213(a).

27

Allowing it to do so would write Section 6213(b)(4) out of the Code and thwart Congress' intent in enacting it, namely, that, following issuance of a notice of deficiency, the tax must be assessed within 60 days of the taxpayer's payment of it.

## II.  PRINCIPAL'S PAYMENT DID NOT REMAIN A "DEPOSIT AS A MATTER OF LAW" UNDER THE *ROSENMAN* DOCTRINE.

> *"[T]he Code directly contradicts the notion that payment may not occur before assessment."*  Baral v. U.S., *528 U.S. at 437 (citing § 6213(b)(4)).*

The government's next contention (Def.'s Br.20-36) is that, notwithstanding Principal's letter to IRS dated January 28, 2005, which was hand-delivered and receipted for by IRS, under the doctrines of *Rosenman* and *New York Life,* Principal's January 13, 2005 remittance remained a deposit until the assessment was made**,** and therefore Section 6213(b)(4) was never triggered. As the Court of Claims said in *Northern Natural Gas Co.*, 354 F.2d at 315, this "is an area characterized by too much loose talk and too little certainty."

The *Rosenman* decision in 1945 was responsible for creation of the concept of a tax deposit "as a matter of law" which, in turn, has given rise to the long judicial struggle to divine whether a particular remittance was a deposit or a payment.  *VanCanagan v. U.S.*, 231 F.3d 1349, 1352 (Fed. Cir. 2000); *Huskins v. U.S.*, 75 Fed. Cl. at 669 ("A tax 'deposit' is a judicially created concept first recognized in *Rosenman v. United States.*").  In this circuit, the "deposit as a matter of law" doctrine was first ameliorated by the Court of Claims in *Charles Leich & Co. v. U.S.*, 333 F.2d 871 (Ct. Cl. 1964).  The issue in *Leich* was whether IRS was liable for statutory interest on the overpayments it refunded to the taxpayer (for year $z$) following the taxpayer's victories in litigation relating to earlier taxable years ($x$ and $y$), and the court concluded no statutory interest was payable because the taxpayer's remittance had remained a deposit.  Most

importantly, however, it did not remain a deposit **as a matter of law**. Indeed, according to the Federal Circuit later in *Cohen*, 995 F.2d at 208, *Leich* was a decision in which "[t]he court rejected the [*Rosenman*] position that assessment is a prerequisite for 'payment,'" meaning that since *Leich* it was no longer necessary to view a taxpayer's remittance as a deposit as a matter of law until the assessment was made.

Instead, the court in *Leich* adopted a "facts and circumstances" approach to determine whether the remittance was a payment, *Cohen, id.* at 208, and the "fact and circumstance" that led it to conclude that the remittance (for year $z$) remained a deposit was that the taxpayer intended to contest liability for the tax (for year $z$). Such intent, the Court of Claims inferred, was manifested by the protest the taxpayer had filed with IRS to the proposed adjustments (for year $z$), the claim for refund it had filed with respect to the remittance made (for year $z$), and by the taxpayer's continuing litigation challenging the same adjustments in earlier taxable years (years $x$ and $y$). From the 1964 decision in *Leich* until the 1993 decision in *Cohen*, the Federal Circuit and the Court of Federal Claims (and their predecessors) continued to apply a facts and circumstances test to determine whether a remittance made prior to assessment was a deposit or a payment. *See, e.g., N. Natural Gas*, 354 F.3d 310; *Fisher v. U.S.*, 28 Fed. Cl. 88 (1993).

At least insofar as the claim for refund in *Leich* was concerned, however, the court's rationale for its "deposit" conclusion is wrong. Filing a claim for refund should not be regarded as support for characterizing a remittance as a deposit since filing a claim for refund is actually evidence of just the opposite, namely, that the tax has been paid. *Flora v. U.S.*, 362 U.S. 145 (1960) (full payment of the tax required as a prerequisite to suit); *U.S. v. Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008) (filing of claim for refund of tax paid required as prerequisite

29

to suit).  Under Sections 6402(a) and 6511(a), a claim for refund may only be filed with respect to an over**payment**, and under Section 6511(a) the period of limitation for filing a claim for refund is limited by reference to the date on which the tax was **paid**.

The "deposit as a matter of law" doctrine was resuscitated in the Federal Circuit for a few years by the 1993 decision in *Cohen*, ("[t]he remittance made by the Cohens, under protest, after a notice of deficiency but in clear circumstances of contest prior to expiration of the period for assessment, was a deposit as a matter of law"; *Cohen*, 995 F.2d at 209), although the court reached that conclusion only after a careful review of the facts and circumstances:

> The question whether a remittance is a payment of tax or a mere deposit to stop the running of interest is complicated by widely differing circumstances which prompt taxpayers to take such actions.  These surrounding factors are usually determinative of the question whether the remittance is a payment or a deposit. *Id.* at 208, quoting *Leich*.

In *Cohen*, the taxpayer, after receiving a statutory notice of deficiency dated December 30, 1986, remitted $46,000 to IRS on April 23, 1987, along with a letter that referred to it as a partial payment of the proposed deficiency.  The remittance was posted to his account by IRS as an "Advance Payment."  The statute of limitations on assessment expired on May 29, 1987, 60 days after expiration of the 90-day prohibition period that commenced with the issuance of the notice of deficiency, but the taxes and interest were not assessed by IRS until June and August, 1987.  Over the government's argument that the remittance of April 23, 1987 was a payment of tax that it was entitled to retain notwithstanding the late assessments (the *Lewis* argument, according to *Crompton*), the Federal Circuit, relying on *Rosenman* and *Leich*, held that because the taxpayer continued to dispute the additional tax liability through a formal written protest and a Tax Court petition, the remittance remained a deposit that only became a payment upon the

later assessments, and because those assessments were late, the payment was an overpayment within the meaning of Section 6401(a) that the taxpayer was entitled to have refunded.

While the *Cohen* case reached the right result in determining that a payment by the taxpayer within the period of limitations for assessment that was later assessed by the IRS after the closure of that period could constitute an overpayment within the meaning of Section 6401(a) (thus contradicting the then-prevailing interpretation of *Lewis* and the *Crompton, Ewing, Moran,* and *Williams-Russell* line of cases), its resurrection of the judicially-created fiction that the remittance remained a deposit was unnecessary and unfortunate. That analysis only perpetuated the confusion surrounding the issue, as where courts used the fiction to conclude a remittance was a deposit even though the taxpayer designated it as a payment (*New York Life Ins. Co.,* 118 F.3d 1553 (Fed. Cir. 1997); *Huskins,* 75 Fed. Cl. 659 (2007); *Becker Bros., Inc.*, 61 A.F.T.R.2d 1147 (C.D. Ill. 1988); *Estate of Goetz*, 286 F. Supp. 128 (W.D. Mo. 1968)) and, conversely, to find a payment where the taxpayer claimed it was a deposit. *VanCanagan*, 231 F.3d at 1352-53; *Ewing,* 914 F.2d at 501-02; *Moran,* 63 F.3d at 666, 668-70; *Ameel v. U.S.*, 426 F.2d 1270, 1274 (6th Cir. 1970); *Fisher,* 28 Fed. Cl. 88.

*New York Life*, 118 F.3d 1553 (Fed. Cir. 1997), is a prime example of all that is dangerous and wrong with the "deposit as a matter of law" doctrine. In that case, no statutory notice of deficiency was ever issued, no assessment of the tax was ever made, and no claim for refund was ever filed. Following receipt from IRS of a notice of proposed adjustments to its return (a "thirty-day letter"), and pursuant to a tentative settlement of the case, the taxpayer sent IRS its check "in payment of the additional income tax and interest accrued thereon" and even specified the amount to be allocated to tax and the amount to be allocated to interest. Several

months later the taxpayer executed a waiver of restrictions on assessment and in that form

reserved the right to file a timely claim for refund.  After several more months, the statute of

limitations on assessment expired without IRS having made any assessment of the tax or interest,

and one month later the taxpayer filed suit in this court seeking refund of the tax and interest.

The Federal Circuit held that, despite the express terms of payment and directed allocations

accompanying the taxpayer's remittance, the remittance was a deposit because –

> [t]his case comes squarely within the ruling of *Cohen* that "[t]he remittance [it]
> made . . . under protest, after a notice of deficiency but in clear circumstances of
> contest prior to expiration of the period of assessment, was a deposit as a matter
> of law."  *Id.* at 1559.

The same result could have been reached under sounder rationale, namely, that the remittance

was a payment as described by the taxpayer which, under Section 6401, became an overpayment

because assessed after expiration of the statute of limitations.[16]

But even under the analysis in *New York Life*, in contrast to Principal's case, there was

only one event being evaluated (the transmittal of the check and its accompanying letter) and the

court was attempting to divine whether it was payment or a deposit.  In Principal's case, there

were two separate and distinct events, the January 13, 2005 letter clearly designating the

remittance as a cash bond and the January 28, 2005 letter specifically requesting that such cash

bond be applied in payment of the tax, penalty, and interest that very day.  No less than four

times, that letter referred to a "payment" being made.[17]  These two distinct events render resort to

the legal fiction inappropriate, for it is unnecessary to judicially characterize either event when

---

[16] For another reason why the *New York Life* decision should be disregarded, s*ee* n. 9, *supra.*

[17] "Five 'any's' in one sentence and it begins to seem that Congress meant the statute to have
expansive reach." *Clintwood Elkhorn Mining Co.,* 128 S. Ct. at 1516.  Similarly, Principal's four
references to "payment" in its letter of January 28 is strong evidence of its intent.

each was so clearly identified by the taxpayer.

Today, thankfully, it is no longer necessary to perpetuate this judicial fiction because, with the advent of the "improved deposit system"[18] reflected in 2004's Section 6603 and 2005's Revenue Procedure 2005-18, a deposit must be clearly designated as such and include the necessary reference to a "disputable tax" in order to qualify for interest under Section 6603(c). Revenue Procedure 2005-18, §§ 4.01, 7.01, 2005-1 C.B. 798.  Since taxpayers undoubtedly will want interest paid on any portion of a deposit returned to them, most will attempt to comply with these procedures.  Where they fail to do so, Section 4.01(2) of Revenue Procedure 2005-18 dictates that the remittance will be treated as a payment, except in limited circumstances. *Id.* Against this background, it seems unlikely that the courts will want to perpetuate a second category of "deposits" which will not draw interest, such as remittances like those in past cases that were labeled "payments" by the taxpayers but were made in circumstances of "contest." Instead, the courts should regard Section 6603 as an opportunity to replace the previous confusion in this area with clarity.

Moreover, the demise of *Rosenman's* "deposit as a matter of law" doctrine can also be confirmed today as a result of the Supreme Court's decision in *Baral*, 528 U.S. 431.  There the taxpayer argued that remittances of estimated income tax are "paid" under Section 6511(b)(2)(A) when the income tax is later assessed.  This is the same argument that the government is making in this case (Def.'s Br. 31), although not with respect to estimated tax payments.  The Supreme Court disagreed, holding that, under the special statutory provision of Section 6513(b)(2)

---

[18] S. REP. NO. 108-192, at 139 (2003); H.R. REP. NO. 108-548, pt. 1, at 246 (2004).  The government, in its brief, acknowledges that Section 6603 superseded the IRS's "non-statutory" rules.  (Def.'s Br. 21)

applicable to estimated tax payments, an individual's estimated tax payments are deemed paid on April 15 following the close of the taxable year. *See also*, *Miller*, 315 F.2d 354 (involving estimated tax payments); *Harrigill v. U.S.*, 410 F.3d 786 (5th Cir. 2005) (1994 overpayment per return applied as credit to estimated tax for 1995 was deemed a "payment" made on April 15, 1996). *Cf. with VanCanagan*, 231 F.3d at 1354 (under facts and circumstances test, amount paid with application for automatic four-month extension of time to file return held a **payment,** without regard to when the assessment was made, and noting that five other circuits have held that remittances accompanying extension requests are payments)*; Ertman v. U.S.*, 165 F.3d 204 (2nd Cir. 1999); *Gabelman v. Comm'r*, 86 F.3d 609 (6th Cir. 1996); *Plankinton v. U.S.*, 267 F.2d 278 (7th Cir. 1959).

But, instead of relying on Section 6513(b)(2) as the sole ground for its decision, the Supreme Court in *Baral* went on to refute through citations to other Code provisions the taxpayer's argument that the income tax was "paid" only when assessed. As further authority, it cited the language of Section 6151(a) which requires that taxpayers **pay** their tax **without assessment** at the time and place for filing the return. It also cited Section 6213(b)(4), the very statute at the heart of this case, and the fact that it states that an amount **paid** as a tax that **may be assessed** upon receipt of the payment. Thus, in *Baral,* the Supreme Court through this analysis rejected the *per se* rule that all remittances made prior to the actual assessment of a tax liability are deposits as a matter of law. *Deaton v. Comm'r*, 440 F.3d 223, 230 (5th Cir. 2006); *Huskins*, 75 Fed. Cl. at 672 n.14; *see also VanCanagan*, 231 F3d at 1354. [19]

---

[19] Even the IRS, in P.L.R. 8738041 (June 23, 1987) (referred to here as an indication of IRS's inconsistent position and not as precedent) has acknowledged that "the factor of 'contest' and the fact of no assessment are no longer determinative as to whether a remittance is a payment as

Furthermore, in *Baral*, the Supreme Court went to great lengths to point out that payment and assessment are separate events and one may occur without the other. But while it was also careful to point out in footnote 2 that its decision was not addressing "the proper treatment" of remittances not governed by a "deemed paid" provision like Section 6513(b)(2), such as those intended by a taxpayer to be treated as a deposit to stop the running of interest, those types of remittances are now governed by the explicit instructions of Section 6603. Therefore, it is safe to say that by virtue of *Baral* and Section 6603 the proposition that remittances remain deposits **as a matter of law** until assessed has received the burial it deserved.

## III. UNDER THE FACTS AND CIRCUMSTANCES TEST, PRINCIPAL MADE PAYMENT OF THE TAX, PENALTY, AND INTEREST ON JANUARY 28, 2005 WHEN IT REQUESTED THAT ITS CASH BOND BE APPLIED FOR THAT PURPOSE.

> *"It will not do to treat the same transaction as payment and not as payment, whichever favors the Government."* Rosenman v. U.S., *323 U.S. at 662.*

If the combination of *Baral* and Section 6603 are not considered sufficient to abrogate the judicial fiction of deposit versus payment, then, since the "deposit as a matter of law" doctrine must surely be regarded as dead, the only test that remains for distinguishing between the two is the "facts and circumstances" test. *VanCanagan v. U.S.,* 231 F.3d at 1353 ("In this court, the determination whether 'a remittal of money against an assessed or likely tax liability . . . constitute[s] . . . a payment or a deposit of taxes' depends upon the particular 'circumstances,' citing *New York Life* and *Cohen*). Summarizing and expanding upon the decisions of other federal courts, this court in *Fisher v. U.S.*, 28 Fed. Cl. at 92, enumerated five factors that

---

opposed to a deposit," and that a taxpayer is not precluded "from removing its designation of a partial remittance as a cash bond and changing that remittance designation to a payment of tax and related interest provided the Service has adequate notice."

warranted examination in the determination of whether a remittance should be regarded as a payment or a deposit under the "facts and circumstances" test then in effect in the Federal Circuit. The five factors are (1) intent to contest the tax liability; (2) disorderly remittance and dumping of funds; (3) when the tax liability was defined; (4) how IRS treated the remittance upon receipt; and (5) the taxpayer's intent in remitting the money. While each of the factors, in the court's opinion, was important, none was individually dispositive. Since there is no dispute in this case concerning factors 2 and 3, this discussion will focus on 1, 4, and 5.

### A.  Intent To Contest The Tax Liability.

The government maintains that because Principal intended to file a claim and sue for refund as of January 28, 2005, when it directed that its January 13, 2005 cash bond deposit be applied to payment of the tax and penalties, it harbored an "intent to contest" the tax and that factor alone precludes any characterization of the January 28 letter as a "payment" that would have triggered Section 6213(b)(4). (Def.'s Br. 21, 35-37)

It is true in this Circuit that in *Leich*, *New York Life*, and *Cohen*, the "factors of contest" caused the court to deem the remittance a deposit and not a payment. In *Leich*, the "factors of contest" were the taxpayer's formal written protest and a suit for refund filed with respect to the preceding taxable year involving the same adjustments. In *New York Life*, the "factors of contest" consisted of the taxpayer's informal protest of the adjustments and its reservation of the right to file a claim for refund in the waiver of restrictions form submitted to IRS and accompanying cover letter. In *Cohen*, the "factors of contest" consisted of the taxpayer's formal written protest and its Tax Court petition involving the same adjustments filed with respect to the subsequent taxable year. In this case, although Principal let IRS know of its disagreement with

certain proposed adjustments during the course of the audit, and through a Form 5701 at the conclusion of the audit, there was no formal written protest ever filed (as with IRS Appeals, which requires such a protest), there was no litigation pending on the issues on January 28, 2005 when Principal directed IRS to apply its previous cash bond to payment of the tax,[20] and, whatever comments may or may not have been made to IRS personnel before January 28 about taking Principal's disagreement into Tax Court, on and as of that date there was no intention on Principal's part to contest any part of the alleged deficiencies in Tax Court. (Pl. Prop. Find. ¶29)

Even taking into account the factors of contest the government cites (including oral conversations with IRS personnel) there are at least three good reasons why the government's "intent to contest" argument should be rejected. First, simply put, it is incongruous and nonsensical to take a payment made for the express purposes of meeting the prerequisite for a claim for refund and the jurisdictional prerequisite for a refund suit and deem it a non-payment, i.e., a deposit, for those very same reasons. It is fundamental that full **payment** of the tax is required before a refund suit can be commenced. *Flora,* 362 U.S. 145 (1960). It is also fundamental that a claim for refund of tax **paid** must be filed before a refund suit can be commenced. Sec. 7422(a); *Clintwood Elkhorn Mining Co.*, 128 S. Ct. 1511 (2008). To transform a payment made to meet these requirements into a nonpayment in the course of the very refund suit it preceded is an act of legerdemain worthy of Houdini. *See Greer v. Comm'r*, T.C.M. 2009-20 (Jan. 29, 2009) (remittance held to constitute payment, not deposit, even where accompanied by claim for refund).

---

[20] Except the litigation then pending before this Court on the Section 453A and state guaranty funds issues, which was decided on March 17, 2006. *Principal Life Ins. Co. v. U.S.*, 70 Fed. Cl. 144 (2006).

Second, *Leich, Cohen,* and *New York Life* all involved only a single remittance that was being evaluated. In this case, there are two separate and distinct events: the January 13, 2005 letter clearly identifying the remittance as a deposit and the January 28, 2005 letter clearly directing that that deposit be applied in payment of the taxes, penalties, and accrued interest. In circumstances such as this, where the taxpayer's intent to make payment is so clear and so distinct from its cash bond deposit, it should make no difference under the facts and circumstances test that Principal intended to file claims for refund and a refund suit.

Finally, if a taxpayer's intent to file a refund suit, or simply a refund claim, were held to give rise to an "intent to contest" that prevents its deposit from being treated as a payment upon taxpayer's later written designation, and payment is deemed to occur upon IRS's subsequent assessment, then IRS would have unbridled discretion to determine the date of payment, and thus the date of commencement of the statute of limitations for filing the claim for refund, by choosing the date of assessment. *See Baral*, 528 U.S. at 438 n.1. Taxpayers would have to wait until IRS notified them of the date of assessment/payment in order to know when their statute of limitations commenced. IRS would also have the ability to delay the date of assessment/payment so as to trigger a Section 6621(c) "hot interest" accrual in cases involving large corporate underpayments.

**B. How The IRS Treated The Remittance Upon Receipt.**

The official IRS transcripts show that IRS correctly treated Principal's January 13, 2005 wire transfer as an "Advance Payment of Deficiency, Cash Bond Credit." (Pl. Prop. Find. ¶ 17) However, IRS's treatment of Principal's January 28 letter was inconsistent.

The IRS representatives who dealt with Principal most, and who saw Principal's January

28 letter, field agent Chris Heth and her supervisor Jim Hale, understood that Principal wanted the previous cash bond deposit applied that very day as a payment of the tax and penalties referred to in the statutory notice.  Mr. Hale even expended considerable effort in attempting to comply with the taxpayer's instruction. (Pl. Prop. Find. ¶¶ 32, 33, 35)  However, according to IRS's official transcripts of Principal's account, the January 13, 2005 remittance that had been recorded as a cash bond simply remained under that designation in the IRS Master File and no entry recording a payment appears on the official transcript until the date the IRS made its untimely assessment, May 27, 2005.  (Pl. Prop. Find. ¶¶ 38, 41, 42, 47, 48, 50)

Yet the IRS's Forms 490 activity summaries for each of the years 1996, 1998, and 1999, showing various entries made with respect to Principal's account in the IRS Master File, state in their header: "LCU Interest Date: LCU Interest is OFF."  (Pl. Prop. Find. ¶ 42).  This can only refer to interest on large corporate underpayments which, under Section 6621(c), would have begun to accrue after January 28, 2005 (30 days from the date the notice of deficiency was sent) but for any payment made on or prior to that date.  However, no Section 6621(c) interest was ever assessed against or paid by Principal for 1999 or 2000, (Pl. Prop. Find. ¶ 36) and Principal believes, as its expert witness testified, that the reason for this, and the reason the Forms 490 state that "LCU Interest is OFF," is because IRS's Master File treated payment of the taxes and penalties as having been made by Principal on or before January 28, 2005.  (App. II, Ex. A-6, 126:12-131:15 at II0183-II0185c).  Accordingly, by virtue of the interaction between Sections 6621(c)(1), 6601(a), and 6603(b), no "large corporate underpayment" existed to which Section 6621(c) interest would apply.  This is another compelling answer to the government's contention that for purposes of Section 6213(b)(4) payment did not occur until the tax was assessed on May

27, 2005.[21]  (Def.'s Br. 20-21)

Still, the government contends in this case that it had no obligation to take any action in response to Principal's letter dated January 28, 2005.  (App. II, Ex. B-4, at II0277c). Apparently, this is because Principal's "request [referring to the January 28, 2005 letter's instruction that the cash bond deposit be applied in payment of the tax, interest and penalties] falls outside of any of the authorized procedures that govern deposits and payments, including Revenue Procedure 2005-18."  (App. II, Ex. B-3, at II0272).  The standard IRS procedure regarding such letters is to merely place them in one of the case file boxes to be sent to the processing center. (Pl. Prop. Find. ¶ 38)  *See, e.g., Stanley v. U.S.*, 140 F.3d 1023, 1026 (Fed. Cir. 1998) (remittance held to be cash bond where taxpayer's letter directing that payment be treated such could not be found by IRS as part of the case file).

Nevertheless, the government has admitted that IRS had the ability with existing transaction codes to treat such a letter of designation as a conversion of the deposit to a payment of the tax as of January 28, 2005.  (Pl. Prop. Find. ¶ 45)  Moreover, its current "authorized procedures" have apparently not precluded it from complying with taxpayers' instructions when it wants to, as evidenced by the testimony of the IRS's own witness, the pleadings in the pending *Ford Motor Co.* case discussed in the next section, and the experience of Principal's expert witness.  (Pl. Prop. Find. ¶ 44)  In any event, the "authorized procedures" upon which the government relies, including those referred to in the Internal Revenue Manual and in published

---

[21]  The Form 490 for 2000 does not indicate "LCU Interest is Off" but states, instead, "LCU Interest Date: 06/26/2005; Amount - $100,000," suggesting that Section 6621(c) "hot interest" would commence on June 26, 2005, 30 days after the May 27, 2005 assessment, but only with respect to $100,000 of the assessment.  App. II, Ex. G at II0415.

revenue procedures, simply cannot be allowed to override a taxpayer's written instruction in cases such as this to apply a deposit to a payment when the law, by virtue of Section 6213(b)(4), permits such a payment to be made and generates consequences as a result.

In the final analysis, however, IRS's treatment of the remittance is clearly not dispositive and has been ranked in importance as subordinate to the taxpayer's intent. *Ewing*, 914 F.2d at 503 n.10; *Miller*, 315 F.2d at 356; *Huskins*, 75 Fed. Cl. at 677, (citing *VanCanagan*, 231 F.3d at 1353); *Dowell v. Comm'r*, 41 T.C.M. (CCH) 390 (1980), *aff'd*, 738 F.2d 354 (10th Cir. 1984); *Ciccotelli & Mason v. U.S.*, No. 08-1886, 2009 WL 929106 (E.D. Pa. Apr. 2, 2009), *vacated in part*, No. 08-1886, 2009 WL 1648894 (E.D. Pa. June 9, 2009).

### C. The Taxpayer's Intent.

Indeed, the taxpayer's intent is the most important factor in determining whether a remittance is a deposit or a payment under the facts and circumstances test. *Dowell v. Comm'r*, 41 T.C.M. (CCH) 390 (1980) at n.8. According to Chief Counsel Advisory 200236007, at 4, and Technical Advice Memorandum 9613001, at 3, IRS apparently agrees. Moreover, for purposes of Defendant's motion for summary judgment, it must be deemed admitted that Principal, through its letter of January 28, 2005, intended to convert its previous cash bond deposit to a payment of the tax, penalties, and accrued interest as of that date, for that is certainly a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-588 (1986) ("[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion," quoting *U.S. v. Diebold*, 369 U.S. 654, 655 (1984)); *Clearmeadow Invests., L.L.C. v. U.S.*, 87 Fed. Cl. 509 (2009). For purposes of Principal's cross-motion, the presence of abundant evidence of that intent, as shown below, together with absence

of denial or evidence of any contrary intent, justifies a finding that this material fact is undisputed.

The best evidence of Principal's intent to make payment on January 28, 2005 is the letter hand-delivered to IRS on that date, which refers to "payment" in four places.  (App. B, Ex. 7 at B00169-B00170).  Corroborating evidence appears in many internal emails.  As early as January 12, an email at Principal stated, "we intend to make payment in late January or early February in order to avoid a higher interest rate on the deficiency," but it was waiting for third-party consent to avoid impairment of the indemnification obligation that it had been given regarding tax treatment of one of the issues involved.  (App. II, Ex. Q-6, at II0477).  Another internal email on January 21 reiterated, "[w]e plan to make payment of the deficiency by January 28 at the latest." (App. II, Ex. Q-12, at II0484).  On January 28, an internal email to the Corporate Tax Department Senior Staff said, "[t]oday we asked the IRS to apply the deposit to the payment of tax, penalty and interest for the years 1996 through 2000."  (App. II, Ex. Q-18, at II0490).  The head of Principal's Corporate Tax Department testified, "[w]e want[ed] to convert our cash bond to tax payment.  We need[ed] their [the third party's] consent," and, referring to the January 28 letter, also testified that "[t]his letter is to inform IRS to . . . convert our cash bonds to the tax payment."  (App. II, Ex. A-5,. 20:14-15 at II0141).  The CPA in Principal's tax department whose job it was to work with IRS explained, with reference to an email he sent on January 21 to others in the tax department (App. II, Ex. Q-13 at II0485), that "we need to make sure that we get the payment made by January 29th . . . we had to make sure we paid whatever was on the statutory notice."  (App. II, Ex. A-4, 70:1-3, 9-11 at II0119).  And Principal's intent to make payment on January 28 was clear to IRS representatives with whom it dealt.  (Pl. Prop. Find.

¶¶ 32, 33)

But the government claims that Principal had no right to "control" the deposit after having made it on January 13, 2005, meaning that Principal had no right on January 28, 2005 to direct that it be applied in payment of the tax, for only IRS then had the right to control it. (Def.'s Br. 3-4, 31-35)   According to the government, this conclusion is required by both Revenue Procedure 84-58 and Revenue Procedure 2005-18.[22]   It also contends that the same conclusion is required by Section 6603 itself, but that statute is silent on the question of whether a taxpayer can apply a cash bond deposit to payment of the tax.

On this issue, common sense should prevail.   The government acknowledges that Principal, at the time of its January 28, 2005 letter, could have requested that the full amount of its deposit be returned.  (Def.'s Br. 30)  *See* Revenue Procedure 84-58, §4.02, 1984-2 C.B. 501. There is no greater degree of control a taxpayer can exercise than triggering the refund of the deposit to itself.   And, contrary to the government's suggestion (Def.'s Br. 34),  it certainly makes no sense to require a taxpayer, who after having made a deposit wishes to pay the tax, to first request that the deposit be returned and then, once it is returned, turn around and remit the same money in payment of the tax.[23]   Such a requirement would cost the taxpayer unnecessary

---

[22] The government states that Revenue Procedure 2005-18, which was published on March 28, 2005, is applicable "to deposits, like taxpayer's, made after October 22, 2004."  (Def.'s Br. 3-4, 32)  Apart from the impossibility of Principal complying with a March 28 Revenue Procedure in the course of making its deposit on January 13 or applying it to the tax on January 28, Section 9 of Revenue Procedure 2005-18 states that Revenue Procedure 84-58, under which Principal acted, remained effective until March 28, 2005.   Section 10 of Revenue Procedure 2005-18 makes it clear that its application after October 22, 2004 is only for the purpose of qualifying for interest on the deposit under new Section 6603(d).

[23] The government argues that Section 6.04 of Revenue Procedure 84-58 denies Principal, after having made the deposit, the right to apply it to payment of the tax because it says "[t]axpayers may not make designations of remittances treated as deposits in the nature of a cash bond."

underpayment interest for the time it awaited refund of the deposit and then turned it around to pay the tax, which surely would have been a consequence unintended by either Congress or IRS.[24]

Moreover, IRS's own procedures belie the contention that no such conversion of a deposit to payment of the tax is permitted because those procedures would cause Principal's January 28 letter to be considered a payment of the tax for purposes of (1) commencement of the statute of limitations on refunds, (2) accrual of overpayment interest, (3) global interest netting, (4) deduction of the underpayment interest, and (5) application of "hot interest" on large corporate underpayments. (Pl. Prop. Find. ¶ 44)    Here the words of Justice Frankfurter seem particularly cogent:  "It will not do to treat the same transaction as payment and not as payment, whichever favors the Government."  *Rosenman*, 323 U.S. at 663; *Baral*, 528 U.S. at 438 n.1.

In another tax refund case filed last year, *Ford Motor Co. v. U.S.*, No. 2:08-cv-12960 (E.D. Mich. filed July 10, 2008), the government takes a position directly opposite from that which it advocates here.  In *Ford,* the plaintiff seeks overpayment interest in the approximate amount of $445 million on its overpayment of tax from the date it made certain cash bond

---

However, as shown by Section 6.01, this language of Revenue Procedure 84-58 refers to allocations, or "designations," as between taxes, penalties, or interest, which cannot be done in a cash bond (as Principal did not do) but can be done with a payment (as Principal did).  Moreover, the fact that Section 4.02(3) of Revenue Procedure 2005-18 permits a taxpayer to **apply** a deposit against an unassessed liability (which the government argues should be limited to a single circumstance – Def.'s Br. 31, n.16), combined with the absence of any language in the Code or any Revenue Procedure preventing a deposit from being applied to payment of the tax, are consistent with the conclusion that such an application should be allowed as one of the two logical, alternative consequences of a deposit.  *See, Stanley,* 140 F.3d at 1029 (court rejected government's contention "that there is no provision in the tax laws for what [taxpayer] did" and held strict compliance with Rev. Proc. 84-58 not required).

[24] That IRS takes into account the "adverse effect upon taxpayers with respect to the running of interest" is shown by Section 3.05 of Revenue Procedure 84-58.

deposits, on the ground that such remittances qualify as "payments" within the meaning of Section 5.05 of Revenue Procedure 84-58, rather than from the subsequent date on which such cash bond deposits were converted into "Advance Payments" by letters of designation. (Pl.'s Compl. ¶¶ 7, 29, 31, 34, 35, 38, 59, 60, 63, 69, 70, 83, 84, 99, 100, 109, 111, 121, 124, 136, 140, 151, 152, 161, 162, 174, 175, 186, 190) (All citations in this paragraph to the Complaint and Answer are to those filed in the *Ford Motor Co.* case.) In its Answer filed December 19, 2008, the government admits that "a taxpayer may designate a remittance previously designated as a Deposit as an Advance Payment," and that a taxpayer or the IRS may "convert" a deposit into a payment of tax. (Def.'s Answer ¶ 22, 35, 84, 100, 111, 124, 125, 140, 152, 162, 175, 190). It also admits that "overpayment interest accrues from the date a Deposit is re-designated as [or converted to] an Advance Payment." (Def.'s Answer ¶ 37, 75, 76, 91, 104, 116, 131, 146, 166). In other words, between Principal's case and *Ford*, the government today is attempting to do exactly what Justice Frankfurter proscribed.

The evidence in this case that Principal intended to make payment of the tax, penalties, and accrued interest on January 28, 2005 is clear, considerable, and convincing. There is no valid reason why such intent, and the manifestation of it, should not be given full effect.

**IV.    ALTERNATIVELY, IF PRINCIPAL'S REMITTANCE REMAINED A DEPOSIT AS A MATTER OF LAW PRIOR TO ASSESSMENT, IT NEVERTHELESS BECAME AN "AMOUNT PAID IN RESPECT OF A TAX" WITHIN THE MEANING OF SECTION 6213(b)(4) ON JANUARY 28, 2005 AND STARTED THE 60-DAY PERIOD UNDER SECTION 6503(a).**

The relevant portions of Principal's claims for refund for 1998, 1999 and 2000, in a narrative relating to this issue and in a section of that narrative entitled "Facts Upon Which Claims For Refund Is [sic] Based," set forth all relevant facts relating to the statutory notice

issued on December 29, 2004, the 90-day prohibition period that would have expired on March 31, 2005, and the additional 60 days provided for assessment under Section 6503(a) that typically would have taken the expiration date for the statute of limitations on assessment to May 31, 2005. The claims described Principal's letter of January 13, 2005 to IRS and the $444 million deposited by Principal as a cash bond through a wire transfer on that date "in accordance with IRC §6603 and Revenue Procedure 84-58." That Revenue Procedure, in Section 2.02, acknowledged that Section 6213(b)(4) provides that an amount paid "in respect of a tax" may be assessed upon receipt of payment, notwithstanding the 90-day prohibition on assessment in Section 6213(a). The claims also referred to Principal's letter to IRS on January 28, 2005. Finally, they set forth the fact that the latest transcript received from IRS at that time showed that the assessment of taxes seemed to have been made on May 27, 2005.

The grounds on which the claims for refund on this issue were based were stated in both the first and final paragraphs, namely, that the IRS's assessments of the taxes on May 27, 2005 were late and, accordingly, Principal was entitled to a refund because an overpayment had been made within the meaning of Sections 6401(a) and 6402(a). In a section entitled "Legal Analysis," the narratives explicitly cited Section 6213(b)(4), as well as the Federal Circuit's decisions in *Cohen* and *New York Life,* and the Supreme Court's decision in *Rosenman*. Both *Cohen* and *New York Life* relied on *Rosenman,* 323 U.S. 658, which held, in essence, that any remittance prior to assessment remains a deposit as a matter of law because there is no liability until the assessment is made. The claim narrative even quoted *Thomas v. Mercantile National Bank,* 204 F.2d 943 (5th Cir. 1953), to the effect that the sum deposited remained a deposit in the

absence of an assessment.[25]

That the Federal Circuit cases cited held the remittances to be deposits as a matter of law based on the taxpayers' "intent to contest" does not negate the applicability, or the trigger, of Section 6213(b)(4).  Principal and the government agree in this case that Principal's January 13, 2005 wire transfer and its letter delivered to IRS that day constituted a deposit in fact under Section 6603.  (Pl. Prop. Find. ¶ 17)  But, as has been pointed out, unlike those cases which involved a single remittance, Principal's facts involve two separate and clearly identifiable events, and the second event, Principal's letter of January 28, 2005 referring to "payment" in four places cannot, for reasons previously stated, be ignored or considered a nullity.  David Boucher, Principal's expert whose software IRS regularly uses under license for interest calculations (Pl. Prop. Find. ¶ 54), presented uncontradicted testimony that, based on his experience, IRS uses the date of such a "letter of designation" as the date of payment for taxpayers' deduction of underpayment interest and as the starting date for accrual of overpayment interest and commencement of the statute of limitations on filing claims for refund.  (Pl. Prop. Find. ¶¶ 44, 55, 56)  Therefore, if, under the government's argument, the January 28 letter's direction to apply the remittance to payment cannot be considered a payment **of the tax** because Principal's plan to file a claim and, if necessary, a suit for refund, i.e., its "intent to contest," caused it to remain a deposit "as a matter of law," it is Principal's position that its direction in the January 28 letter that the deposit be applied to "payment" nevertheless caused the amounts specified therein to become "amounts paid **in respect of** a tax" within the meaning of Section 6213(b)(4).  There is nothing to preclude  a deposit, whether as a matter of law or in fact,

---

[25] In *Deaton v. Comm'r*, the 5th Circuit stated that the "*Mercantile National Bank* rule" was abrogated by the Supreme Court's decision in *Baral.*

or both, from being considered an "amount paid in respect of a tax" once it loses its character as a Section 6603 deposit in fact, as by Principal's complete relinquishment and application of it to the tax on January 28, 2005.  That in such circumstances it may remain a deposit "as a matter of law" under *Cohen*, *New York Life*, and even *Rosenman*, because Principal "intended to contest" the tax is, for purposes of Section 6213(b)(4), irrelevant.

Principal's January 28 letter referred to the $444 million paid by Principal into the government's account at the Minneapolis Federal Reserve Bank and the fact that such amount was paid "with respect to a 'disputable tax' as that term is defined in section 6603(d)(2)(A) of the Code."  It also specifically referred to the December 29, 2004 notice of deficiency. In addition, the reference in the caption of the January 13 letter ("Your reference: S:C:E:TS:Area 4") specifically referenced the same caption in the notice of deficiency.  (App. II, Ex. D, at II0279, II0281-0282).  These references were clearly sufficient to fully apprise IRS what tax the payment was "in respect of." *O'Brien v. U.S.,* 766, F.2d 1038, 1044 (7th Cir. 1985) ("'in respect of' [*i.e.*, with regard to, or concerning]"); *Usibelli Coal Mine v. U.S.,* 54 Fed. Cl. 373, 380 (2002), *rev'd on other grounds,* 311 Fed. Appx. 350 (Fed. Cir. 2008) ("[I]t is even relatively clear that such an overpayment is 'in respect of' an internal revenue tax."); s*ee also Brad Foote Gear Works, Inc. v. U.S.,* 388 F.2d 894, 898, n.3 (Ct. Cl. 1961).

Because it caused an "amount [to be] paid in respect of a tax" within the meaning of Section 6213(b)(4), Principal's January 28, 2005 letter would therefore also have ended Section 6213(a)'s 90-day prohibition on assessment and started Section 6503(a)'s 60 days running as of that date, and the statute of limitations on assessment would still have expired on March 31, 2005.  Accordingly, since the assessments on May 27, 2005 were still late, Principal is entitled to

have them refunded as overpayments under Section 6402(a). *Cohen*, 995 F.2d at 207 ("[B]ecause those assessments were untimely, the remittance became an overpayment pursuant to I.R.C. § 6401(a) and the [taxpayers] are entitled to a refund pursuant to I.R.C. § 6402(a).").

## CONCLUSION

For the reasons stated, the Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion for partial summary judgment should be granted on the ground that Plaintiff is entitled to judgment as a matter of law. In the event the Court finds that Plaintiff is not entitled to judgment as a matter of law, Defendant's motion should be denied on the ground that there exists a dispute of one or more material facts, and in such case the untimely assessment issue should be included among the issues to be tried.

Respectfully submitted,

s/Bruce Graves

Dated:  October 2, 2009

_____

Bruce Graves
Brown, Winick, Graves, Gross,
Baskerville and Schoenebaum, PLC
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone: 515/242-2403
Facsimile: 515/323-8503
Email: *graves@brownwinick.com*

ATTORNEY FOR PLAINTIFFS,
PRINCIPAL LIFE INSURANCE COMPANY and
PRINCIPAL FINANCIAL GROUP, INC.

# APPENDIX I

# STATUTORY PROVISIONS

## Subchapter A—In General

Sec. 6201.    Assessment authority.
Sec. 6202.    Establishment by regulations of mode or time of assessment.
Sec. 6203.    Method of assessment.
Sec. 6204.    Supplemental assessments.
Sec. 6205.    Special rules applicable to certain employment taxes.
Sec. 6206.    Special rules applicable to excessive claims under sections 6420, 6421, and 6427.
Sec. 6207.    Cross references.

[Sec. 6201]

## SEC. 6201. ASSESSMENT AUTHORITY.

[Sec. 6201(a)]

(a) AUTHORITY OF SECRETARY.—The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title, or accruing under any former internal revenue law, which have not been duly paid by stamp at the time and in the manner provided by law. Such authority shall extend to and include the following:

(1) TAXES SHOWN ON RETURN.—The Secretary shall assess all taxes determined by the taxpayer or by the Secretary as to which returns or lists are made under this title.

(2) UNPAID TAXES PAYABLE BY STAMP.—

(A) OMITTED STAMPS.—Whenever any article upon which a tax is required to be paid by means of a stamp is sold or removed for sale or use by the manufacturer thereof or whenever any transaction or act upon which a tax is required to be paid by means of a stamp occurs without the use of the proper stamp, it shall be the duty of the Secretary, upon such information as he can obtain, to estimate the amount of tax which has been omitted to be paid and to make assessment therefor upon the person or persons the Secretary determines to be liable for such tax.

(B) CHECK OR MONEY ORDER NOT DULY PAID.—In any case in which a check or money order received under authority of section 6311 as payment for stamps is not duly paid, the unpaid amount may be immediately assessed as if it were a tax imposed by this title, due at the time of such receipt, from the person who tendered such check or money order.

(3) ERRONEOUS INCOME TAX PREPAYMENT CREDITS.—If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit for income tax withheld at the source, or of the amount paid as estimated income tax, the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return, except that the provisions of section 6213(b)(2) (relating to abatement of mathematical or clerical error assessments) shall not apply with regard to any assessment under this paragraph.

### Amendments

**P.L. 100-647, § 1015(r)(1):**

Act Sec. 1015(r)(1) amended Code Sec. 6201(a) by striking out paragraph (4). Prior to amendment, Code Sec. 6201(a)(4) read as follows:

(4) ERRONEOUS CREDIT UNDER SECTION 32 OR 34.—If on any return or claim for refund of income taxes under subtitle A there is an overstatement of the credit allowable by section 34 (relating to certain uses of gasoline and special fuels) or section 32 (relating to earned income), the amount so overstated which is allowed against the tax shown on the return or which is allowed as a credit or refund may be assessed by the Secretary in the same manner as in the case of a mathematical or clerical error appearing upon the return, except that the provisions of section 6213(b)(2) (relating to abatement of mathematical or clerical error assessments) shall not apply with regard to any assessment under this paragraph.

**The above amendment applies to notices of deficiencies mailed after the date of enactment of this Act.**

**P.L. 98-369, § 474(r)(32):**

Act Sec. 474(r)(32) amended Code Sec. 6201(a)(4) by striking out "section 39" and inserting in lieu thereof "section 34", by striking out "section 43" and inserting in lieu thereof "section 32", and by striking out "Section 39 or 43" in the paragraph heading and inserting in lieu thereof "Section 32 or 34".

**The above amendment applies to tax years beginning after December 31, 1983, and to carrybacks from such years.**

**P.L. 97-424, § 515(b)(6)(E):**

Amended Code Sec. 6201(a)(4) by striking out ", special fuels, and lubricating oil" and inserting "and special fuels", applicable with respect to articles sold after January 6, 1983.

**P.L. 94-455, § 1206(c)(2)(A):**

Substituted "mathematical or clerical error" for "mathematical error" in Code Sec. 6201(a)(3) and 6201(a)(4). Applicable with respect to returns filed after December 31, 1976.

[The next page is 6537-3.]

Internal Revenue Code    **Sec. 6201(a)**

[Sec. 6213]

## SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT.

[Sec. 6213(a)]

(a) TIME FOR FILING PETITION AND RESTRICTION ON ASSESSMENT.—Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6851, 6852, or 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection. The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition. Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

### Amendments

P.L. 105-206, § 3463(b):
Act Sec. 3463(b) amended Code Sec. 6213(a) by adding at the end a new sentence to read as above.
The above amendment applies to notices mailed after December 31, 1998.

P.L. 105-206, § 3464(a)(1)-(2):
Act Sec. 3464(a)(1)-(2) amended Code Sec. 6213(a) by striking ", including the Tax Court." and inserting ", including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection.", and by striking "to enjoin any action or proceeding" and inserting "to enjoin any action or proceeding or order any refund".
The above amendment is effective on July 22, 1998.

P.L. 100-647, § 6243(a):
Act Sec. 6243(a) amended Code Sec. 6213(a) by striking out the period at the end of the last sentence and inserting in lieu thereof ", including the Tax Court. The Tax Court shall have no jurisdiction to enjoin any action or proceeding under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition."
The above amendment applies to orders entered after November 10, 1988.

P.L. 100-418, § 1941(b)(2)(B)(iv):
Act Sec. 1941(b)(2)(B)(iv) amended Code Sec. 6213(a) by striking "44, or 45" each place it appears and inserting "or 44".
The above amendment shall apply to crude oil removed from the premises on or after August 23, 1988.

P.L. 100-203, § 10713(b)(2)(D):
Act Sec. 10713(b)(2)(D) amended Code Sec. 6213(a) by striking out "section 6851 or section 6861" and inserting in lieu thereof "section 6851, 6852, or 6861".

The above amendment is effective on December 22, 1987.

P.L. 96-223, § 101(f)(1)(D):
Amended Code Sec. 6213(a) by striking out "or 44" and inserting "44, or 45". For the effective date and transitional rules, see P.L. 96-223, § 101(f), following Code Sec. 4986.

P.L. 94-455, § 1204(c)(6):
Added "section 6851 or" before "section 6861" in Code Sec. 6213(a).
P.L. 94-455, § 1204(d) provides that the amendment shall apply to action taken under Code Sec. 6851, 6861, or 6862 where the notice and demand takes place after December 31, 1976; but P.L. 94-528, § 2(a), effective October 4, 1976, substitutes "February 28, 1977" for "December 31, 1976" in P.L. 94-455, § 1204(d).

P.L. 94-455, § 1307(d)(2)(F)(iii):
Substituted "chapter 41, 42," for "chapter 42" in Code Sec. 6213(a). Effective 10-4-76.

P.L. 94-455, § 1605(b)(6):
Substituted "43, or 44" for "or 43" in Code Sec. 6213(a). For effective date, see amendatory note for P.L. 94-455, § 1605(b)(4)(A), following Code Sec. 6211(a).

P.L. 94-455, § 1906(a)(15):
Substituted "United States" for "States of the Union and the District of Columbia" in Code Sec. 6213(a). Effective 2-1-77.

P.L. 93-406, § 1016(a)(11):
Amended Code Sec. 6213(a) by changing "chapter 42" to "chapter 42 or 43". For effective date, see amendment note for Code Sec. 410.

P.L. 91-172, § 101(j)(42):
Amended Code Sec. 6213(a) by adding "or chapter 42" after "subtitle A or B". Effective 1-1-70.

[Sec. 6213(b)]

(b) EXCEPTIONS TO RESTRICTIONS ON ASSESSMENT.—

(1) ASSESSMENTS ARISING OUT OF MATHEMATICAL OR CLERICAL ERRORS.—If the taxpayer is notified that, on account of a mathematical or clerical error appearing on the return, an amount of tax in excess of that shown on the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical or clerical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or of section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section. Each notice under this paragraph shall set forth the error alleged and an explanation thereof.

(2) ABATEMENT OF ASSESSMENT OF MATHEMATICAL OR CLERICAL ERRORS.—

Internal Revenue Code

**Sec. 6213(b)**

I-2

(A) REQUEST FOR ABATEMENT.—Notwithstanding section 6404(b), a taxpayer may file with the Secretary within 60 days after notice is sent under paragraph (1) a request for an abatement of any assessment specified in such notice, and upon receipt of such request, the Secretary shall abate the assessment. Any reassessment of the tax with respect to which an abatement is made under this subparagraph shall be subject to the deficiency procedures prescribed by this subchapter.

(B) STAY OF COLLECTION.—In the case of any assessment referred to in paragraph (1), notwithstanding paragraph (1), no levy or proceeding in court for the collection of such assessment shall be made, begun, or prosecuted during the period in which such assessment may be abated under this paragraph.

(3) ASSESSMENTS ARISING OUT OF TENTATIVE CARRYBACK OR REFUND ADJUSTMENTS.—If the Secretary determines that the amount applied, credited, or refunded under section 6411 is in excess of the overassessment attributable to the carryback or the amount described in section 1341(b)(1) with respect to which such amount was applied, credited, or refunded, he may assess without regard to the provisions of paragraph (2) the amount of the excess as a deficiency as if it were due to a mathematical or clerical error appearing on the return.

(4) ASSESSMENT OF AMOUNT PAID.—Any amount paid as a tax or in respect of a tax may be assessed upon the receipt of such payment notwithstanding the provisions of subsection (a). In any case where such amount is paid after the mailing of a notice of deficiency under section 6212, such payment shall not deprive the Tax Court of jurisdiction over such deficiency determined under section 6211 without regard to such assessment.

### Amendments

**P.L. 95-600, § 504(b)(2)(A), (B), (c):**

Amended Code Sec. 6213(b)(3) to read as above, effective for tentative refund claims filed on and after November 6, 1978. Before amendment, paragraph (3) read:

"(3) ASSESSMENTS ARISING OUT OF TENTATIVE CARRYBACK ADJUSTMENTS.—If the Secretary determines that the amount applied, credited, or refunded under section 6411 is in excess of the overassessment attributable to the carryback with respect to which such amount was applied, credited, or refunded, he may assess without regard to the provisions of paragraph (2) the amount of the excess as a deficiency as if it were due to a mathematical or clerical error appearing on the return."

**P.L. 94-455, § 1206(a):**

Amended Code Sec. 6213(b) by redesignating paragraph (2) to be paragraph (3), redesignating paragraph (3) to be paragraph (4), and by substituting paragraphs (1) and (2) above for paragraph (1). Applicable with respect to returns filed after December 31, 1976. Prior to amendment, Code Sec. 6213(b)(1) read as follows:

"(1) MATHEMATICAL ERRORS.—If the taxpayer is notified that, on account of a mathematical error appearing upon the return, an amount of tax in excess of that shown upon the

return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical error, such notice shall not be considered as a notice of deficiency for the purposes of subsection (a) (prohibiting assessment and collection until notice of the deficiency has been mailed), or of section 6212(c)(1) (restricting further deficiency letters), or section 6512(a) (prohibiting credits or refunds after petition to the Tax Court), and the taxpayer shall have no right to file a petition with the Tax Court based on such notice, nor shall such assessment or collection be prohibited by the provisions of subsection (a) of this section."

**P.L. 94-455, § 1206(c)(1):**

Substituted "he may assess without regard to the provisions of paragraph (2)" for "he may assess" in Code Sec. 6213(b)(3) (as redesignated), and substituted "mathematical or clerical error" for "mathematical error" in Code Sec. 6213(b)(3). Applicable with respect to returns filed after December 31, 1976.

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

### [Sec. 6213(c)]

(c) FAILURE TO FILE PETITION.—If the taxpayer does not file a petition with the Tax Court within the time prescribed in subsection (a), the deficiency, notice of which has been mailed to the taxpayer, shall be assessed, and shall be paid upon notice and demand from the Secretary.

### Amendments

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

### [Sec. 6213(d)]

(d) WAIVER OF RESTRICTIONS.—The taxpayer shall at any time (whether or not a notice of deficiency has been issued) have the right, by a signed notice in writing filed with the Secretary, to waive the restrictions provided in subsection (a) on the assessment and collection of the whole or any part of the deficiency.

### Amendments

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

### [Sec. 6213(e)]

(e) SUSPENSION OF FILING PERIOD FOR CERTAIN EXCISE TAXES.—The running of the time prescribed by subsection (a) for filing a petition in the Tax Court with respect to the taxes imposed by section 4941 (relating to taxes on self-dealing), 4942 (relating to taxes on failure to distribute income), 4943 (relating to taxes on excess business holdings), 4944 (relating to investments which jeopardize charitable purpose),

**Sec. 6213(c)**    ©2000, CCH INCORPORATED

# Subchapter A—Procedure in General

Sec. 6401.    Amounts treated as overpayments.
Sec. 6402.    Authority to make credits or refunds.
Sec. 6403.    Overpayment of installment.
Sec. 6404.    Abatements.
Sec. 6405.    Reports of refunds and credits.
Sec. 6406.    Prohibition of administrative review of decisions.
Sec. 6407.    Date of allowance of refund or credit.
Sec. 6408.    State escheat laws not to apply.

[Sec. 6401]

## SEC. 6401. AMOUNTS TREATED AS OVERPAYMENTS.

[Sec. 6401(a)]

(a) ASSESSMENT AND COLLECTION AFTER LIMITATION PERIOD.—The term "overpayment" includes that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto.

[Sec. 6401(b)]

(b) EXCESSIVE CREDITS.—

(1) IN GENERAL.—If the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed by subtitle A (reduced by the credits allowable under subparts A, B, D, and G of such part IV), the amount of such excess shall be considered an overpayment.

(2) SPECIAL RULE FOR CREDIT UNDER SECTION 33.—For purposes of paragraph (1), any credit allowed under section 33 (relating to withholding of tax on nonresident aliens and on foreign corporations) for any taxable year shall be treated as a credit allowable under subpart C of part IV of subchapter A of chapter 1 only if an election under subsection (g) or (h) of section 6013 is in effect for such taxable year. The preceding sentence shall not apply to any credit so allowed by reason of section 1446.

### Amendments

**P.L. 105-206, § 6022(a):**

Act Sec. 6022(a) amended Code Sec. 6401(b)(1) by striking "and D" and inserting "D, and G".

**The above amendment is effective as if included in the amendments made by section 701(b) of the Tax Reform Act of 1986 (P.L. 99-514) [generally effective for tax years beginning after December 31, 1986.—CCH].**

**P.L. 100-647, § 1012(s)(1)(B):**

Act Sec. 1012(s)(1)(B) amended Code Sec. 6401(b)(2) by striking out the last sentence and inserting in lieu thereof a new sentence to read as above. Prior to amendment, the last sentence of Code Sec. 6401(b)(2) read as follows:

The preceding sentence shall not apply to any amount deducted and withheld under section 1446.

**P.L. 100-647, § 1012(s)(1)(D):**

Act Sec. 1012(s)(1)(D) provides that the above amendment applies to tax years beginning after December 31, 1987. No amount shall be required to be deducted and withheld under section 1446 of the 1986 Code (as in effect before the amendment made by subparagraph (A)).

**P.L. 99-514, § 1246(b):**

Act Sec. 1246(b) amended Code Sec. 6401(b)(2) by adding at the end thereof the last sentence to read as above.

**The above amendment applies to distributions after December 31, 1987, (or, if earlier, the effective date (which shall not be earlier than January 1, 1987) of the initial regulations issued under section 1446 of the Internal Revenue Code of 1986 as added by this section).**

**P.L. 98-369, § 474(r)(36):**

Act Sec. 474(r)(36) amended Code Sec. 6401(b) to read as above. Prior to amendment by Act Sec. 474(r)(36), but after the amendment made by Act Sec. 735(c)(16), Code Sec. 6401(b) read as follows:

(b) EXCESSIVE CREDITS.—If the amount allowable as credits under sections 31 (relating to tax withheld on wages), and 39 (relating to certain uses of gasoline and special fuels), and 43 (relating to earned income credit), exceeds the tax imposed by subtitle A (reduced by the credits allowable under subpart A of part IV of subchapter A of chapter 1, other than the credits allowable under sections 31, 39 and 43), the amount of such excess shall be considered an overpayment. For purposes of the preceding sentence, any credit allowed under paragraph (1) of section 32 (relating to withholding of tax on nonresident aliens and on foreign corporations) to a

**Internal Revenue Code**

**Sec. 6401(b)**

nonresident alien individual for a taxable year with respect to which an election under section 6013(g) or (h) is in effect shall be treated as an amount allowable as a credit under section 31.

The amendment by Act Sec. 474(r)(36) applies to tax years beginning after December 31, 1983, and to carrybacks from such years.

**P.L. 98-369, § 735(c)(16):**

Act Sec. 735(c)(16) amended Code Sec. 6401(b) by striking out ", special fuels, and lubricating oil" and inserting in lieu thereof "and special fuels".

The above amendment is effective as if included in the provision of P.L. 97-424 to which it relates.

**P.L. 98-67, § 102(a)**

Repealed the amendment made to Code Sec. 6401(b) by P.L. 97-248 (see below) as though such amendment had not been enacted.

**P.L. 97-248, § 307(a)(9):**

Amended Code Sec. 6401(b) by inserting ", interest, dividends, and patronage dividends" after "tax withheld on wages", applicable to interest, dividends, or patronage dividends paid or credited after June 30, 1983.

**P.L. 95-600, § 701(u)(15)(D):**

Amended Code Sec. 6401(b) by adding at the end thereof a new last sentence, to read as above. Effective for taxable years ending on or after December 31, 1975.

**P.L. 94-455, § 701(f)(2):**

Amended Code Sec. 6401(b), as in effect before the date of enactment of the Tax Reduction Act of 1975, to read as above by substituting "wages) and" for "wages)," and, following the words "and lubricating oil" by striking the phraseology "and 667(b) (relating to taxes paid by certain trusts". Applicable to distributions made in taxable years beginning after December 31, 1975.

**P.L. 94-455, § 701(f)(3):**

Amended Code Sec. 6401(b), as amended by the Tax Reduction Act of 1975, by substituting "lubricating oil), and" for "lubricating oil)," and following the words "earned

income credit)" by striking the phraseology "and 667(b) (relating to taxes paid by certain trusts)". Applicable to distributions made in taxable years beginning after December 31, 1975. After amendment, this Code Sec. 6401(b) read as follows:

(b) EXCESSIVE CREDITS.—If the amount allowable as credits under section 31 (relating to tax withheld on wages), 39 (relating to certain uses of gasoline, special fuels, and lubricating oil), and 43 (relating to earned income credit) exceeds the tax imposed by subtitle A (reduced by the credits allowable under subpart A of part IV of subchapter A of chapter 1, other than credits allowable under sections 31, 39 and 43), the amount of such excess shall be considered as overpayment.

**P. L. 94-12, § 204(b); as amended by P.L. 95-600, § 103(a):**

Amended Code Sec. 6401(b) by inserting "43 (relating to earned income credit)," before "and 667(b)"; and by deleting "and 39" and inserting in lieu thereof a comma and ", 39 and 43". Effective for taxable years beginning after 1974.

**P. L. 91-258, § 207(d)(1):**

Amended Code Sec. 6401(b) by adding, "special fuels," after "gasoline" in the second line. Effective 7-1-70.

**P. L. 91-172, § 331(c):**

Amended Code Sec. 6401(b) by: (1) striking out "Under Sections 31 and 39" in the heading, (2) by striking out "and 39 (relating" in the text and inserting in lieu thereof) ", 39 (relating", and (3) inserting after "lubricating oil)" in the text "and 667(b) (relating to taxes paid by certain trusts)". Effective for taxable years beginning after December 31, 1968.

**P. L. 89-44, § 809(d)(6):**

Amended Code Sec. 6401(b) to read as above. Effective 7-1-65. Prior to amendment, Sec. 6401(b) read as follows:

"(b) Excessive Withholding. — If the amount allowable as a credit under section 31 (relating to credit for tax withheld at the source under chapter 24) exceeds the taxes imposed by chapter 1 against which such credit is allowable, the amount of such excess shall be considered an overpayment."

[Sec. 6401(c)]

(c) RULE WHERE NO TAX LIABILITY.—An amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid.

#### Amendments

**P.L. 96-223, § 223(2):**

Amended Code Sec. 6401 by striking out subsection (d), applicable to qualified investment for taxable years beginning after December 31, 1979. Prior to amendment, Code Sec. 6401(d) read:

(d) CROSS REFERENCE.—

For rule allowing refund for excess investment credit attributable to solar or wind energy property, see section 46(a)(9)(C).

**P.L. 96-222, § 103(a)(2)(B)(iv):**

Amended Code Sec. 6401(d) by striking out "46(a)(10)(C)" and inserting "46(a)(9)(C)", effective for taxable years beginning after December 31, 1978.

**P.L. 95-618, § 301(c)(2):**

Added Code Sec. 6401(d) to read as above, effective November 10, 1978.

**Sec. 6401(c)**

©2000, CCH INCORPORATED

[Sec. 6402]

## SEC. 6402. AUTHORITY TO MAKE CREDITS OR REFUNDS.

[Sec. 6402(a)]

(a) GENERAL RULE.—In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), and (e) refund any balance to such person.

### Amendments

**P.L. 105-206, § 3711(c)(1):**

Act Sec. 3711(c)(1) amended Code Sec. 6402(a) by striking "(c) and [or] (d)" and inserting "(c), (d), and (e)".

**The above amendment applies to refunds payable under Code Sec. 6402 after December 31, 1999.**

**P.L. 105-33, § 5514(a)(1):**

Act Sec. 5514(a)(1) struck the changes made by Act Sec. 110(l)(7)(A) of the Personal Responsibility and Work Opportunity Act of 1996 (P.L. 104-193), which amended Code Sec. 6402(a) by striking "(c) or (d)" each place it appeared and inserting "(c), (d), or (e)". Thus, the provisions of law amended by such section are restored as if such section had not been enacted.

**The above amendment is effective on July 1, 1997.**

**P.L. 104-193, § 110(l)(7)(A):**

Act Sec. 110(l)(7)(A) amended Code Sec. 6402(a) by striking "(c) and (d)" and inserting "(c), (d), and (e)".

**The above amendment is effective on July 1, 1997.**

**P.L. 98-369, § 2653(b)(2):**

Act Sec. 2653(b)(2) amended Code Sec. 6402(a) by striking out "subsection (c)" and inserting in lieu thereof "subsections (c) and (d)".

**The above amendment applies with respect to refunds payable under section 6402 of the Internal Revenue Code of 1954 after December 31, 1985 [effective date changed by P.L. 100-485 and P.L. 102-164].**

**P.L. 97-35, § 2331(c)(1):**

Amended Code Sec. 6402(a) by striking out "shall refund" and inserting in lieu thereof "shall, subject to subsection (c), refund". For the effective date, see the historical comment for P.L. 97-35 following Code Sec. 6402(c).

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

[Sec. 6402(b)]

(b) CREDITS AGAINST ESTIMATED TAX.—The Secretary is authorized to prescribe regulations providing for the crediting against the estimated income tax for any taxable year of the amount determined by the taxpayer or the Secretary to be an overpayment of the income tax for a preceding taxable year.

### Amendments

**P.L. 94-455, § 1906(b)(13)(A), (K):**

P.L. 94-455, § 1906(b)(13)(A), amended the 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

P.L. 94-455, § 1906(b)(13)(K), struck out "(or his delegate)" following "or the Secretary" in Code Sec. 6402(b). Effective February 1, 1977.

[Sec. 6402(c)]

(c) OFFSET OF PAST-DUE SUPPORT AGAINST OVERPAYMENTS.—The amount of any overpayment to be refunded to the person making the overpayment shall be reduced by the amount of any past-due support (as defined in section 464(c) of the Social Security Act) owed by that person of which the Secretary has been notified by a State in accordance with section 464 of the Social Security Act. The Secretary shall remit the amount by which the overpayment is so reduced to the State collecting such support and notify the person making the overpayment that so much of the overpayment as was necessary to satisfy his obligation for past-due support has been paid to the State. A reduction under this subsection shall be applied first to satisfy any past-due support which has been assigned to the State under section 402(a)(26) or 471(a)(17) of the Social Security Act, and shall be applied to satisfy any other past-due support after any other reductions allowed by law (but before a credit against future liability for an internal revenue tax) have been made. This subsection shall be applied to an overpayment prior to its being credited to a person's future liability for an internal revenue tax.

### Amendments

**P.L. 98-378, § 21(e)(1):**

Amended Code Sec. 6402(c) by striking out "to which such support has been assigned" and inserting in lieu thereof "collecting such support"; and by inserting before the last

sentence thereof "A reduction under this subsection shall be applied first to satisfy any past-due support which has been assigned to the State under section 402(a)(26) or 471(a)(17) of the Social Security Act, and shall be applied to satisfy any other past-due support after any other reductions allowed by law (but before a credit against future liability for an

**Internal Revenue Code**                                          **Sec. 6402(c)**

bears the same ratio to the amount which (but for this paragraph) would be so treated as—

(A) the amount of such excess, bears to

(B) the aggregate amount of such allocable trust production.

(2) UNUSED EXEMPT ROYALTY LIMIT.—The unused exempt royalty limit of any qualified beneficiary for any calendar year is the excess of—

(A) the number of days in such calendar year, multiplied by the limitation in barrels determined under the table contained in section 4994(f)(2)(A)(ii), over

(B) the amount of exempt royalty oil (within the meaning of section 4994(f))—

(i) with respect to which such qualified beneficiary is the producer, and

(ii) which is removed from the premises during such calendar year.

(3) ALLOCATION.—Rules similar to the rules of paragraphs (2), (3), and (4) of section 6429(c) shall apply to the amount determined under paragraph (2)(A).

[Sec. 6430(c)]

(c) ALLOCABLE TRUST PRODUCTION.—For purposes of this section—

(1) IN GENERAL.—The term "allocable trust production" means, with respect to any qualified beneficiary, the qualified royalty production of any trust which—

(A) is removed from the premises during the calendar year, and

(B) is allocated to such qualified beneficiary under paragraph (2).

(2) ALLOCATION OF PRODUCTION.—

(A) IN GENERAL.—The qualified royalty production of a trust for any calendar year shall be allocated between the trust and its income beneficiaries as follows:

(i) there shall be allocated to the trust an amount of production based on the amount of any reserve for depletion for the calendar year with respect to qualified royalty production, and

(ii) production not allocated under clause (i) shall be allocated between the trust and the income beneficiaries in accordance with their respective shares of the adjusted distributable net income for the calendar year.

(B) DEFINITION AND SPECIAL RULE.—For purposes of this paragraph—

(i) ADJUSTED DISTRIBUTABLE NET INCOME.—The term "adjusted distributable net income" means distributable net income (as defined in section 643) for the calendar year reduced by the excess (if any) of—

(I) any reserve for depletion for such year with respect to qualified royalty production, over

(II) the amount allowable as a deduction for depletion to the trust for such year with respect to qualified royalty production.

(ii) ALLOCATION PRO RATA FROM EACH UNIT OF PRODUCTION.—Allocations under subparagraph (A) shall be treated as made pro rata from each unit of the qualified royalty production.

(3) PRODUCTION FROM TRANSFERRED PROPERTY.—

(A) IN GENERAL.—The allocable trust production of any qualified beneficiary shall not include any production attributable to an interest in property which has been transferred after June 9, 1981, in a transfer which—

(i) is described in section 613A(c)(9)(A), and

(ii) is not described in section 613A(c)(9)(B).

(B) EXCEPTIONS.—Subparagraph (A) shall not apply in the case of any transfer so long as the transferor and the qualified beneficiary are required by subsection (b)(3) to share the amount determined under subsection (b)(2)(A). The preceding sentence shall apply to the transfer of any property only if the production attributable to the property was allocable trust production or qualified royalty production of the transferor.

[Sec. 6430(d)]

(d) DEFINITIONS.—For purposes of this section—

(1) QUALIFIED BENEFICIARY.—The term "qualified beneficiary" means any individual or estate which is a beneficiary of any trust which is a producer.

(2) QUALIFIED ROYALTY PRODUCTION.—The term "qualified royalty production" means, with respect to any person, taxable crude oil (within the meaning of section 4991(a)) which is attributable to an economic interest of such person other than an operating mineral interest (within the meaning of section 614(d)). Such term does not include taxable crude oil attributable to any overriding royalty interest, production payment, net profits interest, or similar interest of the person which—

(A) is created after June 9, 1981, out of an operating mineral interest in property which is proven oil or gas property (within the meaning of section 613A(c)(9)(A)) on the date such interest is created, and

(B) is not created pursuant to a binding contract entered into before June 10, 1981.

(3) PRODUCER.—The term "producer" has the meaning given to such term by section 4996(a)(1).

[Sec. 6430(e)]

(e) REGULATIONS.—The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section.

**Amendments**

P.L. 97-448, § 106(a)(4)(A):

Added Code Sec. 6430, above. Applicable with respect to calendar years beginning after December 31, 1981.

# CHAPTER 66—LIMITATIONS

SUBCHAPTER A.    Limitations on assessment and collection.
SUBCHAPTER B.    Limitations on credit or refund.
SUBCHAPTER C.    Mitigation of effect of period of limitations.
SUBCHAPTER D.    Periods of limitation in judicial proceedings.

## Subchapter A—Limitations on Assessment and Collection

Sec. 6501.    Limitations on assessment and collection.
Sec. 6502.    Collection after assessment.
Sec. 6503.    Suspension of running of period of limitation.
Sec. 6504.    Cross references.

[Sec. 6501]

## SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

[Sec. 6501(a)]

(a) GENERAL RULE.—Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period. For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

**Amendments**

P.L. 105-34, § 1284(a):

Act Sec. 1284(a) amended Code Sec. 6501(a) by adding at the end a new sentence to read as above.

The above amendment applies to tax years beginning after August 5, 1997.

P. L. 85-859, § 165(a):

Amended Sec. 6501(a) by striking out "within 3 years after such tax became due," and substituting "at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid,".

[Sec. 6501(b)]

(b) TIME RETURN DEEMED FILED.—

(1) EARLY RETURN.—For purposes of this section, a return of tax imposed by this title, except tax imposed by chapter 3, 21, or 24, filed before the last day prescribed by law or by regulations promulgated pursuant to law for the filing thereof, shall be considered as filed on such last day.

(2) RETURN OF CERTAIN EMPLOYMENT TAXES AND TAX IMPOSED BY CHAPTER 3.—For purposes of this section, if a return of tax imposed by chapter 3, 21 or 24 for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, such return shall be considered filed on April 15 of such calendar year.

(3) RETURN EXECUTED BY SECRETARY.—Notwithstanding the provisions of paragraph (2) of section 6020(b), the execution of a return by the Secretary pursuant to the authority conferred by such section shall not start the running of the period of limitations on assessment and collection.

(4) RETURN OF EXCISE TAXES.—For purposes of this section, the filing of a return for a specified period on which an entry has been made with respect to a tax imposed under a provision of subtitle D (including a return on which an entry has been made showing no liability for such tax for such period) shall constitute the filing of a return of all amounts of such tax which, if properly paid, would be required to be reported on such return for such period.

**Amendments**

P.L. 94-455, § 1906(b)(13)(A):

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

P. L. 89-809, § 105(f)(3):

Amended Code Sec. 6501(b)(1) and (2) by substituting "chapter 3, 21, or 24" for "chapter 21 or 24" and amended

Code Sec. 6501(b)(2) by inserting "and Tax Imposed by Chapter 3" after "Taxes" in the heading. Effective 11-13-66.

P. L. 89-44, § 810(a):

Amended Sec. 6501(b) by adding paragraph (4) to read as above. Effective 7-1-65.

[Sec. 6501(c)]

(c) EXCEPTIONS.—

(1) FALSE RETURN.—In the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed, or a proceeding in court for collection of such tax may be begun without assessment, at any time.

(2) WILLFUL ATTEMPT TO EVADE TAX.—In case of a willful attempt in any manner to defeat or evade tax imposed by this title (other than tax imposed by subtitle A or B), the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

(3) NO RETURN.—In the case of failure to file a return, the tax may be assessed, or a proceeding in court for the collection of the tax may be begun without assessment, at any time.

(4) EXTENSION BY AGREEMENT.—

(A) IN GENERAL.—Where before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

(B) NOTICE TO TAXPAYER OF RIGHT TO REFUSE OR LIMIT EXTENSION.—The Secretary shall notify the taxpayer of the taxpayer's right to refuse to extend the period of limitations, or to limit such extension to particular issues or to a particular period of time, on each occasion when the taxpayer is requested to provide such consent.

(5) TAX RESULTING FROM CHANGES IN CERTAIN INCOME TAX OR ESTATE TAX CREDITS.—For special rules applicable in cases where the adjustment of certain taxes allowed as a credit against income taxes or estate taxes results in additional tax, see section 905(c) (relating to the foreign tax credit for income tax purposes) and section 2016 (relating to taxes of foreign countries, States, etc., claimed as credit against estate taxes).

(6) TERMINATION OF PRIVATE FOUNDATION STATUS.—In the case of a tax on termination of private foundation status under section 507, such tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.

(7) SPECIAL RULE FOR CERTAIN AMENDED RETURNS.—Where, within the 60-day period ending on the day on which the time prescribed in this section for the assessment of any tax imposed by subtitle A for any taxable year would otherwise expire, the Secretary receives a written document signed by the taxpayer showing that the taxpayer owes an additional amount of such tax for such taxable year, the period for the assessment of such additional amount shall not expire before the day 60 days after the day on which the Secretary receives such document.

(8) FAILURE TO NOTIFY SECRETARY OF CERTAIN FOREIGN TRANSFERS.—In the case of any information which is required to be reported to the Secretary under section 6038, 6038A, 6038B, 6046, 6046A, or 6048, the time for assessment of any tax imposed by this title with respect to any event or period to which such information relates shall not expire before the date which is 3 years after the date on which the Secretary is furnished the information required to be reported under such section.

**Sec. 6501(b)**                                            ©2002, CCH INCORPORATED

**Amendments**

**P.L. 95-600, § 701(t)(3)(A):**

Amended Code Sec. 6501(e)(3) by changing ", or 43" to "43, or 44". Effective 10-4-76.

**P.L. 95-227, § 4(d)(4):**

Amended Code Sec. 6501(e)(3) by substituting "43, or 44" for "or 43" in the second sentence thereof. For effective date, see the historical comment for P.L. 95-227 under Code Sec. 4951.

**P.L. 94-455, §§ 1307(d)(2)(F)(vi), 1906(b)(13)(A):**

P.L. 94-455, § 1307(d)(2)(F)(vi), substituted "chapter 41, 42," for "chapter 42" in Code Sec. 6501(e)(3). Effective on and after October 4, 1976.

P.L. 94-455, § 1906(b)(13)(A), amended the 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective February 1, 1977.

**P.L. 93-406, § 1016(a)(14):**

Amended Code Sec. 6501(e)(3) by changing "chapter 42" to "chapter 42 or 43". For effective date see amendment note for Code Sec. 410.

**P.L. 91-614, § 102(d)(8):**

Amended Code Sec. 6501(e) by substituting "period for which the return was filed" for "year" in the first sentence of paragraph (2). Applicable to gifts made after December 31, 1970.

**P.L. 91-172, § 101(g)(3):**

Added the last sentence in Code Sec. 6501(e)(3), effective January 1, 1970.

**P.L. 89-44, § 810(b):**

Amended Code Sec. 6501(e) by adding paragraph (3). Effective 7-1-65.

**[Sec. 6501(f)]**

(f) PERSONAL HOLDING COMPANY TAX.—If a corporation which is a personal holding company for any taxable year fails to file with its return under chapter 1 for such year a schedule setting forth—

(1) the items of gross income and adjusted ordinary gross income, described in section 543, received by the corporation during such year, and

(2) the names and addresses of the individuals who owned, within the meaning of section 544 (relating to rules for determining stock ownership), at any time during the last half of such year more than 50 percent in value of the outstanding capital stock of the corporation,

the personal holding company tax for such year may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return for such year was filed.

**Amendments**

**P. L. 88-272, § 225(k)(6):**

Amended Code Sec. 6501(f) by striking out "gross income, described in section 543(a)," and inserting in lieu thereof "gross income and adjusted ordinary gross income, described in section 543,". Effective 1-1-64.

**[Sec. 6501(g)]**

(g) CERTAIN INCOME TAX RETURNS OF CORPORATIONS.—

(1) TRUSTS OR PARTNERSHIPS.—If a taxpayer determines in good faith that it is a trust or partnership and files a return as such under subtitle A, and if such taxpayer is thereafter held to be a corporation for the taxable year for which the return is filed, such return shall be deemed the return of the corporation for purposes of this section.

(2) EXEMPT ORGANIZATIONS.—If a taxpayer determines in good faith that it is an exempt organization and files a return as such under section 6033, and if such taxpayer is thereafter held to be a taxable organization for the taxable year for which the return is filed, such return shall be deemed the return of the organization for purposes of this section.

(3) DISC.—If a corporation determines in good faith that it is a DISC (as defined in section 992(a)) and files a return as such under section 6011(c)(2) and if such corporation is thereafter held to be a corporation which is not a DISC for the taxable year for which the return is filed, such return shall be deemed the return of a corporation which is not a DISC for purposes of this section.

**Amendments**

**P.L. 98-369, § 801(d)(14):**

Act Sec. 801(d)(14) amended Code Sec. 6501(g)(3) by striking out "section 6011(e)(2)" and inserting in lieu thereof "section 6011(c)(2)."

The above amendment applies to transactions after December 31, 1984, in tax years ending after such date.

**P.L. 92-178, § 504(c):**

Amended Code Sec. 6501(g) by adding paragraph (3). Effective date is governed by the effective date for Code Sec. 992.

**P.L. 85-866, § 81(a):**

Amended Sec. 6501(g)(2) by striking out "corporation" each place it appeared and substituting "organization". The word "corporation" previously appeared in the 3rd and last lines. Effective 1-1-54.

**[Sec. 6501(h)]**

(h) NET OPERATING LOSS OR CAPITAL LOSS CARRYBACKS.—In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback or a capital loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(3)), such deficiency may

**Internal Revenue Code**                                   **Sec. 6501(h)**

be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss or net capital loss which results in such carryback may be assessed.

#### Amendments

**P.L. 95-600, §§ 703(n), 703(p)(2):**

Amended Code Sec. 6501(h) by changing "section 6213(b)(2)" to "section 6213(b)(3)" and by striking the last sentence. Prior to being stricken, the last sentence read as follows: "In the case of a deficiency attributable to the application of a net operating loss carryback, such deficiency may be assessed within 18 months after the date on which the taxpayer files in accordance with section 172(b)(3) a copy of the certification (with respect to the taxable year of the net operating loss) issued under section 317 of the Trade Expansion Act of 1962, if later than the date prescribed by the preceding sentence." The amendments take effect on October 4, 1976.

**P.L. 91-172, § 512(e)(1):**

Amended Code Sec. 6501(h) by adding "or Capital Loss" between "Loss" and "Carryback" in heading; by adding "or a capital loss carryback" after "loss carryback"; by adding "or net capital loss" between "net operating loss" and "which"; and by striking out all after "assessed, or within 18 months" and inserting above. Effective with respect to net capital losses sustained in taxable years beginning after December 31, 1969. Prior to amendment, Code Sec. 6501(h) read as follows:

"(h) Net Operating Loss Carrybacks.—In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback (including deficiencies which

may be assessed pursuant to the provisions of section 6213(b)(2)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss which results in such carryback may be assessed, or within 18 months after the date on which the taxpayer files in accordance with section 172(b)(3) a copy of the certification (with respect to such taxable year) issued under section 317 of the Trade Expansion Act of 1962, whichever is later."

**P.L. 87-794, § 317(c):**

Amended Code Sec. 6501(h) to read as above. Prior to amendment, Sec. 6501(h) read as follows:

"(h) Net Operating Loss Carrybacks.—In the case of a deficiency attributable to the application to the taxpayer of a net operating loss carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(2)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the net operating loss which results in such carryback may be assessed."

Amendment effective with respect to net operating losses for taxable years ending after 12-31-55.

**P.L. 85-866, § 81(b):**

Redesignated Sec. 6501(h) as Sec. 6501(i) (now (j)) and added new Sec. 6501(h) to read as above. Effective 1-1-54.

### [Sec. 6501(i)]

(i) FOREIGN TAX CARRYBACKS.—In the case of a deficiency attributable to the application to the taxpayer of a carryback under section 904(c) (relating to carryback and carryover of excess foreign taxes), or under section 907(f) (relating to carryback and carryover of disallowed oil and gas extraction taxes), such deficiency may be assessed at any time before the expiration of one year after the expiration of the period within which a deficiency may be assessed for the taxable year of the excess taxes described in section 904(c) or 907(f) which result in such carryback.

#### Amendments

**P.L. 94-455, §§ 1031(b)(5), 1035(d)(3)(A), (B):**

P.L. 94-455, § 1031(b)(5), substituted "section 904(c)" for "section 904(d)" each place it appeared in Code Sec. 6501(i). Applicable to taxable years beginning after December 31, 1975.

P.L. 94-455, § 1035(d)(3)(A), substituted "excess foreign taxes) or under section 907(f) (relating to carryback and carryover of disallowed oil and gas extraction taxes)" for "excess foreign taxes)" in Code Sec. 6501(i). Applicable to

taxes paid or accrued during taxable years ending after October 4, 1976.

P.L. 94-455, § 1035(d)(3)(B), substituted "section 904(c) or 907(f)" for "section 904(c)" in the second place it appeared in Code Sec. 6501(i). Applicable to taxes paid or accrued during taxable years ending after October 4, 1976.

**P.L. 86-780, § 3(c):**

Redesignated Sec. 6501(i) as Sec. 6501(j) and added a new Sec. 6501(i) to read as above. Effective for taxable years beginning after December 31, 1957.

### [Sec. 6501(j)]

(j) CERTAIN CREDIT CARRYBACKS.—

(1) IN GENERAL.—In the case of a deficiency attributable to the application to the taxpayer of a credit carryback (including deficiencies which may be assessed pursuant to the provisions of section 6213(b)(3)), such deficiency may be assessed at any time before the expiration of the period within which a deficiency for the taxable year of the unused credit which results in such carryback may be assessed, or with respect to any portion of a credit carryback from a taxable year attributable to a net operating loss carryback, capital loss carryback, or other credit carryback from a subsequent taxable year, at any time before the expiration of the period within which a deficiency for such subsequent taxable year may be assessed.

(2) CREDIT CARRYBACK DEFINED.—For purposes of this subsection, the term "credit carryback" has the meaning given such term by section 6511(d)(4)(C).

#### Amendments

**P.L. 95-628, § 8(c)(1):**

Amended Code Sec. 6501(j) to read as above, applicable to carrybacks arising in taxable years beginning after Nov-

ember 10, 1978. Prior to amendment, Code Sec. 6501(j) read as follows:

"(j) INVESTMENT CREDIT CARRYBACKS.—In the case of a deficiency attributable to the application to the taxpayer of an investment credit carryback (including deficiencies which

**Sec. 6501(i)**

### [Sec. 6502(a)]

(a) LENGTH OF PERIOD.—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—

(1) within 10 years after the assessment of the tax, or

(2) if—

(A) there is an installment agreement between the taxpayer and the Secretary, prior to the date which is 90 days after the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer at the time the installment agreement was entered into; or

(B) there is a release of levy under section 6343 after such 10-year period, prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before such release.

If a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable.

**Amendments**

**P.L. 105-206, § 3461(a)(1)-(2):**

Act Sec. 3461(a)(1)-(2) amended Code Sec. 6502(a) by striking paragraph (2) and inserting a new paragraph (2) to read as above, and by striking the first sentence in the matter following paragraph (2). Prior to amendment, Code Sec. 6502(a)(2) and the first sentence in the matter following paragraph (2) read as follows:

(2) prior to the expiration of any period for collection agreed upon in writing by the Secretary and the taxpayer before the expiration of such 10-year period (or, if there is a release of levy under section 6343 after such 10-year period, then before such release).

The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

**The above amendment applies to requests to extend the period of limitations made after December 31, 1999. For a special rule, see Act Sec. 3461(c)(2), below.**

**P.L. 105-206, § 3461(c)(2), provides:**

(2) PRIOR REQUEST.—If, in any request to extend the period of limitations made on or before December 31, 1999, a taxpayer agreed to extend such period beyond the 10-year period referred to in section 6502(a) of the Internal Revenue Code of 1986, such extension shall expire on the latest of—

(A) the last day of such 10-year period;

(B) December 31, 2002; or

(C) in the case of an extension in connection with an installment agreement, the 90th day after the end of the period of such extension.

**P.L. 101-508, § 11317(a)(1):**

Act Sec. 11317(a)(1) amended Code Sec. 6502(a) by striking "6 years" in paragraph (1) and inserting "10 years" and by striking "6-year period" each place it appears in paragraph (2) and inserting "10-year period".

**For the effective date of the above amendment, see Act Sec. 11317(c), below.**

**P.L. 101-508, § 11317(c), provides:**

(c) EFFECTIVE DATE.—The amendments made by this section shall apply to—

(1) taxes assessed after the date of the enactment of this Act, and

(2) taxes assessed on or before such date if the period specified in section 6502 of the Internal Revenue Code of 1986 (determined without regard to the amendments made by subsection (a)) for collection of such taxes has not expired as of such date.

**P.L. 101-239, § 7811(k)(2):**

Act Sec. 7811(k)(2) amended Code Sec. 6502(a) by striking "enforceable" and inserting "unenforceable" in the last sentence.

**The above amendment is effective as if included in the provision of the Technical and Miscellaneous Revenue Act of 1988 (P.L. 100-647) to which it relates.**

**P.L. 100-647, § 1015(u)(1):**

Act Sec. 1015(u)(1) amended the last sentence of Code Sec. 6502(a) to read as above. Prior to amendment, the last sentence read as follows:

The period provided by this subsection during which a tax may be collected by levy shall not be extended or curtailed by reason of a judgment against the taxpayer.

**The above amendment applies to levies issued after November 10, 1988.**

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared.

**P. L. 89-719, § 113(b):**

Amended Code Sec. 6502(a) by adding the last sentence to read as above, effective generally after November 2, 1966, the date of enactment. However, see the amendment note for Code Sec. 6323 for exceptions to this effective date. Effective 2-1-77.

### [Sec. 6502(b)]

(b) DATE WHEN LEVY IS CONSIDERED MADE.—The date on which a levy on property or rights to property is made shall be the date on which the notice of seizure provided in section 6335(a) is given.

### [Sec. 6503]

## SEC. 6503. SUSPENSION OF RUNNING OF PERIOD OF LIMITATION.

### [Sec. 6503(a)]

(a) ISSUANCE OF STATUTORY NOTICE OF DEFICIENCY.—

**Internal Revenue Code**                                                    **Sec. 6503(a)**

(1) GENERAL RULE.—The running of the period of limitations provided in section 6501 or 6502 (or section 6229, but only with respect to a deficiency described in paragraph (2)(A) or (3) of section 6230(a)) on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and certain excise taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.

(2) CORPORATION JOINING IN CONSOLIDATED INCOME TAX RETURN.—If a notice under section 6212(a) in respect of a deficiency in tax imposed by subtitle A for any taxable year is mailed to a corporation, the suspension of the running of the period of limitations provided in paragraph (1) of this subsection shall apply in the case of corporations with which such corporation made a consolidated income tax return for such taxable year.

### Amendments

**P.L. 105-34, § 1237(c)(2):**

Act Sec. 1237(c)(2) amended Code Sec. 6503(a)(1) by striking "section 6230(a)(2)(A)" and inserting "paragraph (2)(A) or (3) of section 6230(a)".

**The above amendment is effective as if included in the amendments made by section 402 of the Tax Equity and Fiscal Responsibility Act of 1982 (P.L. 97-248) [generally effective for partnership tax years beginning after September 3, 1982.—CCH.].**

**P.L. 99-514, § 1875(d)(2)(B)(ii):**

Act Sec. 1875(d)(2)(B)(ii) amended Code Sec. 6503(a)(1) by striking out "section 6501 or 6502" and inserting in lieu thereof "section 6501 or 6502 (or section 6229, but only with respect to a deficiency described in section 6230(a)(2)(A))."

The above amendment is effective as if included in P.L. 97-248.

**P.L. 94-455, § 1906(b)(13)(A):**

Amended 1954 Code by substituting "Secretary" for "Secretary or his delegate" each place it appeared. Effective 2-1-77.

**P.L. 93-406, § 1016(a)(15):**

Amended Code Sec. 6503(a)(1) by changing "chapter 42 taxes" to "certain excise taxes". For effective date, see amendment note for Code Sec. 410.

**P.L. 91-172, § 101(j)(46):**

Amended Code Sec. 6503(a)(1) by substituting "gift and chapter 42 taxes" for "and gift taxes". Effective 1-1-70.

### [Sec. 6503(b)]

(b) ASSETS OF TAXPAYER IN CONTROL OR CUSTODY OF COURT.—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

### Amendments

**P.L. 89-719, § 106(a):**

Amended Code Sec. 6503(b) by striking out "(other than the estate of a decedent or of an incompetent)" and "or

Territory", effective generally after November 2, 1966, the date of enactment. However, see the amendment note for Code Sec. 6323 for exceptions to this effective date.

### [Sec. 6503(c)]

(c) TAXPAYER OUTSIDE UNITED STATES.—The running of the period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period during which the taxpayer is outside the United States if such period of absence is for a continuous period of at least 6 months. If the preceding sentence applies and at the time of the taxpayer's return to the United States the period of limitations on collection after assessment prescribed in section 6502 would expire before the expiration of 6 months from the date of his return, such period shall not expire before the expiration of such 6 months.

### Amendments

**P.L. 89-719, § 106(b):**

Amended Code Sec. 6503(c) to read as above, effective generally after November 2, 1966, the date of enactment. However, see the amendment note for Code Sec. 6323 for exceptions to this effective date. Prior to amendment, Code Sec. 6503(c) read as follows:

"(c) Location of Property Outside the United States or Removal of Property From the United States.—In case

collection is hindered or delayed because property of the taxpayer is situated or held outside the United States or is removed from the United States, the period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period collection is so hindered or delayed. The total suspension of time under this subsection shall not in the aggregate exceed 6 years."

### [Sec. 6503(d)]

(d) EXTENSIONS OF TIME FOR PAYMENT OF ESTATE TAX.—The running of the period of limitations for collection of any tax imposed by chapter 11 shall be suspended for the period of any extension of time for payment granted under the provisions of section 6161(a)(2) or (b)(2) or under provisions of section 6163, or 6166.

**Sec. 6503(b)**

©2000, CCH INCORPORATED



**Effective: October 23, 2004**

> > Subtitle F. Procedure and Administration (Refs & Annos)
>> Chapter 67. Interest
>> Subchapter A. Interest on Underpayments
→ **§ 6603. Deposits made to suspend running of interest on potential underpayments, etc.**

**(a) Authority to make deposits other than as payment of tax.**--A taxpayer may make a cash deposit with the Secretary which may be used by the Secretary to pay any tax imposed under subtitle A or B or chapter 41, 42, 43, or 44 which has not been assessed at the time of the deposit. Such a deposit shall be made in such manner as the Secretary shall prescribe.

**(b) No interest imposed.**--To the extent that such deposit is used by the Secretary to pay tax, for purposes of section 6601 (relating to interest on underpayments), the tax shall be treated as paid when the deposit is made.

**(c) Return of deposit.**--Except in a case where the Secretary determines that collection of tax is in jeopardy, the Secretary shall return to the taxpayer any amount of the deposit (to the extent not used for a payment of tax) which the taxpayer requests in writing.

**(d) Payment of interest.**--

**(1) In general.**--For purposes of section 6611 (relating to interest on overpayments), except as provided in paragraph (4), a deposit which is returned to a taxpayer shall be treated as a payment of tax for any period to the extent (and only to the extent) attributable to a disputable tax for such period. Under regulations prescribed by the Secretary, rules similar to the rules of section 6611(b)(2) shall apply.

**(2) Disputable tax.**--

**(A) In general.**--For purposes of this section, the term "disputable tax" means the amount of tax specified at the time of the deposit as the taxpayer's reasonable estimate of the maximum amount of any tax attributable to disputable items.

**(B) Safe harbor based on 30-day letter.**--In the case of a taxpayer who has been issued a 30-day letter, the maximum amount of tax under subparagraph (A) shall not be less than the amount of the proposed deficiency specified in such letter.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

I.R.C. § 6603
26 U.S.C.A. § 6603

Page 2

**(3) Other definitions.**--For purposes of paragraph (2)--

**(A) Disputable item.**--The term "disputable item" means any item of income, gain, loss, deduction, or credit if the taxpayer--

**(i)** has a reasonable basis for its treatment of such item, and

**(ii)** reasonably believes that the Secretary also has a reasonable basis for disallowing the taxpayer's treatment of such item.

**(B) 30-day letter.**--The term "30-day letter" means the first letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals.

**(4) Rate of interest.**--The rate of interest under this subsection shall be the Federal short-term rate determined under section 6621(b), compounded daily.

**(e) Use of deposits.**--

**(1) Payment of tax.**--Except as otherwise provided by the taxpayer, deposits shall be treated as used for the payment of tax in the order deposited.

**(2) Returns of deposits.**--Deposits shall be treated as returned to the taxpayer on a last-in, first-out basis.

CREDIT(S)

(Added Pub.L. 108-357, Title VIII, § 842(a), Oct. 22, 2004, 118 Stat. 1598.)

Current through P.L. 111-62 approved 8-19-09

Westlaw. (C) 2009 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

**I-14**