IN THE UNITED STATES COURT OF FEDERAL CLAIMS

Nos. 07-06 T, 07-706 T, 08-135 T, 08-605 T
(Judge Francis M. Allegra)


PRINCIPAL LIFE INSURANCE COMPANY AND SUBSIDIARIES, et. al.,

Plaintiffs,


v.


THE UNITED STATES,

Defendant.

_____

UNITED STATES' BRIEF IN RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

JOHN A. DiCICCO
 Acting Assistant Attorney General

STEVEN I. FRAHM
BART D. JEFFRESS
 Attorneys
 Justice Department (Tax)
 Court of Federal Claims Section
 P.O. Box 26
 Ben Franklin Post Office
 Washington, D.C. 20044
 (202) 307-6496
 (202) 514-9440 (facsimile)

# TABLE OF CONTENTS

**Page**

United States' Brief . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      Taxpayer's arguments are constructed repeatedly on a misstatement
        of the holding in *Rosenman v. United States*, 323 U.S. 658 (1945) . . . . . . . . . . 2

II.     A tax paid within the assessment period is not refundable merely because it was
        not assessed within the period for assessment . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    The plain language of section 6401(a) does not support taxpayer's position . . . 11

IV.     The consequence of a late assessment of a tax is a prohibition against
        forcible collection, not return of payments made when the tax could
        have been assessed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

V.      The challenged assessments were made before the period to assess expired . . . 14

        A.      After a taxpayer elects to remit a deposit (versus payment),
                the rules for deposits do not entitle the taxpayer to convert
                the deposit into a payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.      If the rules governing deposits before the enactment of section
                6603 apply, then taxpayer's deposit did not convert to a payment
                on January 28, 2005, and the subsequent assessments on
                May 27, 2005, were timely . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

VI.     Tax Year 1998 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

VII.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Appendix C (Attached to brief and separately numbered):

        Revenue Act of 1926 (ch. 27, 44 Stat. 9):
                Section 277 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
                Section 278(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

        Revenue Act of 1928 (ch. 852, 45 Stat. 791):
                Section 275(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
                Section 276(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Abbott Laboratories v. United States,* 573 F.3d 1327 (Fed. Cir. 2009) . . . . . . . . . . . . . 23

*Anderson v. United States*, 15 F. Supp. 216 (Ct. Cl. 1936) . . . . . . . . . . . . . . . . . . . . . 5, 6

*Bachner v. Commissioner*, 109 T.C. 125 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Badaracco v. Commissioner*, 464 U.S. 386 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Baral v. United States*, 528 U.S. 431 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 25

*Bufferd v. Commissioner,* 506 U.S. 523 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Charles Leich & Co. v. United States*, 329 F.2d 649 (Ct. Cl. 1964) . . . . . . . . . . . . . 25-28

*Cohen v. Commissioner*, 910 F.2d 422 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cohen v. United States*, 995 F.2d 205 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . 5-7, 24-27, 29

*Crompton & Knowles Loom Works v. White*, 65 F.2d 132 (1st Cir. 1933) . . . 5, 10, 11, 27

*Darby v. Commissioner*, 97 T.C. 51 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Deaton v. Commissioner*, 440 F.3d 223 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Ewing v. United States*, 914 F.2d 499 (4th Cir. 1990) . . . . . . . . . . . . . . . . 5, 9, 11, 14, 27

*Ford v. United States*, 618 F.2d 357 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Jones v. Liberty Glass Co.*, 332 U.S. 524 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7-9

*Lewis v. Reynolds*, 284 U.S. 281 (1932), *modified* 284 U.S. 599 (1932) . . . . . . 3, 5, 7, 27

*Malachinski v. Commissioner*, 268 F.3d 497 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 3

*Meyersdale Fuel Co. v. United States*, 44 F.2d 437 (Ct. Cl. 1930) . . . . . . . . . . . . . . . 5, 6

*Moran v. United States*, 63 F.3d 663 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . 3-5, 7, 9, 11

**Page**

**Cases (continued):**

*Muir v. United States*, 3 F. Supp. 619 (Ct. Cl. 1933) . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*New York Life v. United States*, 118 F.3d 1553 (Fed. Cir. 1997) . . . . . . . . . . . . . . 24-29

*Newman v. Commissioner*, 68 T.C. 494 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rosenman v. United States*, 323 U.S. 658 (1945) . . . . . . . . . . . . . . . . . 2-6, 10, 24-26, 28

*Shore v. Commissioner*, 631 f.2d 624 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Commissioner*, 63 T.C.M. (CCH) 3164 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 18

*Stanley v. United States*, 140 F.3d 1023 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . 19

*United States v. Galletti*, 541 U.S. 114 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Williams-Russell & Johnson, Inc. v. United States*, 371 F.3d 1350
   (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10-11

**Statues:**

Internal Revenue Code of 1986 (26 U.S.C.):[1]

§ 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 6151 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12
§ 6203 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 6211 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
§ 6213 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10-12, 29-30
§ 6322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

---

[1] Unless otherwise stated, all statutory references to Title 26 of the United States Code are to the Internal Revenue Code of 1986.  Internal Revenue Code sections are referenced throughout the brief as "§ [section]" or "Section [section]."

**Page**

**Statues (continued):**

§ 6401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4-6, 10-13
§ 6501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 14
§ 6502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10
§ 6603 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-17, 24, 29
§ 7805 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Revenue Act of 1926, ch. 27, 44 Stat. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Revenue Act of 1928, ch. 852, 45 Stat. 791 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Miscellaneous:**

H.R. Rep. 70-2 (1927), *reprinted in* 1939-1 C.B. (pt. 2) 384 . . . . . . . . . . . . . . . . . . . . . 12

Rev. Proc. 2005-18, 2005-1 C.B. 798 (2005) . . . . . . . . . . . . . . . . . . . . . 15-18, 23-24, 29

Rev. Proc. 84-58, 1984-2 C.B. 501 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-19, 23

S. Rep. No. 70-960 (1928), *reprinted in* 1939-1 C.B. (pt. 2) 409 . . . . . . . . . . . . . . . . . 12

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
_____

Nos. 07-06 T, 07-706 T, 08-135 T, 08-605 T
(Judge Francis M. Allegra)
_____

PRINCIPAL LIFE INSURANCE COMPANY AND SUBSIDIARIES, et. al.,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

_____

UNITED STATES' BRIEF
_____

In our opening motion and brief (doc. #48), we moved for summary judgment on

plaintiffs' (collectively "taxpayer") claim that certain payments of tax, penalty, and interest for

the 1998, 1999, and 2000 tax years are refundable solely because of untimely assessments.  We

argued that summary judgment was appropriate on two independent grounds.

First, even if all of taxpayer's factual contentions were true, its refund claim fails as a

matter of law.  Taxpayer contends that it paid taxes within the assessment period, but that the

IRS failed to make assessments until after the period had expired.  As we explained (doc. #48 at

12-20), such circumstances do not give rise to a refundable overpayment.  When a tax is paid

within the period to assess, but the liability is not assessed until after the period expires, the

payment does not become refundable.  In tax law terms, a late assessment does not transform the

payment into an "overpayment," as defined in section 6401(a), that must be refunded pursuant to

section 6402(a).  The IRS is entitled to retain the payment until the taxpayer establishes on the

merits that it is not liable for the taxes in dispute.

Second, the IRS's assessments were timely made before the period to assess expired. Taxpayer's claim that the assessments were late depends entirely on its argument that it converted a deposit into a payment on January 28, 2005.  As we explained (doc. #48 at 20-37), however, under either the current or past rules governing deposits, this conversion of a payment into a deposit did not happen.

Taxpayer's various arguments in its cross-motion and opposition are without merit and are addressed below.  We begin with a response to a legal error that infects taxpayer's entire brief and is the false premise underlying many of its arguments.

**I.    Taxpayer's arguments are constructed repeatedly on a misstatement of the holding in *Rosenman v. United States*, 323 U.S. 658 (1945).**

In our opening brief (doc. #48 at 22-27), we summarized the Supreme Court's decision in *Rosenman*, the differing interpretations it generated in the courts of appeal (including the Federal Circuit), and the Supreme Court's discussion of it in *Baral v. United States*, 528 U.S. 431 (2000). In *Rosenman*, the Supreme Court held that a pre-assessment remittance by a taxpayer to the IRS could be either a payment or a deposit, and that the classification of the remittance depended on the facts and circumstances.  This holding was understood by six courts of appeal, including the Federal Circuit.

Two courts of appeal nevertheless misinterpreted *Rosenman* regarding when a remittance is a deposit.  Under their view, *Rosenman* held that no tax liability could arise before an assessment was made, and therefore a pre-assessment remittance was never a payment, but always a deposit.  The Fifth Circuit explained this position: "[Our earlier decision] relied upon *Rosenman* . . . and held that, until formal certification of the tax assessment list, no tax could

have been paid because until then there was no tax liability." *Ford v. United States*, 618 F.2d

357, 359 (5th Cir. 1980) (citation omitted), *abrogation recog. by Deaton v. United States*, 440

F.3d 223, 229-230 (5th Cir. 2006); *see also* doc. #48 at 24-25 (regarding Eighth Circuit cases).

In *Baral*, the Supreme Court explicitly rejected this minority view of *Rosenman*:

> Taking a more metaphysical tack, Baral contends that income tax is 'paid' . . . only when the income tax is assessed . . . because the concept of payment makes sense only when the liability is 'defined, known, and fixed by assessment'. . . . But the Code directly contradicts the notion that payment may not occur before assessment. . . . Nor does Baral's argument find support in our decision in *Rosenman* . . . . To be sure, a part of our opinion seems to endorse petitioner's view that payment only occurs at assessment: [quoted passage omitted]. . . . [I]f the quoted passage had represented our holding, we would have broadly rejected the Government's argument that payment occurred when the [pre-assessment] remittance of estimated estate tax was made, instead of rejecting the argument, as we did, only because it was not in accord with the 'tenor' of the 'business transaction'. . . .

*Baral*, 528 U.S. at 437-38 (citations and quotations omitted).  After *Baral*, therefore, there can be

no doubt that both tax liability and payment can occur before, and are independent of,

assessment.  Indeed, even before *Baral* and *Rosenman*, the Supreme Court had held that tax

liability can exist without assessment.  *See Lewis v. Reynolds*, 284 U.S. 281, 283 (1932),

*modified* 284 U.S. 599 (1932) (taxpayer remains liable for tax attributable to income offset by

claimed deductions, even though period to assess and collect tax based on disallowance of those

deductions had expired); *Moran v. United States*, 63 F.3d 663, 666 (7th Cir. 1995) (*Lewis* means

"an assessment is not a prerequisite to tax liability").[2]

As explained in our opening brief (doc. #48 at 18-20), the Internal Revenue Code also

---

[2] *Moran* was overruled by *Malachinski v. Comm'r*, 268 F.3d 497 (7th Cir. 2001), solely on an unrelated burden-of-proof issue.

clearly distinguishes between liability and assessment.  The liability of any taxpayer for federal income tax arises upon the taxpayer's receipt of "taxable income" (§ 1(a)), and a taxpayer's obligation to pay the tax liability exists independently of an assessment.  *See e.g.* §§ 6151(a); 6213(b)(4) (payment can precede assessment, for example, payment of a liability determined in a notice of deficiency); 6401(c) ("[a]n amount paid as tax" may be refunded as an "overpayment" even though "there was no tax liability in respect of which such amount was paid").

An assessment is an administrative record of tax liability (giving rise to various enforcement mechanisms), but it is not a prerequisite to liability.  § 6203 ("The assessment shall be made by *recording* the liability of the taxpayer. . . .") (emphasis added); *Moran*, 63 F.3d at 666.  Thus, an assessment is not required to retain voluntary tax payments, and the United States may collect taxes without assessment, including forcibly by a suit against a taxpayer. §§ 6211(a)(1)(B), 6501(a).  When the IRS makes an assessment, however, enforcement powers in addition to a collection suit are then granted.  For example, the federal lien for unpaid taxes, and the right to levy on the taxpayer's property to collect such taxes arises only when "the assessment is made."  § 6322; *see also* §§ 6331(a), 6502; *United States v. Galletti*, 541 U.S. 114, 122-123 (2004).

Although the Supreme Court and the Internal Revenue Code separate tax liability from assessment, taxpayer does not.  Taxpayer's arguments are based repeatedly on the erroneous assumption that there can be no liability before assessment.  In its effort to find authority for its position, taxpayer misstates the holding and history of *Rosenman*.  Taxpayer first adopts the discredited minority view that, under *Rosenman*, assessment is a prerequisite to liability and payment, and therefore all pre-assessment remittances are deposits as a matter of law.  Taxpayer

second argues that the holding of *Rosenman* was modified.  According to taxpayer, an assessment is no longer a prerequisite to payment, but under *Rosenman* it remains a prerequisite to liability.  To the contrary, under Supreme Court decisions (*Lewis*, *Rosenman*, and *Baral*) and the Internal Revenue Code, both liability and payment are independent of and therefore can exist before assessment.  Taxpayer's errors are repeated throughout its brief.  *See e.g.* doc. #50-2 at 15, 19-24, 27-29, 33-34, 46-47.

## II.    A tax paid within the assessment period is not refundable merely because it was not assessed within the period for assessment.

In our opening brief (doc. #48 at 13-15), we summarized the uniform case law, holding that section 6401(a) authorizes a refund of payments made after an untimely assessment or collection effort, but not a payment made before the period to assess expires.  We further demonstrated (id. at 16-18) that this interpretation is the only one consistent with the nature of a refund suit.  To obtain a refund, a taxpayer must demonstrate that it did not owe the tax it paid (a merits determination).  It is not sufficient to show that, after taxpayer paid taxes within the assessment period, the IRS failed to make a timely assessment or to assess at all.

Our analysis is supported by multiple authorities.[3]  Taxpayer, by contrast, is unable to cite a single case that awarded a refund of a tax paid within the assessment period solely because the IRS failed to make a timely assessment.  Not surprisingly, therefore, taxpayer undertakes a

---

[3] *Jones v. Liberty Glass Co.*, 332 U.S. 524, 531 (1947); *Lewis v. Reynolds*, 284 U.S. 281 (1932); *Williams-Russell & Johnson, Inc. v. United States*, 371 F.3d 1350, 1352-1353 (11th Cir. 2004); *Moran v. United States*, 63 F.3d 663, 666, 670 (7th Cir. 1995); *Cohen v. United States*, 995 F.2d 205, 207 (Fed. Cir. 1993); *Ewing v. United States*, 914 F.2d 499, 504 n. 13 (4th Cir. 1990); *Anderson v. United States*, 15 F. Supp. 216, 224-225 (Ct. Cl. 1936); *Muir v. United States*, 3 F. Supp. 619, 621 (Ct. Cl. 1933); *Crompton & Knowles Loom Works v. White*, 65 F.2d 132 (1st Cir. 1933); *Meyersdale Fuel Co. v. United States*, 44 F.2d 437, 446 (Ct. Cl. 1930); *Bachner v. Comm'r*, 109 T.C. 125 (1997).

long and unconvincing assault (doc. #50-2 at 11-19) against the mountain of case law supporting

our position.  We now address those arguments that warrant a response.

1.  In our opening brief (doc. #48 at 13-14), we explained that binding precedent from the

former Court of Claims (*Anderson*, *Muir*, and *Meyersdale Fuel Co.*) and the Federal Circuit

(*Cohen*) explicitly support our view that a tax paid within the period to assess is not refundable

merely because it is not assessed or assessed timely.  In response, taxpayer presents a confused

and unclear argument.  *See* doc. #50-2 at 17-19.  The gist is apparently that the Supreme Court's

decision in *Rosenman* and the subsequent development of the deposit concept have eroded the

earlier decisions from the 1930s.  Taxpayer tellingly fails to address the block quote in our brief

(doc. #48 at 14) from the Federal Circuit's post-*Rosenman* 1993 decision in *Cohen*, in which the

Federal Circuit explicitly endorsed our position.

Whatever taxpayer's argument is, the case law, including *Rosenman* and its progeny,

supports our position.  Taken together, the pre- and post- *Rosenman* cases establish the following

doctrine: if a deposit is remitted within the assessment period, the IRS must make a timely

assessment or else return the deposit to the taxpayer; by contrast, if a payment is made within the

assessment period, the IRS is not required to assess and a late assessment alone does not

transform the payment into a refundable overpayment.  The Federal Circuit has explained:

> The outcome of this case turns on whether the Cohens'
> remittance to the IRS of April 23, 1987, [before expiration of the
> period for assessment] constituted a payment or a deposit.  *If a
> payment, as the government argues, the government is entitled to
> retain the remittance in partial satisfaction of the proposed
> deficiencies for 1980.*  Alternatively, if the remittance was a
> deposit, a payment did not occur until the formal assessments of
> June and August of 1987; because those assessments were
> untimely, the remittance became an overpayment pursuant to
> I.R.C. § 6401(a), and the Cohens are entitled to a refund pursuant

to I.R.C. § 6402(a).

*Cohen*, 995 F.2d at 207 (emphasis added).

In this case, taxpayer made a remittance and concedes that subsequent assessments were timely if the remittance remained a deposit.  Taxpayer's claim that the assessments were late depends solely on its remittance becoming a payment during the assessment period.  But, as we have shown as a matter of law, even if the remittance became a payment, it is not refundable if a subsequent assessment is untimely.

2.  *Lewis v. Reynolds*, 284 U.S. 281 (1932): Also without merit is taxpayer's attempt to distinguish *Lewis* as having application only to cases involving offsets.  *See* doc. #50-2 at 12-14, 16.  While *Lewis* arose in the context of an offset, it established fundamental principles applicable to all refund suits.  Under *Lewis*, although the expiration of the period of limitations may bar assessment, it "does not obliterate the right of the United States *to retain payments already received* when they do not exceed the amount which might have been properly assessed and demanded."  *Lewis*, 284 U.S. at 283 (emphasis added); *see Moran*, 63 F.3d at 666; *Bachner*, 109 T.C. at 130.

3.  *Jones v. Liberty Glass Co.*, 332 U.S. 524 (1947): In our opening brief (doc. #48 at 16), we described the Supreme Court's definition of "overpayment" for refund suits - "any payment in excess of that which is properly due."  *Jones*, 332 U.S. at 531.  Taxpayer, however, wrongly argues that we advocate a contrary "highly technical" definition: "an overpayment involving an untimely assessment *can only exist* if payment of the tax was made **after** the assessment. . . ."  doc. #50-2 at 12 (emphasis added; bold text in original).  That is not our position.

Under *Jones*, an overpayment exists anytime payment exceeds liability.  Therefore, an

overpayment *can exist* where a tax is paid before a late (or timely) assessment.  It exists, under *Jones*, if the payment exceeds the amount properly due (i.e. the tax was not owed at the time it was paid).  That is a merits determination, not a matter of procedural timing.  *See also e.g. Jones*, 332 U.S. at 532 n. 14 ("Section 272 of the 1924 Act referred to 'overpayments' of income tax installments as payments of 'more than the amount determined to be the correct amount of such installment.'").  An overpayment does not exist under *Jones*, however, where a taxpayer paid what was due before the period to assess expired.

Taxpayer also distorts *Jones*.  In a portion of *Jones*, the Supreme Court construes overpayment to include "claims growing out of illegal assessments."  Taxpayer misleadingly suggests that the Supreme Court, therefore, acknowledged claims for payments made before a late assessment as claims for overpayments.  *See e.g.* doc. #50-2 at 12.

It did not.  As an initial matter, the Supreme Court had no occasion to address taxpayer's alleged fact pattern of a payment before a late assessment.  The facts of *Jones* were the opposite, a payment that was made in response to - after - an additional timely assessment.  Indeed, the ultimate issue in *Jones* was whether a payment made in response to an erroneous assessment could be an "overpayment" (such that the two-year period to file a refund claim for an "overpayment" applied to the case).

The language taxpayer seizes on in fact referred to claims to recover a payment made after (not before) assessment.  The Supreme Court was analyzing the legislative history behind a 1923 amendment to the Revenue Act of 1921.  It observed that, in the amendment, Congress explicitly included claims for payments based on revenue agent errors - "claims growing out of illegal assessment" - within the meaning of the phrase "paid in excess of that properly due" (i.e.

- 8 -

overpayment).  *Jones*, 332 U.S. at 532.  This analysis explicitly referred back to a more detailed

discussion of the history.  *Id.* at 531-532 ("legislative history which we have detailed" (i.e. 527-

530)).  There, the Supreme Court explicitly explained what kinds of "illegal assessment" claims

Congress intended.  Congress "designed" the phrase defining overpayment ("paid in excess of

that properly due") "to include not only those payments growing out of errors in the preparation

of returns but also those *payments resulting from illegal or erroneous assessments*."  *Jones*, 332

U.S. at 529 (emphasis added).[4]

4.  *Moran v. United States*, 63 F.3d 663 (7th Cir. 1995) and *Ewing v. United States*, 914

F.2d 499 (4th Cir. 1990): Taxpayer observes that the taxpayers in *Moran* and *Ewing* agreed they

were liable for some or all of the amounts they paid before the period to assess expired.  *See* doc.

#50-2 at 16.  Far from helping taxpayer, this observation actually demonstrates why its claim

fails.  If, as in *Moran* and *Ewing*, the amounts at issue in this case were owed and paid before the

period to assess expired, then those cases teach that the failure to assess timely does not

transform the payments into overpayments.  If, unlike those cases, the amounts were paid before

the period to assess expired but were not owed, then taxpayer is entitled to recover them.

Whether the taxes were owed or not is a merits determination on which taxpayer bears the

burden of proof.  Taxpayer will have the opportunity to distinguish itself from *Moran* and *Ewing*

on the issue of liability, when it presents its substantive claims for why it was not liable for the

---

[4] The context of the 1923 amendment explains why Congress and the Supreme Court referred only to payments following assessment.  Before the 1923 amendment, a taxpayer could extend the period for the Government to make an assessment.  *Jones*, 332 U.S. at 529-30 and n. 7.  If the Government assessed within the extended period, the taxpayer had to pay, but was out of time to file a refund claim for the post-assessment payment.  *Id.*  The amendment corrected this situation by permitting a refund claim within two years of paying the assessed tax.  *Id.*

taxes it paid.  Until then, any claim of overpayment is an unproved allegation.

5.  *Crompton & Knowles Loom Works v. White*, 65 F.2d 132 (1st Cir. 1933): In its effort to distinguish *Crompton*, taxpayer relies on the false premise that there is no liability prior to assessment under *Rosenman*.  *See* doc. #50-2 at 15.  As discussed above in Part I., *Rosenman* does not stand for that proposition.  Thus, the fact that the amount at issue in *Crompton* was said to be due before assessment does not distinguish *Crompton* from this case.

Taxpayer also contends that *Crompton* construed the predecessor of section 6401(a) in a statutory scheme markedly different from the one that exists today.  (doc. #50-2 at 15-16).  That is false.  Taxpayer correctly observes that the present scheme includes a period of limitation on assessment (section 6501(a)) and a period of limitation on collection after a timely assessment (section 6502(a)).  Taxpayer (citing the Revenue Act of 1926) botches the historical analysis, however, when it wrongly claims that the scheme in the time of *Crompton* contained only a single period of limitation for both assessment and collection.  The truth is that the scheme in place then mirrors the one that operates today.  Section 277(a) (1-5) of the Revenue Act of 1926 (ch. 27, 44 Stat. 9) set forth various periods of limitation on assessment and is a precursor to section 6501(a).  Section 278(d) sets forth a period of limitation on collection after a timely assessment, and is an ancestor of section 6502(a).[5]

6.  *Williams-Russell & Johnson, Inc. v. United States*, 371 F.3d 1350 (11th Cir. 2004): Taxpayer observes that *Williams-Russell* did not involve a notice of deficiency or section 6213(b) (doc. #50-2 at 17), but fails to explain why that distinction makes any difference.

---

[5] The Revenue Act of 1928 (ch. 852, 45 Stat. 791) similarly contained a period of limitation on assessment (section 275(a)) and a period of limitation on collection after a timely assessment (section 276(c)).

Taxpayer contends that a payment of tax made during the period to assess is refundable pursuant to section 6401(a) merely because of a late assessment.  The taxpayer in *Williams-Russell* made the same claim, and the Eleventh Circuit properly rejected it.  It is not apparent why taxpayer believes a notice of deficiency or section 6213(b) requires a more favorable result.

Taxpayer also boldly claims that *Williams-Russell*, along with *Crompton*, *Ewing*, and *Moran*, "circumvent[ed]" the plain and unambiguous meaning of section 6401(a).  *See* doc. #50-2 at 16-17.  Taxpayer's assault on a consistent and almost eighty-year old judicial interpretation is unwarranted, as explained in the next part.

### III.    The plain language of section 6401(a) does not support taxpayer's position.

Section 6401(a) provides that the term "overpayment" includes "that part of the amount of the payment of any internal revenue tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto."  From the correct premise that the word "or" serves a disjunctive function here (identifying alternatives), taxpayer reaches an incorrect conclusion - that one of the alternatives is "a payment assessed . . . after the statute of limitations has expired."  doc. #50-2 at 26; *see also id.* at 24-26.

The flaw in taxpayer's gloss is that "a payment" is not assessed.  Taxes are.  Taxpayer therefore uses the phrase "payment assessed" and assumes that the statute refers to a payment before an untimely assessment.  What the statute actually says is "the payment of any internal revenue tax which is assessed . . . after the expiration of the period of limitation. . . ."  The first preposition "of" indicates that the phrase "tax which is assessed . . . after the expiration of the period of limitation" is the direct object of the action denoted by the word "payment."  The statute, therefore, can be read to mean a payment of tax in response to an untimely assessment

(contrasting with payment of an unassessed tax (§§ 6151, 6213(b)(4))).  There are several reasons to adopt this construction.

First, it was the understanding of the Congress that enacted the statutory precursor to section 6401(a).  (doc. #48 at 15).  Congress unambiguously intended the statute to address payments made after the period of limitation on assessment expired.  *See e.g.* S.Rep.No. 960, 70th Cong., 1st Sess., *reprinted in* 1939-1 (Part 2) C.B. 409, 438 ("Section 607 provides that regardless of the correct tax liability any payment shall be an overpayment if made pursuant to an assessment after the expiration of the period of limitation on assessment (no assessment having been made within such period) . . . .").  Because the statute can be read in accord with Congress' purpose for enacting it, it should be.

Second, the use of the word "or" with a disjunctive function effectively captured the alternatives Congress intended to include within the definition of "overpayment."  Congress intended an overpayment to include a payment after an untimely assessment (or after the period to assess expired).  *See* H.R. Rep. No. 2, 70th Cong. 1st Sess., and S. Rep. No. 960, 70th Cong., 1st Sess., *reprinted in* 1939-1 (Part 2) C.B. 384, 406, 409, 438.  This alternative was described in the statutory language ". . . the payment of . . . tax which is assessed . . . after the expiration of the period of limitation [on assessment]. . . ."  Congress also intended an overpayment to include a payment in response to a timely assessment but after the period for collection (assuming a collection proceeding had not begun during the collection period).  *See id.*  This alternative was described in the statutory language ". . . the payment of . . . tax which is . . . paid (1928)/collected after the expiration of the period of limitation [on collection] . . . ."

In these circumstances, Congress appropriately used the word "or" with a disjunctive

- 12 -

function.  Had it used another conjunction, for example "assessed and paid," the statute would

not have encompassed the second alternative (payment following timely assessment but after

period for collection).  A payment made in response to a timely assessment is not a payment of a

"tax which is assessed . . . after the expiration of the period of limitation [on assessment]. . . ."

In sum, while taxpayer is correct that the word "or" should be read in its normal disjunctive

sense to distinguish alternatives, taxpayer improperly suggests that one of the alternatives

included a payment before the period to assess expired.  It never did.

Third, every judicial decision to address the matter has concluded that the statute does

not encompass payments made while the IRS still has time to assess.  (doc. #48 at 13-15).

Fourth, requiring an assessment where a payment has been made within the assessment

period is inconsistent with the nature of a refund suit and would override the distinction between

tax liability and tax assessment.  (doc. #48 at 18-20; *also supra* Part I).

Fifth, it is settled that periods of limitation barring tax assessment and collection are

strictly construed in favor of the Government.  *See e.g. Bufferd v. Comm'r*, 506 U.S. 523, 527

n.6 (1993); *Badaracco v. Comm'r*, 464 U.S. 386, 391-392 (1984).  While section 6401(a) is not

technically a period of limitation, taxpayer asks an interpretation of it that would nullify the prior

timely collection of tax in January of 2005 (under taxpayer's theory).  In this circumstance, the

section must be construed in favor of the Government and against barring collection.

**IV.    The consequence of a late assessment of a tax is a prohibition against forcible
         collection, not return of payments made when the tax could have been assessed.**

To support its interpretation of section 6401(a) and explain why a late assessment should

give rise to a refund of an earlier payment, taxpayer usurps Congress' role as law maker and

legislates what it considers an appropriate punishment for the IRS' "inaction."  Even though the

Internal Revenue Code nowhere requires the IRS to return monies paid within the assessment deadline if the IRS fails to assess or assesses late, taxpayer makes the unfounded argument that the statutory scheme prescribes exactly that punishment.  Doc. #50-2 at 5-11, 27-28.

The Internal Revenue Code does not impose such a draconian remedy.  Rather, the prescribed consequence of an untimely assessment (or the failure to assess at all) is to remove the power to forcibly collect tax.  The Fourth Circuit has so held:

> We are also of the view that § 6501(a) plainly and fully describes the consequence of the IRS's failure to comply with its terms.  To reiterate, it states: 'the amount of any tax . . . shall be assessed within three years after the return was filed . . . and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.'  This section simply mandates that the United States has no authority to collect a tax forcibly after the applicable period for assessment has expired.  It does not forbid the government from collecting and retaining taxes voluntarily paid without assessment and which do not constitute an overpayment.

*Ewing*, 914 F.2d at 503-504; *see also id.* at 504 n.13 (payment of properly owed taxes within period for assessment is not an overpayment even when there is no assessment).

**V.    The challenged assessments were made before the period to assess expired.**

As explained in our opening brief and above, taxpayer's untimely assessment claim fails on its own terms.  If, as taxpayer asserts, it paid tax during the period to assess and before late assessments, defendant is entitled to summary judgment.

But we also explained in our opening brief that the United States is entitled to summary judgment on the additional ground that the assessments were not late.  (doc. #48 at 20-37).  It is undisputed that the assessments were made on May 27, 2005, and that, under the default rules for computing assessment periods, the period to assess expired three days later on May 30, 2005.

- 14 -

Taxpayer contends, however, that the period to assess did not expire on May 30, 2005, but two months earlier.  Taxpayer contends that it made deposits on January 13, 2005, that it converted the deposits into payments on January 28, 2005, and that the conversion had the effect of shortening the period to assess to March 31, 2005, rendering the May assessments late.

But taxpayer concedes that, if its January 13, 2005 deposit was not converted to payments on January 28, 2005, then the assessment period was not shortened and the May 27, 2005 assessments were timely (and converted the deposit into payments at that time).

In our opening brief, we described two reasons why a conversion of taxpayer's deposit into payments did not occur on January 28, 2005.  (doc. #48 at 20-37).  Taxpayer's responses lack merit and are discussed below.

### A. After a taxpayer elects to remit a deposit (versus payment), the rules for deposits do not entitle the taxpayer to convert the deposit into a payment.

Our opening brief explained that the rules governing deposits are set forth in section 6603 and Revenue Procedure 2005-18 and abrogated prior rules for deposits.  We explained why those rules precluded the conversion of taxpayer's deposit into payment before assessments were made on May 27, 2005.  (doc. #48 at 20-35).

The relevant facts are undisputed.  Taxpayer remitted a deposit on January 13, 2005 (in response to a notice of deficiency), and the IRS treated the remittance as a deposit in accord with taxpayer's directions.  On January 28, 2005, taxpayer attempted to convert its deposit into payments (of tax, interest, and penalty).  The IRS made assessments on May 27, 2005.  *See* doc. #49 ¶¶ 2-7, 9; def.'s resp. to pls.' prop. revisions to def.'s prop. find. (filed today), ¶¶ 2-7, 9.

Although taxpayer apparently agrees that the rules for deposits set forth in section 6603 and Revenue Procedure 2005-18 abrogated prior rules (doc. #50-2 at 33, 35), taxpayer

nevertheless persists in claiming that it had the unilateral right to convert its deposit on January 28, 2005 (id. at 43-45).  Taxpayer makes three unconvincing arguments to reach that conclusion: (1) Revenue Procedure 2005-18 does not apply to its deposit, and Revenue Procedure 84-58 does not deny the right of conversion; (2) "common sense" vests taxpayer with the right of conversion; and (3) other IRS "procedures" permit a taxpayer to convert a deposit into payment, as defendant has acknowledged in another tax case.  None of these arguments is correct.

1.  Section 6.01 of Revenue Procedure 2005-18 explicitly provides that a deposit made pursuant to section 6603 does not convert to a payment until the IRS makes an assessment and uses the deposit to pay the assessed tax.  Apparently recognizing that section 6.01 precludes the pre-assessment conversion on which its claim depends, taxpayer argues in a footnote (doc. #50-2 at 43 n.22) that this section does not apply retroactively to its deposit.

Taxpayer is incorrect.  Although its deposit was made on January 13, 2005, and Revenue Procedure 2005-18 was not published until March 28, 2005, section 10 of the procedure states in unqualified terms that "[t]his revenue procedure applies to deposits made after October 22, 2004."  Rev. Proc. 2005-18, sec. 10.  Even without this explicit direction, revenue procedures are generally given retroactive effect unless the IRS indicates otherwise.  § 7805(b)(8) ("[t]he Secretary may prescribe the extent, if any, to which . . . any administrative determination other than by regulation . . . shall be applied without retroactive effect"); *Shore v. Comm'r*, 631 F.2d 624, 628 n. 8 (9th Cir. 1980).  This is true even where the taxpayer has relied on an earlier ruling to its detriment.  *See e.g. Cohen v. Comm'r*, 910 F.2d 422, 427-28 (7th Cir. 1990).[6]

---

[6] As regards revenue procedures, the earlier version of section 7805(b) discussed in *Shore* and *Cohen* is not materially different than section 7805(b)(8).

And, contrary to taxpayer's claim, there is nothing in the revenue procedure that suggests the IRS intended to limit its retroactive application.  Taxpayer points to the remainder of section 10.  That portion of the Revenue Procedure simply explains the process by which a taxpayer who remitted a deposit before March 28, 2005, could make the deposit eligible for interest under section 6603.  Taxpayer also points to section 9.  It provides that the new revenue procedure supercedes Revenue Procedure 84-58 for remittances made after March 28, 2005.  Neither section, however, cabins the explicit and unqualified statement that Revenue Procedure 2005-18 applies retroactively or overrides the default rule that it does.

In addition, the case for retroactive application is strong.  Congress made section 6603 applicable to all deposits made after October 22, 2004, and authorized the IRS to prescribe new rules for the making, accepting, and use of section 6603 deposits.  As of October 22, 2004, therefore, deposits could no longer be made pursuant to Revenue Procedure 84-58.  Section 10 of Revenue Procedure 2005-18 reflects this.  When discussing deposits remitted after the enactment of section 6603 on October 24, 2004, but before the issuance of Revenue Procedure 2005-18 on March 28, 2005, it does not mention Revenue Procedure 84-58.  By contrast, it refers to deposits remitted before the enactment of section 6603 as held "pursuant to Rev. Proc. 84-58."  Also as of October 22, 2004, taxpayers were on notice that new deposit rules were forthcoming.  And the IRS acted promptly, publishing Revenue Ruling 2005-18 on March 28, 2005, and applying it to deposits made after October 22, 2004.  doc. #48 at 29-32.  Finally, far from relying upon the earlier deposit system, it is undisputed that taxpayer intended to and indeed did make a section 6603 deposit that was eligible for interest.  *See e.g.* doc. #50-7 at pp. 4-9.

In any event, even if Revenue Procedure 84-58 applies to taxpayer's deposit and

attempted conversion (as taxpayer contends - doc. #50-2 at 43 nn. 22-23), the result is the same. Like Revenue Procedure 2005-18, there is nothing in Revenue Procedure 84-58 that permits a taxpayer to convert a deposit into a payment of tax that has not been assessed.  Also like Revenue Procedure 2005-18, Revenue Procedure 84-58 prohibited exactly what taxpayer attempted to accomplish here.  Under section 6.04 of Revenue Procedure 84-58, a taxpayer who elected to remit a deposit was prohibited from designating the application of the deposit to tax, penalties, and interest, until the IRS assessed liabilities and used the deposit to pay them.  (doc. #48 at 31).  That prohibited action is exactly what taxpayer attempted.[7]

Taxpayer's answer (doc. #50-2 at 43 n. 23) that payments may be allocated under the Revenue Procedure ignores (1) that, under the facts of this case, an allocation may only be made after the assessment and (2) that the Revenue Procedure conveys no right to convert a deposit to a payment before an assessment has been made.  Taxpayer remitted a deposit on January 13, 2005, thereby triggering the prohibition against designating the deposit to tax, penalties, and interest before assessment.  Rev. Proc. 84-58, sec. 6.04.  When, fifteen days later, taxpayer asked the IRS to apply the deposit as payments in accord with taxpayer's designated allocations, the revenue procedure required noncompliance.  Before the IRS could follow taxpayer's instruction and honor its designations, the revenue procedure directed that a liability had to be "ultimately

_____

[7] In accepting a taxpayer's argument that it lacked jurisdiction over tax-motivated interest, a memorandum opinion from the Tax Court erroneously concluded that the taxpayer's letter converted a deposit into payment pursuant to Revenue Procedure 84-58.  *See Smith v. Comm'r*, 63 T.C.M. (CCH) 3164 (1992).  Because the opinion provides no discussion or rationale for its conclusion, it is not persuasive and should not be followed.  This is particularly true because memorandum opinions are not controlling precedent in the Tax Court.  *See Darby v. Comm'r*, 97 T.C. 51, 67 (1991); *Newman v. Comm'r*, 68 T.C. 494, 502 n.4 (1977).

assessed" and "the deposit applied as a payment."[8]

2.  Similarly empty is taxpayer's appeal to "common sense," which is no more than an after-the-fact appeal to rewrite the applicable procedures.  doc. #50-2 at 43.  While a taxpayer could have recovered its deposit and then remitted the returned monies as a payment, that is not what this taxpayer did.  As we explained in our opening brief (doc. #48 at 34-35), the authorized procedures provided taxpayers with options - first to remit either a pre-assessment deposit, or a pre-assessment payment, and second, if it opted for a pre-assessment deposit, to recover its deposit and, later, remit the returned amount as a payment.  Taxpayer could have exercised its options to either make a payment at the outset, or remit a returned deposit as a payment.  If it had done so, in accord with its published procedures, the IRS would have been on notice it had a duty to process the remittance as a payment.

Taxpayer, however, followed a procedure of its own making for which the revenue procedure makes no provision.  Not surprisingly, therefore, taxpayer's procedure was not recognized by and caused confusion within the IRS.  *See* def.'s resps. to pls.' prop. find. (filed today) ¶¶ 24, 32, 44.  Nevertheless, taxpayer insists that it had the right to operate outside official procedure and convert a previously remitted deposit into a payment by submitting a letter.

---

[8] In a rather bizarre argument, taxpayer implicates *Stanley v. U.S.*, 140 F.3d 1023, 1029 (Fed. Cir. 1998) for the proposition that a taxpayer may act outside of Revenue Procedure 84-58 with respect to the use of a deposit (e.g. converting it to a payment).  *See* doc. #50-2 at 43 n.23. *Stanley* does not support that position.  *Stanley* held that the deposit procedures were not relevant, because the case was about the procedures for erroneous refunds.  Whether the Government was correct that the taxpayer's remittance failed to qualify as a deposit under Rev. Proc. 84-58 did not matter.  What mattered, according to the Federal Circuit, was whether the "payment" the taxpayer made was the kind that excused the Government from following the procedures for recovery of an erroneous refund.  *Stanley*, 140 F.3d at 1029-30.  This case, by contrast, is about the use of a deposit, and what the deposit procedures allow or do not allow in that regard is relevant.

Taxpayer further claims that its unilateral action shortened the period for the IRS to assess tens of millions of taxes.  Such a trap, even though unintended, simply can not be the law.  When a period of limitations on the IRS' ability to assess and collect (millions in) taxes is at issue, a taxpayer must comply strictly with the official published procedures of the IRS.  If those procedures prohibit a taxpayer's action (as they do here) or merely do not provide for it (as taxpayer concedes here), the action limiting tax collection is impermissible.

3.  Finally, taxpayer argues that, apart from the published revenue procedure, the IRS follows other unpublished "procedures" pursuant to which the IRS permits a taxpayer to convert a deposit into a payment for various purposes.  For the existence of these so-called "procedures," taxpayer relies on the alleged experiences of its expert, David Boucher, and defendant's pleadings in another tax case (*Ford Motor Co.*).  (doc. #50-2 at 44-45).

We explain why Mr. Boucher's testimony does not support taxpayer's position in our responses to taxpayer's proposed findings (numbers 40 and 44), filed today.  The fundamental flaw is that taxpayer attempts to supplant the published revenue procedures that prohibit (and do not authorize) the conversion taxpayer attempted with testimony from its expert about his experiences with IRS employees.  By elevating alleged informal experience to trump published official procedure, taxpayer usurps Congress' and the IRS' function and legislates the missing legal authority its conversion attempt requires.  But where the ability of the IRS to assess and collect taxes is concerned, IRS practice and policy must be derived from official published procedure, not from testimony about alleged actions of IRS employees.

In addition, Mr. Boucher's allegations regarding his experience with IRS employees are not relevant to taxpayer's untimely assessment claim.  Taxpayer claims that it converted its

deposit into payments by a designation letter and, by that conversion, cut short the period for the IRS to assess taxes.  Mr. Boucher, however, denied any experience with that fact pattern.  He testified that he had no experience with the letter conversion of a deposit in the context of limiting the IRS' right to assess and collect.

To the contrary, Mr. Boucher testified that, in his experience, the IRS accepted a taxpayer's letter conversion of a deposit into a payment for other, far more limited purposes: (1) to permit a taxpayer to receive overpayment interest from the date of a conversion instead of a subsequent date of assessment; (2) to permit a taxpayer to file a refund claim within two years of the conversion of a deposit into a payment where, if the two-year period was not allowed, the taxpayer's refund claim would be untimely; (3) to permit a taxpayer to obtain the benefit of global interest netting that the taxpayer would not obtain absent a conversion; (4) to permit a taxpayer to take a deduction for interest expenses; and (5) to permit a taxpayer to avoid the enhanced rate of interest applicable to large corporate underpayments.

While these examples provide a taxpayer with a benefit, in the form of more overpayment interest, timely refund claims, more deductions etc., than the taxpayer would have had in the absence of a conversion to payment, none cut off the IRS' right to assess and collect taxes.  In addition, in each of Mr. Boucher's examples, the acceptance of taxpayer's conversion occurs sometime after the taxpayer submits its designation letter.  According to Mr. Boucher, the IRS files the letter when it is submitted and only reverts to it when necessary, for example, to perform a post-assessment computation of overpayment interest (e.g. II 0230).  This aspect of Mr. Boucher's experiences contrasts sharply with the situation in this case.  Instead of allowing the IRS to look back in time to determine whether a date other than the assessment date should

commence the accrual of overpayment interest, taxpayer would silently impose an immediate

burden on the IRS to make an assessment within sixty days of receipt of the taxpayer's letter (or

return the taxpayer's money).  This difference as to timing and notice makes it fundamentally

unfair to extrapolate from Mr. Boucher's experiences to mandate a conversion here with dire,

unjust, and unexpected consequences to the IRS' ability to receive the proper amount of tax due

from taxpayer.

        In sum, Mr. Boucher denied experience with the fact pattern at issue here and the

experiences about which he did testify do not translate to the context of this case.  His testimony

therefore does not support the conclusion taxpayer seeks - that the IRS would (and must) accept

a taxpayer's unilateral conversion of its deposit into a payment in contravention of (or outside)

published IRS' policy, with the effect (if not the purpose) of cutting off the IRS' right to assess

and collect.

        Similarly unsupportive of taxpayer's position are defendant's pleadings in *Ford Motor

Co*.  As taxpayer notes, Ford seeks overpayment interest from the date it remitted deposits, rather

than the subsequent date it converted the deposits into payments by designation letter.  In this

context of overpayment interest, defendant's answer admits (incorrectly) that a taxpayer is

permitted to designate a previously remitted deposit as a payment.  Defendant's motion for

judgment on the pleadings clarified that there is no requirement to convert a deposit into

payment at the request of a taxpayer, but also stated the IRS does generally grant such requests.

*See Mot.* (doc. #28) at 15, No. 2:08-cv-12960-PJD-MKM (E.D. Mich.).

        The issue presented in *Ford* is whether interest runs from the date of a deposit, but, if it

does not, the question when interest does begin after that is not presented.  Thus, there was (and

is) no need for defendant's filings in *Ford* to opine regarding the date from which overpayment interest is calculated (whether from date of a taxpayer's letter requesting conversion or a subsequent date of assessment).  To resolve the case, it is sufficient to reject Ford's position that overpayment interest begins to accrue on the date a deposit is remitted.  That the government's answer went beyond that issue, incorrectly, cannot compel an incorrect result here.  In addition, the analogy between the overpayment interest context of *Ford* and this case suffers from the same defects identified with respect to Mr. Boucher's testimony: (i) accepting conversion to pay out more overpayment interest is far different, and far less consequential, than accepting conversion to cut off a period to assess; and (ii) the timing of accepting a conversion for overpayment interest purposes is leisurely compared to the immediacy of having to assess within sixty days of a taxpayer's designation letter.  (E.g. Ford alleges almost nine years passed between date of conversion and date of overpayment interest computations for its 1985 tax year, *Compl.* (doc. #1) ¶¶ 90, 91, No. 2:08-cv-PJD-MKM (E.D. Mich.)).  Finally, it is undisputed in the *Ford* case that the remittances are governed by Revenue Procedure 84-58, and not Revenue Procedure 2005-18.  For these reasons, defendant's statements in *Ford* did not directly involve the issues before the Court, and should not be considered.  *Cf. Abbot Laboratories v. United States*, 573 F.3d 1327, 1332-33 (Fed. Cir. 2009) (defendant's interpretation of regulation is entitled to deference, even if defendant expressed a conflicting interpretation in another case, where the other case arose in a different context that did not directly involve the relevant issue).

Finally, that the IRS might treat a remittance informally as a payment for purposes of conferring a benefit on the taxpayer (e.g. more overpayment interest, timely refund claim etc.), but not treat it as a payment for the purpose of shortening the period to assess is consistent with

*Rosenman*.  In *Rosenman*, the Supreme Court took issue with the Government treating a single remittance as a payment to cut off the taxpayer's right to file a refund claim and as a deposit to avoid paying the taxpayer interest.  *Rosenman*, 323 U.S. at 663 ("It will not do to treat the same transaction as payment and not as payment, *whichever favors the Government*." (emphasis added)).  The situation presented by supplanting the revenue procedures with Mr. Boucher's testimony and the *Ford* case is very different.  The published revenue procedures prevent all taxpayer attempts to convert deposits by letter prior to assessment.  There is no "heads I win, tails you lose" aspect, which the Supreme Court decried in *Rosenman*.

      **B.**    **If the rules governing deposits before the enactment of section 6603 apply, then taxpayer's deposit did not convert to a payment on January 28, 2005, and the subsequent assessments on May 27, 2005, were timely.**

Even if section 6603 and Revenue Procedure 2005-18 did not abrogate the prior rules for existing deposits, our opening brief explained that, under the prior rules, the assessments were made before the assessment period expired.  (doc. #48 at 20-33, 35-37).  The rule that developed in Federal Circuit decisions (e.g. *New York Life* and *Cohen*) was as follows - if, following the issuance of a notice of deficiency, a taxpayer remits an amount to satisfy the liability at issue and accompanies the remittance with a protest of that liability, then the remittance remains a deposit until it is used to pay an assessment.  *Id.* at 26-27.  We also explained how that rule applied to the undisputed facts of this case.  Taxpayer's consistent protest/contest of the liabilities set forth in the notice of deficiency prevented the pre-assessment conversion of deposit into payment on which taxpayer's claim depends.  *Id.* at 36-37.

Taxpayer's response divides into three parts: (1) arguments based on a misstatement of deposit doctrine, including the Federal Circuit's decisions in *New York Life* and *Cohen*;

(2) misconceived attempts to distinguish the facts of protest/contest present in *New York Life* and *Cohen* from the facts present in this case; and (3) other arguments that amount to criticisms of the Federal Circuit's binding decisions.

1.   Our opening brief summarized the deposit doctrine, beginning with the Supreme Court's decision in *Rosenman* and tracing post-*Rosenman* developments in the Federal Circuit. The Supreme Court held in *Rosenman* that a taxpayer's pre-assessment remittance to the IRS could be either a payment or a deposit, and that the classification of the remittance depended on the facts and circumstances.  Accordingly, the Federal Circuit applied a facts-and-circumstances approach to determine whether a remittance was a deposit or a payment.  Within this analysis, the Federal Circuit identified a dispositive factor - a protest of the underlying liability contemporaneous with the remittance.  Where circumstances of protest were present, the Federal Circuit held that the remittance was a deposit until used to pay an assessed tax.  Where there was no protest, the Federal Circuit considered other facts and circumstances.  *See* doc. #48 at 20-27.

In contrast, taxpayer's summary of the deposit doctrine (doc. #50-2 at 28-35) is replete with error.  Taxpayer claims *Rosenman* held that no tax liability could arise before assessment, and therefore a pre-assessment remittance was always a deposit as a matter of law.  *See e.g. id.* at 28-29, 33-34.  As we explained above in Part I and in our opening brief, *Rosenman* contains no such holding.  While the Fifth and Eighth circuits thought that it had, the Supreme Court eliminated any doubt and ruled in *Baral* that such an interpretation was wrong.  Liability is independent of assessment.

Taxpayer also inaccurately claims that the Federal Circuit in *Cohen* stated that the decision in *Charles Leich & Co. v. United States*, 329 F.2d 649 (Ct. Cl. 1964) had rejected the

"*Rosenman*" position that an assessment was a prerequisite to a payment.  (Doc. #50-2 at 29).

Taxpayer does not explain how the Federal Circuit might have believed its predecessor court had

the power to overrule the Supreme Court.  In any event, it didn't, as taxpayer misrepresents what

the Federal Circuit said in *Cohen*.  What the Federal Circuit actually said is that *Leich* rejected

the no payment before assessment rule; the Federal Circuit did not ascribe that rule to *Rosenman*.

*Cohen*, 995 F.2d at 208.  Neither did *Leich*.  *See Leich*, 329 F.2d at 652-53.  Indeed, *Leich* was

one of the post-*Rosenman* courts that correctly evaluated the nature of a pre-assessment

remittance, whether deposit or payment, based on the facts and circumstances.  *Id.*[9]

Taxpayer claims that the Federal Circuit's decisions in *Cohen* and *New York Life*

"resuscitated" the "deposit as a matter of law doctrine."  This claim is wildly off the mark.  It is

built on taxpayer's pervasive false premise that *Rosenman* held that all pre-assessment

remittances were deposits as a matter of law, and the additional false premise that *Cohen* and

*New York Life* followed suit.  As we have explained, *Rosenman* held no such thing, but adopted a

facts and circumstances approach.  *Cohen* and *New York Life* followed that approach,

emphasizing the fact and circumstance of protest/contest (where there was no assessment).

Taxpayer's misreading of *Cohen* and *New York Life* culminates in the claim that both

could have reached the same result (refund to taxpayer) based on taxpayer's theory - that the

remittance at issue was a payment within the period to assess that became refundable because of

a failure to assess timely.  doc. #50-2 at 31-32.  Even more audaciously, taxpayer claims that

---

[9] *Leich* appears to be the origin of the Federal Circuit rule that protest/contest of liability, when present, is the determining factor that a pre-assessment remittance is a deposit.  *Id.* at 653 ("We believe that the factors of 'contest,' coupled with the fact of no assessment, are sufficient to negate 'payment' in the instant case.").

*Cohen* allowed a "payment" during the period of limitations to be refunded as a result of a late assessment, and therefore contradicts *Lewis*, *Crompton*, *Ewing*, etc. *Id.* at 31. Taxpayer is dead wrong. The only reason a refund issued in *Cohen* and *New York Life* was because the Federal Circuit concluded that the pre-assessment remittance was a not a payment (but a deposit). Had it classified the remittance as a payment per taxpayer's theory, it would have denied the requested refunds, as *Cohen* explicitly explained. *See Cohen*, 995 F.2d at 207 (if pre-assessment remittance within period to assess was a payment, "the government is entitled to retain [it]. . . .").

2. Similarly unconvincing is taxpayer's attempt to distinguish the facts of protest/contest in *Leich*, *Cohen*, and *New York Life*, from the facts of protest/contest in this case. (doc. #50-2 at 36-37). Taxpayer draws lines too narrowly. For example, taxpayer attempts to distinguish a single remittance in *New York Life* with its two separate letters in this case. The Federal Circuit, however, is concerned with circumstances of protest or contest surrounding a remittance. Thus, in *New York Life*, the Federal Circuit considered multiple events spanning from August 1992 to May 1994 (a notice of adjustments, New York Life's protest, the IRS' further review, a tentative settlement under which New York Life retained the right to prosecute a refund claim, New York Life's remittance of checks "in payment of [tax and interest]", and New York Life's submission of forms with cover letters waiving restrictions on assessment in which New York Life reserved the right to file refund claims). *See New York Life*, 118 F.3d at 1555. That is, the Federal Circuit looked at all "clear circumstances of contest prior to expiration the period of assessment." *New York Life*, 118 F.3d at 1549 (quoting *Cohen*, 995 F.2d at 209).

Here, the totality of the circumstances of protest and contest (including taxpayer's habitual practice known to the IRS, oral protests, written protests contemporaneous with

taxpayer's remittance, and taxpayer's refund claims) lead inexorably to the conclusion that, under the Federal Circuit's case law, taxpayer's deposit did not convert to payments on January 28, 2005, while taxpayer's ongoing protest continued.  *See* doc. #48 at 8-10, 36-37; def.'s resps. to pls.' responses to def's prop. find. (filed today), ¶¶ 10-17.

3.  Taxpayer's final effort to escape the Federal Circuit's law is unpersuasive.  Taxpayer argues (unintuitively) that intent to file a refund claim should not constitute a fact of protest. doc. #50-2 at 37-38.  Taxpayer's argument is with the Federal Circuit's precedent.  As taxpayer concedes (doc. #50-2 at 29), *Leich* considered the filing of a refund claim indicative of a deposit, and *New York Life* recognized reservation of the right to file a refund claim as a protest circumstance.  In addition, contrary to taxpayer's claim, this doctrine does not allow the IRS unbridled discretion to determine the date of payment/assessment.  As in *New York Life*, the IRS must assess quickly before the assessment period expires, or else return the remitted monies.

Finally, because the factor of protest/contest is dispositive in this case, taxpayer's discussion of other factors (doc. #50-2 at 35-36, 38-43) is not relevant.  Taxpayer's emphasis on its own intent is particularly misplaced, as the Federal Circuit in *New York Life*, in holding that a pre-assessment remittance was a deposit, subordinated a clear intent to make a pre-assessment payment to the factor of protest/contest.[10]  Further, we do not agree with all of the factual contentions made by taxpayer with respect to these other factors.  Our disagreements are detailed in responses to the proposed fact findings on which taxpayer relies.  *See* def.'s resps. to pls.'

---

[10] *See also Rosenman*, 323 U.S. 658 (concluding pre-assessment remittance a deposit even though letter transmitting remittance stated (at 660-661) "We are delivering to you  . . . an Estate check payable . . . , for $120,000, as a payment . . . .  This payment is made under protest and duress, and solely for the purpose of avoiding penalties and interest, since it is contended by the executors that not all of this sum is legally or lawfully due.")

prop. find. (filed today) ¶¶ 24, 32-35, 36, 38, 41, 42, 44-45, 47, 48, 50.  For example, the responses demonstrate that most of the assertions about the IRS' treatment of taxpayer's remittance and letters (doc. #50-2 at 38-40) are simply not supported by the record.

4.  Taxpayer argues in the alternative (doc. #50-2 at 45-49) that, even if its remittance remained a deposit until assessment under *Cohen* and *New York Life*, the remittance nevertheless converted to a payment on January 28, 2005, for purposes of section 6213(b)(4), i.e., for purposes of shortening the period to assess.  This argument is nonsensical.

Under *Cohen* and *New York Life*, a pre-assessment remittance is either a deposit or a payment for purposes of the period to assess.  Classification as a deposit means the IRS must make an assessment before the period to assess expires or return the remittance.  Classification as a payment means the IRS is entitled to retain the monies and need not assess at all.  *See e.g. Cohen*, 995 F.2d at 207.  Taxpayer would overturn this doctrine, classifying a remittance as a deposit under *Cohen* and *New York Life* to require the IRS to make a timely assessment, but at the same time as a payment to shorten the period within which the IRS must act.  Taxpayer's attempt to classify a remittance as both a payment and a deposit for the same purpose (statute of limitations) does not fit within the Federal Circuit's framework.

In addition, this alternative argument merely restates taxpayer's primary argument.  It assumes that taxpayer's deposit converted into a payment on January 28, 2005.  *See e.g.* doc. #50-2 at 48.  But conversion either did or did not occur.  Taxpayer has two options - to argue that conversion occurred under the old rules (*New York Life* and *Cohen*) or to argue that it occurred under the new rules (section 6603 and Revenue Procedure 2005-18).  But taxpayer's alternative argument pushes aside the old, to reargue for conversion under the new.  While we agree that the

- 29 -

new rules supplanted the old, we have explained that a pre-assessment conversion of deposit into

payment did not occur under the new.  In the absence of a conversion, the remittance is not "paid

as a tax" or "paid . . . in respect of a tax," within the meaning of section 6213(b)(4).  The

alternative argument thus stands or falls on the same basis as the primary one.

## VI.    Tax Year 1998

Our opening brief (doc. #48 at 11) explained that the entire assessment for 1998 was

attributable to a carryback and therefore timely.  Taxpayer's claim that a portion of it was not

attributable to a carryback arises from an erroneous reading of the notice of deficiency.  Properly

read, it demonstrates that the ground to assess any deficiency for 1998 was the disallowance of a

carryback from 2001.  *See* def.'s resp. to pls.' prop. revision to def.'s prop. find. 19 (filed today).

## VII.   Conclusion

For one or both of the two independent grounds detailed in our opening brief and above,

the Court should enter summary judgment in favor of defendant on taxpayers' untimely

assessment claims.

Respectfully submitted,

s/Bart D. Jeffress                              JOHN A. DiCICCO
BART D. JEFFRESS                           Acting Assistant Attorney General
Attorney of Record                            STEVEN I. FRAHM
U.S. Department of Justice                  Chief, Court of Federal Claims Section
Tax Division
Court of Federal Claims Section          s/Steven I. Frahm
Post Office Box 26                            Of Counsel
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6496
(202) 514-9440 (fax)                         Attorneys for Defendant

December 23, 2009

Appendix C: Excerpts from The Revenue Act of 1926 (ch. 27, 44 Stat. 9) and
The Revenue Act of 1928 (ch. 852, 45 Stat. 791)

## Revenue Act of 1926 (ch. 27, 44 Stat. 9):

PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION OF TAX

SEC. 277. (a) Except as provided in section 278–

(1) The amount of income taxes imposed by this Act shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

(2) The amount of income, excess-profits, and war-profits taxes imposed by the Revenue Act of 1921, and by such Act as amended, for the taxable year 1921 and succeeding taxable years, and the amount of income taxes imposed by the Revenue Act of 1924, shall be assessed within four years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

(3) The amount of income, excess-profits, and war-profits taxes imposed by the Act entitled "An Act to provide revenue, equalize duties, and encourage the industries of the United States, and for other purposes," approved August 5, 1909, the Act entitled "An Act to reduce tariff duties and to provide revenue for the Government, and for other purposes," approved October 3, 1913, the Revenue Act of 1916, the Revenue Act of 1917, the Revenue Act of 1918, and by any such Act as amended, shall be assessed within five years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

(4) In the case of income received during the lifetime of a decedent, the tax shall be assessed, and any proceeding in court without assessment for the collection of such tax shall be begun, within one year after written request therefor (filed after the return is made) by the executor, administrator, or other fiduciary representing the estate of such decedent, but not after the expiration of the period prescribed for the assessment of the tax in paragraph (1), (2), or (3) of this subdivision.

(5) If a corporation makes no return of the tax imposed by this title, but each of the shareholders includes in his return his distributive share of the net income of the corporation, then the tax of the corporation shall be assessed within four years after the last date on which any such shareholder's return was filed.  Nothing in section 283 shall be construed as making the provisions of this paragraph applicable to any tax imposed by a prior Act of Congress.

(b) The running of the statute of limitations provided in this section or in section 278 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under subdivision (a) of section 274) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court, and for 60 days thereafter.

SEC. 278. . . .

(d) Where the assessment of any income, excess-profits, or war-profits tax imposed by this title or by prior Act of Congress has been made (whether before or after the enactment of

- 1 -

this Act) within the statutory period of limitation properly applicable thereto, such tax may be collected by distraint or by a proceeding in court (begun before or after the enactment of this Act), but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer.

## Revenue Act of 1928 (ch. 852, 45 Stat. 791):

### SEC. 275.  PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION.

Except as provided in section 276–

**(a) General rule.–**The amount of income taxes imposed by this title shall be assessed within two years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period.

. . .

### SEC. 276 SAME–EXCEPTIONS.

. . .

**(c) Collection after assessment.–**Where the assessment of any income tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collection by distraint or by a proceeding in court, but only if begun (1) within six years after the assessment of the tax, or (2) prior to the expiration of any period for collection agreed upon in writing by the Commissioner and the taxpayer before the expiration of such six-year period. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.