IN THE UNITED STATES COURT OF FEDERAL CLAIMS

_____

NO. 1:07-cv-00006-FMA
(Consolidated with Nos.
07-706, 08-135, and 08-605)
(Judge Francis M. Allegra)


PRINCIPAL LIFE INSURANCE COMPANY AND SUBSIDIARIES,

                                                            Plaintiff,


v.


THE UNITED STATES,

                                                            Defendant.


_____


**PLAINTIFF'S BRIEF IN REPLY
TO DEFENDANT'S BRIEF IN RESPONSE TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

_____


Bruce Graves
Brown, Winick, Graves, Gross,
Baskerville and Schoenebaum, P.L.C.
Suite 2000, Ruan Center
666 Grand Avenue
Des Moines, Iowa 50309
Telephone: 515/242-2403
Fax: 515/283-0231

ATTORNEY FOR PLAINTIFF

# TABLE OF CONTENTS

**Page**

Table of Authorities.................................................................................ii

Argument ............................................................................................1

I.   PRINCIPAL'S PAYMENT PRECEDING THE UNTIMELY
     ASSESSMENT OF THE ADDITIONAL TAX ATTRIBUTABLE
     TO NON-CARRYBACK ISSUES IN 1999 AND 2000 IS AN
     OVERPAYMENT, REFUND OF WHICH IS NOW REQUIRED.........1

     A.   The Defendant's Contemporaneous Litigating Positions
          Are Inconsistent................................................................1

     B.   The Revenue Act of 1926.................................................3

     C.   Section 6401's Plain Meaning Makes A Payment Assessed
          After Expiration Of The Statute Of Limitations An
          "Overpayment"..................................................................4

     D.   There Is No Need For Legislative History Or Strict
          Construction ....................................................................5

     E.   Only A Timely Assessment Will Fix A Taxpayer's Liability
          For A Deficiency .............................................................7

     F.   "Intent to Contest" Is No Longer Relevant ...................10

     G.   There Was No Untimely Assessment For 1998.............13

     H.   The Service Cannot Close Its Eyes To A Payment Of
          The Tax .........................................................................13

     I.   Fairness Requires That Limitations Periods Should
          Be Applied To The Tax Collector Just As They Are
          To The Taxpayer. .........................................................17

     Conclusion ..........................................................................20

## TABLE OF AUTHORITIES

**Page**

**Cases:**

*Abbott Laboratories v. U.S.*, 573 F.2d 1327 (Fed. Cir. 2009) ........................................... 1

*Ackerman v. U.S.,* 104 AFTR2d 2009-5830 (D.C.D.C. 2009) ........................................ 12

*American Tobacco Co. v. Patterson,* 456 U.S. 63, 68 (1982) .......................................... 6

*Ardestani v. INS*, 502 U.S. 129 (1991) .............................................................................. 6

*Badaracco v. Comm'r*, 464 U.S. 386, 391-392 (1984) ................................................. 6, 7

*Baral v. U.S.,* 528 U.S. 431 (2000) ...................................................................... 7, 8, 19

*Bendheim v. Comm'r*, 214 F.2d 26 (2nd Cir. 1954) .......................................................... 9

*Borgan v. U.S.*, 884 F.2d 767 (4th Cir. 1989) ................................................................. 18

*Bufferd v. Comm'r*, 506 U.S. 523, 527 n.6 (1993) ................................................. 6, 7, 18

*Cidale v. U.S.*, 475 F.3d 685 (5th Cir. 2007) .................................................................. 16

*Cohen v. Comm'r*, 910 F.2d 422 (7th Cir. 1990) ........................................................... 15

*Cohen v. U.S.*, 995 F.2d 205 (Fed. Cir. 1993).............................................. 3, 8, 10, 11, 19

*Crompton & Knowles Loom Works v. White,* 65 F.2d 132 (1st Cir. 1933)........................ 3

*Deaton v. U.S.,* 440 F.3rd 223 (5th Cir. 2006)................................................................... 8

*Estate of Wailing v. Comm'r*, 373 F.2d 190 (3rd Cir. 1967) ........................................ 9-10

*Ford Motor Co. v. U.S.*, No. 08-12960, 2009 WL 2922875
   (E.D. Mich. Sept. 9, 2009) ........................................................ 1, 2, 3, 14, 16, 17

*Gitlitz v. Comm'r*, 531 U.S. 206 (2001) ........................................................................... 7

*Grapevine Imports, Ltd. v. U.S.,* 71 Fed. Cl. 324 (2006) ................................................. 6

*Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1 (2000).................... 6

*Jones v. Liberty Glass Co.*, 332 U.S. 524 (1948)................................................. 10, 18, 19

*Kornman & Associates, Inc. v. U.S.*, 527 F.3d 443 (5th Cir. 2008)................................16

*Leich & Co. v. U.S.*, I329 F.2d at 652 (Ct. Cl. 1964)......................................................8

*Lewis v. Reynolds*, 284 U.S. 281 (1932)...........................................................7, 8, 18

*Little People's School, Inc. v. U.S.*, 842 F.2d 570 (1st Cir. 1988)...................................18

*Lovett v. U.S.*, 81 F.3d 143 (Fed. Cir. 1996)............................................................18

*Matson Navigation Co. v. Comm'r*, 68 T.C. 847 (1977)..................................................15

 *N.Y. Life Ins. Co. v. U.S.,* 118 F.3d 1553 (Fed. Cir. 1997)..................................10, 11, 12

*Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, (1998)...............................................6

*Olmstead v. U.S.*, 277 U.S. 438 (1928) ...............................................................19

*Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997) .......................................................6

*Roschen v. Ward,* 279 U.S. 337 (1929) ................................................................6

*Rosenman v. U.S.*, 323 U.S. 661 (1945) ...............................................1, 7, 8, 9, 10, 11, 19

*Shore v. Comm'r*, 631 F.2d 624 (9th Cir. 1980) ....................................................15

*Smith v. Comm'r*, 63 T.C.M. (CCH) 3164 (1992) ........................................................16

*Stanley v. U.S.,* 140 F.3[rd] 1023 (Fed. Cir. 1998) ..................................................17

*Tank Truck Rentals, Inc. v. Comm'r*, 356 U.S. 30 (1958) ...............................................9

*Trapp v. Comm'r*, 39 T.C.M. (CCH) 1085 (1980)........................................................16

*U.S. v. Clintwood Elkhorn Mining Co.,* 128 S.Ct. 1511 (2008)..........................................12

*U.S. v. Dalm*, 494 U.S. 596 (1990)...................................................................18

*U.S. v. Galletti,* 541 U.S. 114 (2004). ..............................................................19

*U.S. v. Mead Corp.*, 533 U.S. 218 (2001) ............................................................17

*U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989)..........................................5

*Union Carbide v. Comm'r*, 110 T.C. 375 (1998).........................................................1

*VanCanagan v. U.S.,* 231 F.3d 1349 (Fed. Cir. 2000.....................................................11

*Vons Companies, Inc. v. U.S.*, 51 Fed. Cl. 1 (2001)...............................................16-17

*Wachovia Bank, N.A. v. U.S.*, 455 F.3d 1261 (11th Cir. 2006) .........................18

*Welch v. Helvering*, 290 U.S. 111 (1933)...............................................................18

*Young & Rubicam, Inc. v. U.S.*, 410 F2d 1233 (Ct.Cl. 1969).........................18

**Statutes:**

Internal Revenue Act of 1926

§ 277.......................................................................................................3

§ 277(a)(3)..............................................................................................3

§ 278.......................................................................................................3

§ 278(d)...................................................................................................4

Internal Revenue Code of 1986, 26 U.S.C.:

§ 1 ......................................................................................................9, 10

§ 1(a)......................................................................................................9

§ 11 ......................................................................................................10

§ 11(a)....................................................................................................9

§ 11(b)....................................................................................................9

§ 6151(a) ...........................................................................................9, 10

§ 6201(a)...............................................................................................19

§ 6203................................................................................................9, 10

§ 6211(a)(1)(B)......................................................................................8, 9

§ 6213(b)(4).........................................................7, 8, 13, 17, 18, 19

§ 6401.............................................................................................4, 13

§ 6401(a) ..............................................................................................4, 5, 6, 7, 10, 19

§ 6401(c) ..................................................................................................................10, 19

§ 6402(a) ............................................................................................................10, 12, 19

§ 6501(a) ....................................................................................................................6, 8, 18

§ 6501(c) ........................................................................................................................7

§ 6501(h) ......................................................................................................................13

§ 6503(a)(1) ..................................................................................................................7

§ 6601 ..........................................................................................................................18

§ 6603..................................................................................................................8, 11, 12, 14

§ 6611 ..........................................................................................................................18

§ 6851(a) ......................................................................................................................10

§ 7805(b)(8) ................................................................................................................14

**Treasury Regulations:**

§ 601.103(c)(3) ..........................................................................................................12

§ 601.601 ....................................................................................................................15

**Other:**

H.R. Rep. No. 2 70th Cong., 1st Sess...............................................................................5

H.R. Rep. No. 108-548, pt. 1, at 305 (2004)..................................................................11

Merriam-Webster's Collegiate Dictionary, 11th Ed., 2004.............................................4

Rev. Proc. 55-1, 1955-1 C.B. 897 (*superseded*) .............................................................14

Rev. Proc. 68-44, 1968-2 C.B. 594 (*superseded*) ....................................................14-15

Rev. Proc. 72-1, 1972-1 C.B. 693 (*superseded*) ...........................................................15

Rev. Proc. 78-24, 1978-2 C.B. 503 (*superseded*) ...........................................................15

Rev. Proc. 84-58, 1984-2 C.B. 501 ...................................................... 12, 14, 16

Rev. Proc. 89-14, 1989-1 C.B. 814 ...............................................................15

Rev. Proc 2005-18, 2005-1 C.B. 798 ..................................12, 14, 15, 16, 17

S. Rep. No. 960, 70th Cong., 1st Sess. .........................................................5

Saltzman, IRS Practice And Procedure, 2nd Ed.
    (Warren, Gorham & Lamont), § 11.05[3][c] ......................................................8

Strunk & White, *The Elements of Style,* 4th. Ed., 2000......................................4

**ARGUMENT**

**I.  PRINCIPAL'S PAYMENT PRECEDING THE UNTIMELY ASSESSMENT OF  THE ADDITIONAL TAX ATTRIBUTABLE TO NON-CARRYBACK ISSUES IN 1999 AND 2000 IS AN OVERPAYMENT, REFUND OF WHICH IS NOW REQUIRED.**

**A.  The Defendant's Contemporaneous Litigating Positions Are Inconsistent.**

Attempting to wriggle out of its contemporaneous inconsistent position in the *Ford* case (*Ford Motor Co. v. U.S.*, No. 08-12960, 2009 WL 2922875, E.D. Mich., filed Sept. 9, 2009), the Defendant cites the Federal Circuit's decision in *Abbott Laboratories v. U.S.,* 573 F.3d 1327, 1332-33 (Fed. Cir. 2009) (Def.Rsp.Br. 23).   In *Abbott Labs,* the "other case" in which the government had taken the opposite position was a Tax Court case, *Union Carbide v. Comm'r,* 110 T.C. 375 (1998).   However, as the Defendant points out (Def. Rsp. 23), the *Union Carbide* case involved a different issue and a different sentence of the regulation being interpreted. Moreover, the government's comment  in *Union Carbide* concerning the sentence of the regulation involved in *Abbott Labs* was superfluous in *Union Carbide* and therefore could not be used in *Abbott Labs* to point out an inconsistent position of the government in *Union Carbide*. *Abbott Labs,* 573 F.3d at 1332.   In this case, in contrast, the government's position in the *Ford* case involves the very same issue that is involved here, namely, when a remittance constitutes a payment, and Justice Frankfurter's condemnation of such inconsistent positions in *Rosenman* could not be more appropriate.   Furthermore, the government's inconsistent positions are here being taken contemporaneously, rather than ten years apart as was the case in *Union Carbide* and *Abbott Labs.*  The fact that the government in its answer in *Ford* took the position that a taxpayer is permitted to designate a previously-remitted deposit as a payment and that IRS generally allows such designations should therefore be weighed in evaluating the Defendant's motive and

position in this case.

Furthermore, while the Defendant in this case states that the government in the *Ford* case "incorrectly" took that position in its answer, there is nothing in the government's brief in *Ford* in support of its motion for judgment on the pleadings that admits that that position in its answer was incorrect.  That conclusion is only advanced by the Defendant in this case.  While the Defendant here is correct that in its motion in *Ford* the government argues that there is no **requirement** that the IRS treat a previously designated deposit as a payment upon a request by the taxpayer, s*ee Mot.* (Doc. 28), No. 2:08-cv-12960-PJD-MKM (E.D. Mich.), the following statements by the government in its brief on the motion in *Ford,* which confirm the testimony of Plaintiff's expert, Mr. Boucher, in this case, should also be considered:

> The IRS has also converted a deposit **when a taxpayer requests** that the deposit be converted to a payment . . . .  *Id.* at 2, n.1. (Emphasis added.)

> A remittance that is a deposit can only be used to satisfy a tax liability **if it is first converted and applied** as a payment.  *Id.* at 2, n.2.  (Emphasis added.)

> The United States contends that the law is clear that when a deposit is converted to a payment, all of the consequences of making a payment attach as of the date of conversion, and if it turns out that the payment was an overpayment, then **interest begins to run on the payment from the date of conversion.**  *Id.* at 5.  (Emphasis added.)

> The IRS does, however, generally grant such requests to treat deposits as payments, and, **consistent with Rev. Proc. 84-58 § 5.05**, will treat the funds as a payment of tax from the date the request is made.  In essence, the IRS treats the deposit as constructively returned to the taxpayer on the date of conversion and then paid by the taxpayer to discharge the liability.  If the IRS did not grant such requests, the taxpayer would have to request return of the deposit on then re-remit the funds as a payment, **wasting both taxpayer and government resources.**  *Id.* at 15. (Emphasis added.)

Comparing the positions of the government in the *Ford* case and in this case, the upshot is that it is the Defendant's position that the IRS may or may not honor a request that a deposit be applied as a payment, according to its whim,[1] or, as Justice Frankfurter feared, according to which treatment favored its position at the time. Such a conclusion would surely fly in the face of a policy of consistency in the administration of the tax laws and the concept of equal application of the law to the tax collector and taxpayers alike. *Cohen v. U.S.,* 995 F.2d 205, 209 (Fed. Cir. 1993).

## B.   The Revenue Act of 1926.

In its main brief, Principal cited several reasons why the Defendant's main pillar of support, *Crompton & Knowles Loom Works v. White,* 65 F.2d 132 (1st Cir. 1933) has crumbled. Then Principal adds another reason why *Crompton's* analysis should be rejected, citing a distinction between the statutory framework that existed when *Crompton* was decided versus today, stating that today there are separate statutes of limitation requiring assessment to be made within 3 years and collection within 10 years whereas in *Crompton's* time, under Section 277 of the Revenue Act of 1926, there was only one 5-year limitation period that applied to both assessment and collection. (Pl. Br. 15) The Defendant correctly points out in its response that Principal's analysis of the Revenue Act of 1926 was incomplete because it failed to take into account Section 278 of that Act. (Def. Rsp. 10) Reading Sections 277 and 278 together, it is apparent that under Section 277(a)(3) the tax was required to be assessed within 5 years and if assessment was not made within that time, the tax could not be collected after the 5-year period

---

[1] Noteworthy in this regard is the fact that the IRS's local supervisor for large cases acknowledged Principal's intent to convert its deposit to a payment and attempted to confirm that result for the taxpayer, and it is only in this litigation that IRS now argues that a taxpayer cannot take such action. See PPFUF 24, 32-35.

expired, but under Section 278(d), where a timely assessment had been made within such 5-years, collection could take place up to 6 years after the date of assessment.  But of course in this case we are not dealing with a timely assessment and therefore the Defendant's distinction is not germane.

## C.   Section 6401's Plain Meaning Makes A Payment Assessed After Expiration Of The Statute Of Limitations An "Overpayment."

In an ill-conceived effort to distort the plain meaning of Section 6401(a)'s disjunctive connector, which defines an "overpayment" as "the payment of any . . . tax which is assessed or collected after the expiration of the period of limitation properly applicable thereto," the Defendant invokes the rules of grammar.  It claims that "payment of any . . . tax" means "payment of tax **in response to** an untimely assessment" in contrast to payment of an unassessed tax (Def. Rsp. 11; emphasis added) because, in Defendant's view, the phrase "tax which is assessed . . . after the expiration of the period of limitation" is the direct object of the action word "payment."

Defendant's grammatical analysis is wrong, however, because, as Webster's confirms,[2] the word "payment" in Section 6401(a)'s single sentence is a noun, not a verb, and nouns do not have direct objects.  Instead, nouns themselves are often the direct object of a transitive verb. The transitive verb in Section 6401(a)'s sentence is "includes," and all that follows that verb in the sentence, including the noun "payment," is the direct object of it.[3]  Consequently, the phrase "tax which is assessed . . . after the expiration of the period of limitation" is not and cannot be the direct object of the noun "payment."  Section 6401(a) is not describing any action of paying tax "in response to" an assessment that is untimely; instead, it is defining exactly what an

_____

[2] Merriam-Webster's Collegiate Dictionary, 11th Ed., 2004.
[3] Strunk & White, *The Elements of Style,* 4th Ed., 2000, pp. 82, 83, 85.

"overpayment" is, and the definition includes a "payment of . . . tax which is **assessed** . . . **after expiration of the statute of limitations.**" (Emphasis added.)   The Defendant's reading of Section 6401(a) is, therefore, ungrammatical, unnatural, and wrong.  *See, e.g., U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 242 (1989).

**D.   There Is No Need For Legislative History Or Strict Construction.**

Defendant again places too much reliance on ancient legislative history (Def. Rsp. 12). Although the "pursuant to" language in the Congressional committee reports cited by Defendant might be considered to pose an obstacle to Principal's position, it is at least arguable that the 1928 committee reports contain an ambiguity.   The sentence quoted by Defendant states, "Section 607 [the predecessor of Section 6401(a)] provides that regardless of the correct tax liability any payment shall be an overpayment if made pursuant to an assessment after the expiration of the period of limitation on assessment (no assessment having been made within such period) . . . ."   That sentence can be read to refer to "an assessment [made] after the expiration of the period of limitations on assessment," which Plaintiffs' submit is the intended and correct reading, or it can be read to refer to a "payment . . . made . . .after the expiration of the period of limitation on assessment." *See* H.R. Rep. No. 2 70th Cong., 1st Sess.; S. Rep. No. 960, 70th Cong., 1st Sess.  This ambiguity seems even admitted by the Defendant when it states that "[b]ecause the statute can be read . . . ", thus implying that the statute can also be read another way.[4]

---

[4] It is also significant that the legislative history of Section 6401(a)'s predecessor says that an overpayment shall exist in the circumstances described "regardless of the correct tax liability." *See* H.R. Rep. No. 2 70th Cong., 1st Sess.; S. Rep. No. 960, 70th Cong., 1st Sess.  This effectively repudiates the argument made by Defendant in its main brief (p.12, 16-17) that there can be no overpayment unless the taxpayer demonstrates that it is entitled to a refund "on the merits."

In any event, the Defendant's argument regarding the legislative history ultimately fails because, despite the ambiguity of the legislative history, the statute, Section 6401(a) itself, is not ambiguous.  In these circumstances, this case falls squarely within the language of the Supreme Court in *Ardestani v. INS*, 502 U.S. 129 (1991).   There the Court held that, although the legislative history was inconclusive, the meaning of the statute was plain.  Accordingly,

> The "strong presumption" that the plain language of the statute expresses congressional intent is rebutted only in "rare and exceptional circumstances," . . . (citation omitted), when a contrary legislative intent is clearly expressed. . . . (citations omitted)  In this case, the legislative history cannot overcome the strong presumption "that the legislative purpose is expressed by the ordinary meaning of the words used" (quoting *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68 (1982)).

*Ardestani,* 502 U.S. at 135-136.   Absent that rare and exceptional circumstance, "we are bound to take Congress at its word."  *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 427 (1998).   *See also, Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1 (2000); *Robinson v. Shell Oil Co.,* 519 U.S. 337 (1997); *Grapevine Imports, Ltd. v. U.S.,* 71 Fed. Cl. 324 (2006).[5]

Citing *Bufferd v. Comm'r*, 506 U.S. 523, 527 n.6 (1993), and *Badaracco v. Comm'r*, 464 U.S. 386, 391-392 (1984), the Defendant also seeks refuge in the maxim that statutes of limitation on assessment are to be strictly construed in its favor.  (Def. Rsp. 13).  It is true that by footnote in *Bufferd* the Supreme Court cited the language in *Badaracco* that statutes of limitation are to be strictly construed in favor of the government, but in *Bufferd* the Court indicated resort to that maxim was only necessary where the statute was ambiguous and no ambiguity was present in that case because the language of Section 6501(a) was "plain."  *Bufferd, supra* at 527, 533.  Likewise, in *Badaracco* there was no need to resort to strict construction because the

---

[5] Perhaps Justice Holmes said it best: "[T]here is no canon against using common sense in construing laws as saying what they obviously mean."  *Roschen v. Ward,* 279 U.S. 337, 339 (1929).

language of the statute, Section 6501(c), was "explicit," "unambiguous," and "plain." *Badaracco, supra* at 392, 393, 396.  The same is true with respect to Section 6401(a), and, indeed, to the other statutes involved in this case as well (Sections 6503(a)(1), 6213(b)(4)). Moreover, in *Badaracco* the Supreme Court refused to elevate the wrongdoer over the blameless and, similarly, there is no reason here to elevate the dilatory over the conscientious.  *Id.* at 396.

Finally, even if strict construction in favor of the government had been warranted in cases like *Bufferd* and *Badaracco* involving the mere passage of time, this case is different in that it involves an affirmative act by the taxpayer, i.e., payment of the tax during the period when assessment was prohibited, that should have placed the IRS on notice that the statute of limitations was running and that it had 62 more days to perform its statutory duty to complete the assessment.  Endorsement of the Defendant's application of the principles of strict construction in this case would merely confer the blessing of the court upon a clear failure of the bureaucracy.[6]

## E.   Only A Timely Assessment Will Fix A Taxpayer's Liability For A Deficiency.

The Defendant claims Principal's contention that, under *Rosenman,* assessment is a prerequisite to liability is a "legal error," "false premise," and misstatement.  (Def. Rsp. 2-5)  It argues that under *Rosenman, Lewis,* and *Baral,* liability and payment are independent of and therefore can exist before assessment.  (Def. Rsp. 5)  Plaintiff agrees with Defendant that payment can exist before assessment, and maintains that payment in this case was made on January 28, 2005, not, as Defendant contends, on May 27, 2005, when the assessment was made.

---

[6] In *Gitlitz v. Comm'r*, 531 U.S. 206 (2001), the Supreme Court addressed the concern expressed by several lower courts that adoption of the taxpayer's position would result in a windfall.  The Court rejected that argument, stating, "[b]ecause the Code's plain text permits the taxpayers here to receive these benefits, we need not address this policy concern."  *Id.* at 220.

*Baral v. U.S.,* 528 U.S. 431, 437 ("[T]he Code directly contradicts the notion that payment may not occur before assessment," citing §6213(b)(4)). *See also, Deaton v. U.S.,* 440 F.3rd 223, 229-230 (5th Cir. 2006); *Cohen v. U.S.,* 995 F.2d 205, 208 (Fed. Cir. 1993) (referring to *Leich & Co. v. U.S.,* 1329 F.2d at 652 (Ct. Cl. 1964): "The court rejected the position that assessment is a prerequisite for 'payment.'").

But it is Defendant who erroneously denies the import of *Rosenman's* explicit language that "[n]ot until then [when the assessment was made] was there such a claim as could start the time running for presenting the claim [for refund]" and "the tax obligation did not become defined until" the assessment was made.  *Rosenman,* 323 U.S. at 661, 662.[7]  *Lewis v. Reynolds,* an offset case, was decided 13 years before *Rosenman* and therefore could not possibly have interpreted or modified this holding.  And while the Court in *Baral* in 2000 held that payment can occur before assessment, it found it unnecessary to address the taxpayer's argument that the liability for the tax did not become definitively fixed until the assessment was made.  Thus, *Baral* left this tenet of *Rosenman* undisturbed.

Similarly, the Defendant's citations to Sections 6211(a)(1)(B) and 6501(a) (Def. Rsp. 4) are unavailing.  If anything, they prove Plaintiff's point that liability for a deficiency beyond the tax shown on the return does not exist before assessment.  Section 6501(a), the general 3-year statute of limitations provision, states that "no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period."  Arguably, the reason this provision prohibits a suit for the collection of tax where no timely assessment has been made

---

[7] See Saltzman, IRS Practice And Procedure, 2nd Ed. (Warren, Gorham & Lamont), § 11.05[3][c] for a detailed pre-*Baral* discussion of *Rosenman* that highlights the many conflicts among the courts on these issues.  As discussed in the next section, with the advent of Section 6603 this Court may now relegate such conflicting precedents to history and chart a new path that harmonizes the various statutory provisions.

is because there is no liability.  Section 6211(a)(1)(B) does not support Defendant's argument either, because in defining a "deficiency" it merely subtracts "the amounts previously assessed (or collected without assessment)."  Plaintiff acknowledges that an amount paid by a taxpayer before assessment is an amount collected before assessment by the Service.  *See Bendheim v. Comm'r*, 214 F.2d 26 (2nd Cir. 1954).  But since a "deficiency," as in "notice of deficiency" in Section 6212, is different from a fixed liability, Section 6211(a)(1)(B) does not mean that a liability for the tax necessarily exists either before or after it is so paid or collected.  Under *Rosenman,* it takes a proper assessment to turn the payment or collection of a deficiency into satisfaction of a liability.

The statutory landscape involving assessment and collection of additional taxes beyond that shown on the return is in perfect harmony with this conclusion that no liability can exist for such additional tax, or "deficiency," until a valid assessment is made.  Before liability for such additional tax can be fixed through an assessment, specific procedures are required through which a taxpayer is given the right to contest the proposed liability in the Tax Court.  And, as noted above, no collection activities may be commenced until that liability for the additional tax is established through a valid assessment.  Consistency between the concepts of deficiency, assessment, and collection, on the one hand, and liability on the other, is evident throughout the statutory scheme.

Nor do Sections 1, 6151(a), or 6203 support the Defendant's position.  (Def. Rsp. 4)  Section 1(a) (and, in this case, Sections 11(a) and (b)) merely imposes the income tax at various rates on "taxable income," and there then follow thousands of provisions prescribing how taxable income is determined (e.g., gross income less allowable deductions).  *Tank Truck Rentals, Inc. v. Comm'r*, 356 U.S. 30, 33-34 (1958); *Estate of Wailing v. Comm'r*, 373 F.2d 190, 193 (3rd Cir.

1967).  Nothing in either Section 1 or Section 11 suggests that a taxpayer immediately incurs a liability for tax upon receipt of an item of income.  In its main brief (Pl.Br. 21, n.12), Plaintiff acknowledged that liability for the **tax shown on the return** exists without assessment under Section 6151(a), just as liability may exist upon jeopardy termination of a taxable year under Section 6851(a), but these provisions must be regarded as specific exceptions to the general rule under *Rosenman* that liability for an alleged tax deficiency does not exist prior to assessment. And Section 6203's statement that "the assessment shall be made by recording the liability of the taxpayer . . . ." does not preclude the conclusion that it is precisely such recording that gives rise to that liability.[8]

Even without the *Rosenman* doctrine, however, the Defendant's arguments fail as a result of the plain, disjunctive definition of an "overpayment" in Section 6401(a), the encompassing admonition of Section 6401(c), and the injunction of the Supreme Court in the *Jones* case. There, the Court held that "overpayment" must remain generic, not be made into a term of art, and that it includes claims due to illegal assessments.  *Id.* at 532.  *Jones* also holds that Section 6402(a) mandates that any such overpayment be refunded to the taxpayer.  Plaintiffs' main brief contains detailed discussions of these aspects of the law and they will not be repeated here.

## F.  "Intent to Contest" Is No Longer Relevant.

Principal's main brief cited three reasons why the Defendant's argument concerning "intent to contest" should be rejected.  It also pointed out that, in any event, "intent to contest" is

---

[8] The Defendant also argues that Plaintiffs contend that "all pre-assessment remittances are deposits as a matter of law."  (Def. Rsp. 4).  In view of the Federal Circuit's decisions in *Cohen* and *N. Y. Life,* Plaintiffs' alternative argument (Pl.Br. 46) addresses that possibility.  However, Plaintiffs' primary position is that the January 28, 2005 letter of designation applied the previous deposit to and became a payment of the tax as of that date, prior to the late assessment that occurred on May 27, 2005, and as a result of that late assessment, Principal's payment became an "overpayment" within the meaning of Section 6401(a).

only one of five factors considered by the courts in determining whether a remittance should be treated as a deposit or a payment.  Nevertheless, the Defendant in its response (Def. Rsp. 24, 28) argues that Principal's undisputed intent to file a claim and sue for refund of a portion of its tax establishes an "intent to contest" which, it claims, makes it impossible for Principal's January 28, 2005 letter of designation to have converted its earlier deposit into a payment and that remittance remained a "deposit as a matter of law" under the doctrines of *Cohen* and *N.Y. Life.*

As an additional and alternative reason why the Defendant's "intent to contest" argument should be disregarded, Principal maintains that it is no longer relevant. The "improved deposit system" brought about with the enactment of section 6603 in 2004 and referred to in H.R. Rep. No. 108-548, pt. 1, at 305 (2004)  **replaced** the deposit system that existed prior to that enactment, thereby rendering moot the "intent to contest" and "deposit as a matter of law" doctrines as expressed in *Cohen* and *N.Y. Life.*

As the Defendant admits in its opening brief (doc. #48 at 21), prior to the enactment of section 6603, "the Internal Revenue Code did not contain (or specifically authorize administrative promulgation of) rules governing the making, acceptance, and use of deposits." The Defendant goes on to point out that the rules governing deposits that developed through administrative practices and judicial decisions, such as *Cohen* and *N.Y. Life*, "have been superseded by the enactment of section 6603 . . ." and therefore such non-statutory rules "have no affect on whether taxpayer's deposit converted to a payment." Later in the same brief, the Defendant again acknowledges that "the case law on deposits beginning with and arising out of *Rosenman,* including the Federal Circuit's decisions in *Cohen, N.Y. Life,* and *VanCanagan,* has been superseded for deposits made after October 22, 2004," and the prior rules have been "abrogated." (doc #48 at 32-33, 35)  Therefore, because the intent to contest and deposit as a

matter of law doctrines are no longer relevant, this Court, in order to determine whether Principal's January 28 letter converted its previous deposit into a payment, must now analyze:  (i) Section 6603 itself, (ii) the facts surrounding Principal's initial remittance on January 13 (that Principal clearly designated as a deposit), (iii) Principal's letter of January 28 clearly requesting that its previous deposit be converted to a payment of the tax, (iv) the prerequisite under Section 6402(a) and Treas. Reg. § 601.103(c)(3) that the tax be paid before a claim for refund may be filed, and (v) the jurisdictional requirements of the Tucker Act.   That analysis will inevitably lead to the conclusion that Principal's deposit was converted to a payment by the January 28 letter.[9]

Moreover, it is also important to remember that the Supreme Court in *Clintwood Elkhorn Mining* nullified *N.Y. Life* to the extent the latter held that the Tucker Act permits a suit for recovery of taxes without the necessity of filing a claim for refund.  In these circumstances it is especially nonsensical to hold that a payment made for the express purpose of meeting the prerequisites for filing a claim for refund and a refund suit remains a deposit because the payor intended to proceed with that very course of action.   Treas. Reg. § 601.103(c)(3) (“**After payment of the tax** a taxpayer may . . . [file] a claim for refund . . . .”) (Emphasis added); *Ackerman v. U.S.,* 104 AFTR2d 2009-5830, 5834 (D.C.D.C. 2009) (“[T]he term ‘claim for refund’ requires that payment be made before a claim is filed.”)

---

[9] The Defendant practically concedes the issue in footnote 16 of its main brief (doc #48 at 31-32).  There it acknowledges that both Rev. Proc. 84-58 and Rev. Proc. 2005-18 permit a taxpayer to apply a deposit to payment of tax.  While the Defendant urges the Court to restrict that ability to a deposit made during an examination but before issuance of a notice of deficiency, the reasons it advances for such a limitation are inadequate to support a distinction between application of a deposit to the tax in those circumstances and application of it in the circumstances of this case.

Finally, if intent to file a claim for refund precludes the January 28 designation letter from being a payment of the tax, then, as pointed out in Plaintiff's alternative argument (Pl. Br. 47), Principal's January 13 deposit, while not a payment **of the tax**, was nevertheless a **payment in respect of a tax** within the meaning of Section 6213(b)(4).  Accordingly, the Defendant's assessment on May 27, 2005 was still untimely, and the payment of the tax which, according to the Defendant, occurred on that date was an overpayment within the meaning of Section 6401 that Principal is now entitled to have refunded.

## G.   There Was No Untimely Assessment For 1998.

The explanation provided by Defendant in its response to Plaintiffs' proposed revision of Defendant's proposed finding of fact 19 (doc. #49, p. 134), has enabled Plaintiffs to determine for the first time that the entire amount of the deficiency assessed for the taxable year 1998 pursuant to the notice of deficiency was attributable to the disallowance of carryback items from 2001.  Accordingly, under Section 6501(h), the May 27, 2005 assessment was timely with respect to 1998.  Therefore, the untimely assessment issue now before the Court on the motion and cross-motion for partial summary judgment relates only to the portions of the assessments for 1999 and 2000 that are attributable to non-carryback issues arising in those years and the underpayment interest and penalties paid in connection therewith.[10]

## H.   The Service Cannot Close Its Eyes To A Payment Of The Tax.

"If it looks, walks, and quacks like a duck, it must be a duck," goes an old saying.  But, according to the Defendant, it cannot be a duck, i.e., a "payment," because Section 6.01 of

---

[10] The discovery process has also made it possible to narrow, both in scope and amount, the items in the notice of deficiency that Principal disputed when it filed its claims for refund and complaints in these consolidated cases.  Plaintiffs and Defendant are now in substantial agreement that $90 million represents their approximation of the amount of tax at issue on the untimely assessment controversy.  See Defendant's Response to PPFUF No. 53.3

Revenue Procedure 2005-18 does not allow it, and, although Revenue Procedure 84-58 (the revenue procedure in effect when Principal directed that the deposit be applied to payment of the tax) did not contain a counterpart of Section 6.01, that provision nevertheless applies because Revenue Procedure 2005-18 is retroactive.  (Def. Rsp. 15-18).

Section 6.01 of Revenue Procedure 2005-18 states in part that, "A deposit made pursuant to section 6603 is not subject to a claim for credit or refund as an overpayment until the deposit is applied by the Service as payment of an assessed tax of the taxpayer."   In the first place, before addressing  Defendant's retroactivity contention, Section 6.01's support for Defendant's position that the provision does not allow a taxpayer to apply a deposit in payment of the tax  is highly questionable.  Apart from the sentence quoted above, the entire remainder of Section 6, of which Section 6.01 is a part, is devoted to the procedure whereby a taxpayer may request a return of a deposit.  Consistent with the government's statement the *Ford* case (quoted on pp. 2-3) about how the IRS "generally" handles taxpayers' requests to treat deposits as payments, and its concern about wasting the resources of both the taxpayer and the government, nothing in Section 6.01 can reasonably be construed to prevent a taxpayer from requesting that its deposit be applied as a payment.

Defendant's argument that revenue procedures "are generally given retroactive effect" by virtue of Section 7805(b)(8) (Def. Rsp. 16) is simply wrong.  Section 7805(b)(8) by its terms applies to "**rulings,**" including "administrative **determinations . . . relating to the internal revenue laws . . . .**" , and a revenue procedure is neither a ruling nor a determination relating to the substantive law.  (Emphasis added) The Internal Revenue Service itself has long made this clear distinction between revenue procedures and revenue rulings, with only the latter reflecting interpretations of substantive law.  Rev. Proc. 55-1, 1955-1 C.B. 897 (*superseded)*; Rev. Proc.

68-44, 1968-2 C.B. 594 (*superseded*); Rev. Proc. 72-1, 1972-1 C.B. 693 (*superseded*); Rev.

Proc. 78-24, 1978-2 C.B. 503 (*superseded*);  Rev. Proc. 89-14, 1989-1 C.B. 814.

Defendant's argument that Revenue Procedure 2005-18 and its Section 6.01 retroactively

apply to Principal's January 13 remittance and its January 28 designation is also wrong.

Defendant cites as authority *Shore v. Comm'r*, 631 F.2d 624, 628 (9th Cir. 1980), which

erroneously volunteered in a footnote that revenue procedures, just like revenue rulings, are

normally given retroactive effect.  But the Ninth Circuit then disclaimed any relevance of that

retroactivity in the case at bar because the revenue procedure that was in effect at the relevant

time supported its holding.  The Tax Court, on the other hand, has held that revenue procedures

generally do not have retroactive effect and that this has been the intent of the Service itself since

1967.  *Matson Navigation Co. v. Comm'r*, 68 T.C. 847, 853-854 (1977).

Defendant also cites *Cohen v. Comm'r*, 910 F.2d 422, 427-428 (7th Cir. 1990), which

held that, contrary to the Internal Revenue Service's own classification of its publications, the

revenue procedure at issue "interpreted the law" and was therefore retroactive.  This decision

directly contradicts Treas. Reg. § 601.601, which even the Seventh Circuit recognized.  Like the

post-1954 revenue procedures referred to above, that regulation states that a revenue ruling is "an

official interpretation by the Service" (subparagraph (d)(2)(i)(a)) "involving substantive tax law"

(subparagraph (d)(2)(v)(a)) upon which "[t]axpayers generally may rely" (subparagraph

(d)(2)(v)(e) and which "apply retroactively" (subparagraph (d)(2)(v)(c)).  In contrast, according

to the same regulation, a revenue procedure is "a statement of procedure that affects the rights

and duties of taxpayers" or "information that . . . should be a matter of public knowledge"

(subparagraph (d)(2)(i)(b)) and which "usually reflect the contents of internal management

documents . . . [and] are also published to announce practices and procedures for guidance of the

15

public" (subparagraph (d)(2)(vi).  Nothing is said in the regulation about a revenue procedure being retroactive.  Even Revenue Procedure 2005-18 itself illustrates this distinction by stating, in Section 10, that it is effective as of the date of its issuance, March 28, 2005.  And Section 9 of Rev. Proc. 2005-18 makes it clear that the provisions of its predecessor, Rev. Proc. 84-58, remained effective until March 28, 2005.

The Defendant also argues that even under Rev. Proc. 84-58 Principal was "prohibited" from applying its deposit to payment of the tax, penalties, and interest.  Once again putting aside the glaring inconsistency with the portions of the government's brief in the *Ford* case quoted on page 2, *supra*, Rev. Proc. 84-58 contains no such prohibition.[11]  Section 6.04 of Rev. Proc. 84-58 merely says that "[t]axpayers may not make designations of remittances treated as **deposits in the nature of a cash bond,**" which means that a taxpayer may not allocate a cash bond deposit between taxes, interest, or penalties, and Principal made no attempt to do so when it made its deposit on January 13, 2005.  (Emphasis added.)  And while the next sentence permits a taxpayer to allocate a payment to taxes, interest, or penalties once a deposit has been applied as a payment following an assessment, nothing in Rev. Proc. 84-58, or in Section 6.01 of Rev. Proc. 2005-18 for that matter, indicates that is the **only** time a deposit may be applied to a payment.  Moreover, even if Revenue Procedure 84-58 contained such a "prohibition," it would not have the force of law.  This Court is well aware that revenue rulings do not have the force of law, *Vons*

---

[11] Even two IRS employees believed that Rev. Proc. 84-58 entitled them to convert a cash bond remittance into a payment of the tax by a letter of designation, and the Tax Court agreed.  *Smith v. Comm'r*, 63 T.C.M. (CCH) 3164 (1992).  While Defendant is correct (Def. Rsp. 18, n.7) that Tax Court memorandum opinions are not "controlling precedent," they nevertheless constitute considered legal authority.  *Kornman & Associates, Inc. v. U.S.*, 527 F.3d 443, 460 n.16 (5th Cir. 2008) ("Although tax court memorandum opinions have no precedential value in tax court, we have previously relied upon them, which indicates that they hold some persuasive value" citing *Cidale v. U.S.*, 475 F.3d 685 (5th Cir. 2007)); *Trapp v. Comm'r*, 39 T.C.M. (CCH) 1085 (1980) ("Although memorandum opinions of this Court are not relied upon as precedent, we seek to treat taxpayers consistently.").

*Companies, Inc. v. U.S.*, 51 Fed. Cl. 1 (2001), citing *U.S. v. Mead Corp.,* 533 U.S. 218 (2001), and certainly revenue procedures can rise to no higher status.

Against this background, the Defendant's argument that Principal's application of its deposit to payment of the tax on January 28, 2005 could not be a payment within the meaning of Section 6213(b)(4) because neither Rev. Proc. 2005-18 nor Rev. Proc. 84-58 allowed for it is without merit. As in *Stanley v. U.S.,* 140 F.3rd 1023, 1029 (Fed. Cir. 1998), the Defendant's complaint that "there is no provision in the tax laws for what [taxpayer] did" should be rejected,[12] not the least because it portrays the Service as having a skewed view of practical reality.[13] It is understandable that under the deficient IRS internal procedures then in effect, Principal's designation of its deposit to a payment on January 28, 2005, "was not recognized by and caused confusion within the IRS," as the Defendant admits (Def. Rsp. 19), but "the IRS cannot entirely absolve itself from responsibility for the outcome." *Stanley,* 140 F.3rd at 1030. As a result of closing its eyes to Principal's application of its deposit to a payment on January 28, 2005, it must shoulder responsibility for the outcome in this case.

## I.   Fairness Requires That Limitations Periods Should Be Applied To The Tax Collector Just As They Are To The Taxpayer.

When it comes to tax cases, it is understandable that taxpayers often feel the deck is stacked against them. In the interest of the fisc, the Internal Revenue Code is replete with

---

[12] In *Stanley,* the Federal Circuit not only rejected the government's argument that "there is no provision in the tax laws for what [taxpayer] did." It also held that there was no provision in the tax law for what the government did. *See Stanley,* 140 F.3d at 1029. As a result, it awarded the taxpayer a windfall of some $600,000, stating "sometimes the law favors the taxpayer, as here, other times it favors the Government." *Id.* at 1030.

[13] Again, the difference between the Defendant's position in this case and the government's position in the *Ford* case is striking, for in *Ford* it acknowledges practical reality by treating a deposit as "constructively" returned to the taxpayer and then repaid to the government in order to avoid "wasting both taxpayer and government resources." *See Mot.,* p. 15 (Doc. 28), No. 2:08-cv-12960-PJD-MKM (E.D. Mich.)

provisions that favor the government, such as the differential between the interest rate on underpayments versus overpayments prescribed by Sections 6601 and 6611. Similarly, the case law favors the government with such maxims as the presumption that the Commissioner's determinations are correct, *Welch v. Helvering,* 290 U.S. 111, 115 (1933); *Young & Rubicam, Inc. v. U.S.,* 410 F.2d 1233, 1238 (Ct.Cl. 1969), and, where ambiguity exists, statutes of limitations are to be strictly construed in favor of the government. *Bufferd v. Comm'r,* 506 U.S. 523, 527. But this is not such a case where the government is given a clear advantage over the taxpayer by either statute or clear judicial precedent.

Taxpayers, in any attempt to recover a portion of taxes previously paid, are strictly held to a statute of limitation that defines the period in which they may file the required claim for refund. *U.S. v. Dalm,* 494 U.S. 596, 602 (1990); *Jones v. Liberty Glass Co.,* 332 U.S. 524, 534 (1948); *Lovett v. U.S.,* 81 F.3d 143, 145-146 (Fed. Cir. 1996). Nor are they permitted to excuse an untimely filing of a refund claim by proving that the Internal Revenue Service ("IRS") had knowledge before the statute of limitation expired that the refund was owed. *Borgan v. U.S.,* 884 F.2d 767, 770 (4th Cir. 1989). In such cases, even where it is acknowledged that the taxpayer would have been entitled to the refund had the claim been timely filed, the statute of limitation is strictly enforced.[14] *Id.; Wachovia Bank, N.A. v. U.S.,* 455 F.3d 1261 (11th Cir. 2006). *See also, Little People's School, Inc. v. U.S.,* 842 F.2d 570 (1st Cir. 1988).

There is nothing in Section 6501(a)'s statute of limitations on assessments, in Section 6213(b)(4)'s cutoff of the suspension of that statute of limitations, or in Section 6501(a)'s and (c)'s definition of "overpayment" that suggests that the government is not to be held to the same strict standard of compliance as taxpayers in this area. Consequently, the mandate of Section

---

[14] The taxpayer may have offset or mitigation remedies, just as the government did in *Lewis v. Reynolds*, 284 U.S. 281 (1932).

6201(a) that the Secretary of the Treasury assess all taxes "at the time and in the manner provided by law" necessarily includes the requirement that assessments of tax be completed in a timely manner under the Code.  In its contention that it is not sufficient "to show that, after taxpayer paid taxes within the assessment period, the IRS failed to make a timely assessment or to assess at all" (Def. Rsp. 5), the Defendant in this case seeks to ignore the precept of mutual fairness espoused by the Federal Circuit in *Cohen*[15] and to place the Internal Revenue Service above these laws.

In such circumstances, Justice Brandeis' dissent in *Olmstead v. U.S.,* 277 U.S. 438, 485 (1928) sounds a clear warning:

> Decency, security, and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen.  In a government of laws, existence of the government will be imperilled [sic] if it fails to observe the law scrupulously.  Our Government is the potent, omnipresent teacher.  For good or ill, it teaches the whole people by its example.

His warning emanates from the same principle of fundamental fairness that underlies Justice Frankfurter's admonition in *Rosenman* that transactions cannot be treated inconsistently, depending on which interpretation favors the government.  *Rosenman, 323 U.S.* at 663.

To hold the tax collector to the same standard as the taxpayer means in this case that the relevant statutes and cases should be interpreted accordingly.  Fortunately, in this case this does not require a great leap of faith, for the numerous reasons stated in Plaintiffs' main brief.  It simply means that Sections 6201(a), 6401(a) and (c), 6402(a), and 6213(b)(4) of the Code, and the Supreme Court's decisions in *Jones, Rosenman, Galletti, and Baral,* should be applied to the facts here to bar the IRS from collecting and retaining a payment not timely assessed as a tax

---

[15] *Cohen v. U.S.,* 995 F.2d at 209 (Fed. Cir. 1993) (". . . a belief on both sides that the rules should be clear and uniformly applied, that each party should abide by the rules, and that each should accept the consequences of its choice of action under those rules.").

due, just as a taxpayer is barred from collecting and receiving an overpayment where its claim for refund was not timely filed.

## CONCLUSION

For the reasons stated, and after oral argument as requested in Plaintiff's cross-motion, the Defendant's motion for summary judgment should be denied and Plaintiff's cross-motion for partial summary judgment should be granted on the ground that Plaintiff is entitled to judgment as a matter of law.  In the event the Court finds that Plaintiff is not entitled to judgment as a matter of law, Defendant's motion should be denied on the ground that there exists a dispute of one or more material facts, and in such case the untimely assessment issue should be included among the issues to be tried.

Respectfully submitted,

s/Bruce Graves

Dated:  February 26, 2010

_____
Bruce Graves
Brown, Winick, Graves, Gross,
Baskerville and Schoenebaum, PLC
666 Grand Avenue, Suite 2000
Des Moines, IA 50309-2510
Telephone: 515/242-2403
Facsimile: 515/323-8503
Email: *graves@brownwinick.com*

ATTORNEY FOR PLAINTIFFS,
PRINCIPAL LIFE INSURANCE COMPANY and
PRINCIPAL FINANCIAL GROUP, INC.